**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA PORTER and SHARKEY SIMMONS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MOOREGROUP CORPORATION, JOHN MOORE, GARY MOORE and MARTIN MOORE, Jointly and Severally,<br><br>Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Joshua Porter and Sharkey Simmons (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

**NATURE OF THE ACTION**

1. Plaintiffs are former fire guards and a former welder at Defendants' construction company based in Baldwin, New York. While working for Defendants, Plaintiffs and Defendants' other construction employees did not receive overtime premiums for hours worked over forty (40) in a given workweek. In addition, Defendants did not provide Plaintiffs with proper wage notices or wage statements with each payment of wages.

1

2. Defendants' payment schemes resulted in systematic underpayment of wages to Plaintiffs and Defendants' other construction employees, in violation of federal and state wage laws.

3. Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

4. Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all fire guards, welders and other construction employees working for Defendants in New York.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants conduct business throughout this district.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

8.  <u>Plaintiff Joshua Porter</u> was, at all relevant times, an adult individual residing in Suffolk County, New York.

9.  <u>Plaintiff Sharkey Simmons</u> was, at all relevant times, an adult individual residing in Queens County, New York.

10. Throughout the relevant time period, Plaintiffs performed work for Defendants at various job sites throughout the New York City area.

11. Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12. MOOREGROUP CORPORATION ("Moore Group" or the "Corporate Defendant") is an active New York Corporation with its principal place of business at 1 Jefferson Place, Baldwin, New York 11510.

13. Upon information and belief, Martin Moore ("M. Moore"), John Moore ("J. Moore") and Gary Moore ("G. Moore" and, together with M. Moore and J. Moore, the "Individual Defendants") are owners and operators of Moore Group who set the company's payroll policies, including the unlawful practices complained of herein.

14. Throughout the relevant time period, upon information and belief, the Individual Defendants were in charge of determining the company's policies with respect to payroll and otherwise running the business of Moore Group.

15. In corporate filings with the New York State Department of State, Division of Corporations, Defendant M. Moore is listed as the Chief Executive Officer of the Corporate

Defendant.

16. The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendant's other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

17. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

18. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

19. At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

20. Upon information and belief, at all relevant times, the Corporate Defendant had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21. Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since December 20, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked as fire guards, welders and other construction employees (the "Collective Action Members").

22. A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours

4

each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

23. Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ALLEGATIONS

24. Pursuant to the NYLL, Plaintiffs bring their Second through Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since December 20, 2011 and through the entry of judgment in this case (the "Class Period") who worked as fire guards, welders and other construction employees (the "Class Members").

25. <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

26. <u>The Class Members are so numerous that joinder of all members is impracticable</u>. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

27. Upon information and belief, there are well in excess of forty (40) Class Members.

28. <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual members of the Class</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include, but are not limited to:

5

    a. whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

    b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

    c. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

    d. whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

    e. whether Defendants failed to provide proper wage notice to Plaintiffs and the Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

    f. whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

    h. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

29. <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are hourly construction employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek and did not receive proper wage statements or wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

30. <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There

are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

31. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

32. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

33. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company**

34. At all relevant times, Defendants have been in the construction contracting business.

35. Upon information and belief, the Individual Defendants were frequently present at Moore Group's various construction project sites where they discussed the job with foremen, instructed employees on how to perform specific tasks and asked employees if they needed any additional supplies to complete the job.

36. At all relevant times, Defendants M. Moore, J. Moore and G. Moore have been in charge of the day-to-day operations of Moore Group, including, among other things, hiring and firing employees and setting the schedules and wage rates of employees.

**Plaintiffs' Work for Defendants**

37. Plaintiff Joshua Porter was employed by Defendants as a fire guard from in or around January 2017 through approximately August 2017 (the "Porter Employment Period").

38. As a fire guard, Plaintiff Porter's job duties included maintaining surveillance of areas where welding was being performed and taking any steps necessary to extinguish fires that resulted from hot work, including welding and grinding work, performed on the job site. In addition to traditional fire guard tasks, Plaintiff Porter was also required to perform certain laborer duties, including lifting ladders, unloading trucks, flagging, lining up rebar before cement was poured and erecting and scaling scaffolding to ensure that the area was clear of debris.

39. Throughout the Porter Employment Period, Plaintiff Porter performed work for Defendants at several different job sites, including a mixed-use development containing apartments, retail space and medical offices located at 178-02 Hillside Avenue, Jamaica, New York 11432 and condominium developments located at 111 Leroy Street, New York, New York 10014, 809 Broadway, New York, New York 10003, 330 East 75th Street, New York, New York 10021, and 34 East 13th Street, New York, New York 10003.

40. During approximately the first half of the Porter Employment Period, Plaintiff Porter typically worked six (6) days per week, eight to ten (8-10) hours per day Monday through Friday, and eight to nine (8-9) hours per day on Saturdays, for a total of approximately fifty-five to fifty-eight (55-58) hours per week. For the remainder of the Porter Employment Period, Plaintiff typically worked five (5) days per week, eight to ten (8-10) hours per day, for a total of at least forty to fifty (40-50) hours per week.

41. Throughout the Porter Employment Period, Plaintiff Porter was paid an hourly rate of eighteen dollars ($18.00) per hour for all hours for which he received compensation, including hours worked in excess of forty (40) in a given workweek.

42. Throughout the Porter Employment Period, Plaintiff was paid entirely via business check with no breakdown of the total number of hours that he had worked during the relevant pay period. Although he was supposed to be paid on Fridays, he typically received his payment on Mondays from the foreman on duty.

43. Throughout the Porter Employment Period, Defendants kept track of the hours that Porter worked by requiring him to write his name, time in and time out on a clipboard at the job site. For approximately the last two (2) months of Porter's employment, Defendants implemented a thumb print machine at the 178-02 Hillside Avenue job site to track employee's time.

44. Despite the fact that Porter typically signed in precisely when he arrived and left the job site, there was typically an average of four to six (4-6) hours missing from his payment approximately every other week. On one (1) occasion, Plaintiff was paid for a total of forty-eight (48) hours, despite the fact that he had worked at least sixty (60) hours during that particular pay period. Plaintiff is aware of the hours that he worked each week, as he generally kept track of his hours in a personal notebook.

45. On one (1) occasion, toward the end of Porter's employment with Defendants, he did not receive payment of any kind for an entire week of work. When he spoke with Defendant J. Moore about his missing payment, J. Moore informed him that the company had, in fact, paid him for the hours that he had worked and instructed him not to come to work the next day. The following day, Defendant J. Moore called Plaintiff Porter and informed him that someone had called 311 on the company and reported that there was no fire guard on the jobsite. Plaintiff Porter alleges that Defendant J. Moore ultimately terminated him during this phone call. As of the date of this Complaint, Plaintiff Porter has not received compensation of any kind for that week of work for which he never received a check.

46. On several occasions, Plaintiff Porter complained to a foreman, "Martin," that he was not receiving overtime premium pay when he worked in excess of forty (40) hours in a week. "Martin" responded that "that's how it is" at Moore Group and informed Porter that no employee of the company, including himself, received overtime premiums when he or she worked in excess of forty (40) hours in a week.

47. <u>Plaintiff Sharkey Simmons</u> was employed by Defendants as a fire guard from approximately November 2016 through approximately January 2017 and a welder from approximately January 2017 through approximately September 2017 (the "Simmons Employment Period").

48. As a fireguard, Plaintiff Simmons's job duties included maintaining surveillance of areas where welding was being performed and taking any steps necessary to extinguish fires that resulted from hot work, including welding and grinding work, performed on the job site. In addition to traditional fire guard tasks, Plaintiff Simmons was also required to perform certain laborer duties, including carrying and fitting rebar, flagging and assisting with concrete pours. As a welder, Plaintiff Simmons performed various structural welding tasks, including welding tiebacks and beams.

49. Throughout the Simmons Employment Period, Plaintiff Simmons performed work for Defendants at several different job sites, including a mixed-use development containing apartments, retail space and medical offices located at 178-02 Hillside Avenue, Jamaica, New York 11432 and condominium developments located at 75 First Avenue, New York, New York 10003 and 111 Leroy Street, New York, New York 10014, 809 Broadway, New York, New York 10003.

50. Throughout the Simmons Employment Period, Plaintiff Simmons typically worked

five (5) or six (6) days per week for total of at least fifty to fifty-five (50-55) hours per week. Although Plaintiff Simmons was scheduled to work from 7:00 am to 3:00 pm, he was frequently required to work later than 3:00 pm until at least 6:00 pm, and sometimes as late as 9:00 pm. In addition, Plaintiff Simmons typically worked Saturdays, from approximately 9:00 am to between 2:30 pm and 3:30 pm, approximately two (2) times per month. When he worked six (6) days per week, Plaintiff Simmons typically worked a total of approximately fifty-five to sixty (55-60) hours per week.

51. From the start of the Simmons Employment Period through approximately January 2017, when Plaintiff Simmons worked as a fire guard, he received an hourly rate of eighteen dollars ($18.00) per hour for all hours for which he received compensation.

52. From in or around January 2017 through the beginning of summer 2017, after he became a welder, Plaintiff Simmons was paid twenty-five dollars ($25.00) per hour for all hours for which he received compensation. From approximately early summer 2017 through the end of the Simmons Employment Period, Plaintiff Simmons received thirty dollars ($30.00) per hour for his work.

53. Throughout the Simmons Employment Period, Plaintiff Simmons received his regular hourly rate for all hours worked, including hours worked in excess of forty (40) in a given workweek.

54. Throughout the Simmons Employment Period, Plaintiff Simmons was paid entirely via business check with no breakdown of the total number of hours that he had worked during the relevant pay period. Plaintiff Simmons frequently observed Defendant J. Moore and G. Moore delivering checks to the job site which were then handed out to employees by the foreman.

55. Throughout the Simmons Employment Period, Defendants kept track of the hours

that Simmons worked by requiring him to write his name, time in and time out on a clipboard at the job site.

56. Despite the fact that Simmons typically signed in precisely when he arrived and left the job site, there were typically hours missing from his payment every week. On average, Plaintiff Simmons estimates that there were typically approximately five (5) hours missing from his payment, and sometimes up to ten to twelve (10-12) hours missing.

57. On several occasions, Plaintiff Simmons complained to Defendants J. Moore and G. Moore that he was not receiving overtime premiums when he worked in excess of forty (40) hours in a week. J. Moore and G. Moore would typically respond by instructing Simmons to speak to another employee, "Tom" because, according to them, Tom "does the hours." When Plaintiff Simmons spoke with "Tom", "Tom" would similarly direct him back to Defendant G. Moore.

58. On one (1) occasion, Defendant G. Moore informed Simmons that payment of overtime premiums "doesn't happen" at Moore Group.

59. Upon information and belief, Moore Group typically worked on at least five to seven (5-7) projects and employed in excess of one hundred (100) construction employees at any given time.

60. Plaintiffs have spoken with several other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period and were similarly paid substantially less than one and one-half (1.5) times their regular hourly rate for hours worked over forty (40) hours in a week. Defendants' failure to pay Plaintiffs and the Class Members overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their fire guards, welders and other hourly construction employees throughout the relevant time period.

61. Defendants failed to provide Plaintiffs and other similarly situated employees with proper wage notices at the time of hire or on February 1 of each year or proper wage statements with each payment of wages pursuant to the NYLL.

62. Upon information and belief, pursuant to their uniform policy, Defendants failed to provide all of their construction employees with a proper wage statement including a breakdown of their hours worked and hourly wage rate, among other information, with their wage payments.

63. Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

64. Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to post or keep posted notices explaining the overtime pay rights provided by the FLSA or New York Labor Law.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
(Brought on Behalf of Plaintiffs and the Collective Action Members)

65. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66. By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

67. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

68. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Class Members)**

69. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70. Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

71. Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE
**(Brought on Behalf of Plaintiffs and the Class Members)**

72. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73. Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

74. Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiffs and the Class Members)

75. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76. Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

77. Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b)

to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h. Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to

    occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.    Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.    An award of prejudgment and post-judgment interest;

k.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       December 20, 2017

                                   PELTON GRAHAM LLC

                                   By: _____
                                   Brent E. Pelton (BP 1055)
                                   Pelton@PeltonGraham.com
                                   Taylor B. Graham (TG 9607)
                                   Graham@PeltonGraham.com
                                   111 Broadway, Suite 1503
                                   New York, New York 10006
                                   Telephone: (212) 385-9700
                                   Facsimile: (212) 385-0800

                                   *Attorneys for Plaintiffs, the putative FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of MooreGroup Corporation and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_____
Printed Name: Joshua Porter

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of MooreGroup Corporation and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_Sharkey Simmons_
Signature

_SHARKEY SIMMONS_
Printed Name