UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

JOSHUA PORTER et al,

              Plaintiff,

        -*against*-

MOOREGROUP CORPORATION; JOHN MOORE;
GARY MOORE; MARTIN MOORE,

              Defendants.

--------------------------------X

**MEMORANDUM & ORDER**

17-cv-07405(KAM)(VMS)

**KIYO A. MATSUMOTO, United States District Judge:**

      On December 20, 2017, plaintiffs Joshua Porter
("Porter") and Sharkey Simmons ("Simmons") (collectively,
"plaintiffs") commenced this action against defendants
MooreGroup Corporation ("MooreGroup"); Martin Moore ("M.
Moore"); John Moore ("J. Moore"); and Gary Moore ("G.
Moore")(collectively, "defendants") alleging various wage and
hour violations of the Fair Labor Standards Act ("FLSA"), 29
U.S.C. §§ 201 *et seq.*, New York Labor Law ("NYLL"), §§ 650 *et
seq.*, and NYLL §§ 190 *et seq.* (ECF No. 1, Complaint
("Compl.").)  Plaintiffs brought their FLSA claims as a
collective action on behalf of themselves and all other
similarly situated employees of the defendants and their NYLL
claims as a class action pursuant to Federal Rule of Civil
Procedure 23 on behalf of themselves and all fire guards,
welders, and other construction employees working for the

defendants in New York.  (*Id.*)  By order dated May 15, 2018, the court granted plaintiffs' consent motion to certify a Collective Action pursuant to the FLSA.  (ECF No. 19, Consent Motion; ECF No. 21, Order Granting Motion to Certify FLSA Collective Action ("Collective Action Order").)  The Collective Action Order limited the class of potential plaintiffs to fire guards, welders, laborers, and other construction employees who worked for the defendants between December 20, 2014 and May 14, 2018. (May 15, 2018 Order ¶ 2.)

Following extensive fact discovery and a pre-motion conference, the court set a briefing schedule for plaintiffs to serve their motion to amend the complaint ("Motion"), which is presently before the court.  On March 29, 2019, the parties timely filed their Motion papers on ECF.  (*See generally* ECF No. 47, Motion for Leave to Amend the Complaint ("Motion"); ECF No. 48, Memorandum in Support re Motion to Amend/Correct/Supplement Complaint ("Pls. Mem."); ECF No. 49, Pelton Decl.; ECF No. 50, Memorandum in Opposition re Motion to Amend/Correct/Supplement Complaint ("Defs. Mem."); ECF No. 51, Nasis Decl.; ECF No. 52; Reply in Support re Motion to Amend/Correct/Supplement Complaint ("Pls. Rep."); ECF No. 53, Pelton Decl.)

Plaintiffs' proposed Amended Complaint ("Amended Complaint") seeks to make the following changes to the original Complaint: (1) add plaintiff Emanuel Colajay Rivera ("Rivera")

as a named plaintiff; (2) add Baldwin Harbor Contracting Inc. ("Baldwin") as a defendant; and (3) add retaliation claims, pursuant to the relevant FLSA and NYLL statutory provisions, on behalf of Simmons and Rivera.  For the reasons set forth below, the court **grants** plaintiffs' Motion.

## BACKGROUND

On December 20, 2017, plaintiffs commenced this action alleging violations of the FLSA and NYLL.  Plaintiffs are former employees of defendants' construction company.  (Compl. ¶ 1.) Porter was employed by defendants from around January 2017 through approximately August 2017, and Simmons was employed by defendants from approximately November 2016 through approximately September 2017.  (*Id.* ¶¶ 37, 47.)  Plaintiffs allege that while employed with the defendants' company, defendants failed to provide overtime premiums owed to plaintiffs pursuant to both FLSA, 29 U.S.C. §§ 201 *et seq.* and NYLL, §§ 650 *et seq.*  (*Id.* ¶ 3.)  In addition, plaintiffs allege that defendants failed to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.*  (*Id.*  ¶ 4.) Defendants timely filed their Answer on February 23, 2018, generally denying plaintiffs' substantive allegations, or not responding to them, to the extent that they allegedly stated a legal conclusion.  (ECF No. 14, Answer.)

On March 15, 2018, after an Initial Conference Hearing before Magistrate Judge Vera M. Scanlon, Judge Scanlon filed a scheduling order stating that "no additional parties may be joined after 7/8/16." (ECF No. 16, Scheduling Order ¶ 4.) In addition, "no amendment of the pleadings will be permitted after [July 6, 2018] unless information unknown to the parties by this date later becomes available to them." (*Id.* ¶ 5.) Furthermore, the court ordered the parties to complete fact discovery by October 12, 2018 and all discovery by December 21, 2018. (*Id.* ¶¶ 6, 8.) Moreover, the Scheduling Order noted that plaintiffs anticipated filing a FLSA § 216(b) motion by April 19, 2018. (*Id.* ¶ 16.) Lastly, a Status Conference was set for July 19, 2018. (*Id.* ¶ 13.)

On May 1, 2018, the parties filed a consent motion to certify the FLSA collective action, which the court granted on May 15, 2018. (ECF No. 19, Consent Motion; ECF No. 21, Collective Action Order.) Pursuant to the Collective Action Order, the court gave defendants 60 days to provide plaintiffs with the names and contract information of all potential plaintiffs. (*Id.* ¶ 3.) In addition, the Collective Action Order required plaintiffs to send notices to all potential plaintiffs within 10 days following defendants' required disclosure. (*Id.* ¶ 4.) All potential plaintiffs were required to opt in within 60 days of the mailing of the notices. (*Id.* ¶

5.)  Four opt-in plaintiffs, including Plaintiff Rivera, subsequently joined the case in September 2018.  (ECF No. 23-25, 27, Consent to Become Party in a Collective Action.)

During the October 11, 2018 Status Conference before Magistrate Judge Scanlon, plaintiffs informed the court of their intention to amend the complaint, and Judge Scanlon ordered plaintiffs' counsel to request a pre-motion conference seeking leave to file an amended complaint.  (ECF No. 29, Scheduling Order.)  On November 9, 2018, plaintiffs requested a pre-motion conference in anticipation of their motion to amend the complaint.  (ECF No. 31, Pls. Ltr. Mot. for Pre-Motion Conference ("PMC Letter").)  In their letter, plaintiffs indicated that they had shared a copy of the proposed amended complaint with defendants, but defendants were unwilling to consent to the proposed amendments.  (*Id.*)  On November 13, 2018, defendants' counsel requested an extension to file a response, citing personal reasons, which the court granted.  (ECF No. 32, Motion for Extension of Time to File Response/Reply; Dkt. Entry dated Nov. 16, 2018.)

Without seeking a further extension, defendants failed to file their reply to plaintiffs' PMC Letter by the court-ordered deadline, and on November 21, 2018, the court granted plaintiffs' motion for a Pre-Motion Conference and ordered defendants to respond to plaintiffs' PMC Letter by November 27,

2018. (Dkt. Entry dated Nov. 21, 2018.) Defendants filed their response on November 27, 2018, arguing that plaintiffs' proposed Amended Complaint fails to sufficiently allege Baldwin as a joint employer with MooreGroup. Defendants did not address the proposed amendment to add Rivera as a named plaintiff. (ECF No. 33, Letter Responding to Plaintiffs' Premotion Conference Letter.)

On November 29, 2018, plaintiffs filed a letter informing the court of alleged acts of retaliation against Simmons and Rivera on the evening of November 27, 2018. (ECF No. 34, Letter Regarding Retaliation Against Plaintiffs and Further Proposed Amendments to Complaint.) Specifically, plaintiffs alleged that defendants sent an unidentified individual, pretending to be an IRS agent ("Individual"), to Simmons' and Rivera's residences in order to intimidate and harass them into dropping the instant action. Further, the Individual informed Simmons and Rivera that any money "received from the lawsuit would have to be paid to the IRS" and that the only way to make the "problem go away" would be to "drop the lawsuit." (*Id.*) As a result, plaintiffs seek to "add retaliation claims on behalf of [Rivera] and Simmons pursuant to both 29 U.S.C. § 215(a)(3) and NYLL § 215." (*Id.*)

A pre-motion conference was held on November 30, 2018, to discuss plaintiffs' intent to move to amend their complaint

and the allegations raised in plaintiffs' letters.  (Dkt. Entry dated Nov. 30, 2018.)  The court ordered defendants to file a letter by December 7, 2018 stating whether they will consent to the filing of an amended complaint without a motion or oppose a motion to amend the complaint.  (*Id.*)  At this time, there were delays and extensions due to a change of defendants' counsel.[1] Defendants submitted a letter on February 5, 2019, stating that they could not consent to the filing of an amended complaint without a motion.  (ECF No. 41, Letter.)

The court granted the parties' proposed briefing schedule, ordering that (1) plaintiffs serve their motion to amend the complaint by February 27, 2019, (2) defendants serve their opposition by March 20, 2019, (3) plaintiffs serve their reply, if any, by March 29, 2019, and (4) the parties file their motion papers in logical order via ECF on March 29, 2019.  (Dkt.

---

[1] On December 7, 2018, defendants filed a motion to stay for 60 days or at a minimum to extend the deadline because they had terminated their original counsel's services and were in the process of retaining new counsel.  (ECF No. 35, Motion to Stay for 60 Days.)  The court granted the motion in part, extending the deadline to provide the court a status update regarding new counsel and to advise the court on whether they will consent to the filing of the amended complaint to January 7, 2019.  (Dkt. Entry dated Dec. 7, 2018.) Defendants then requested an extension to file a response, citing delays due to finalizing the termination of prior counsel and the holiday season.  (ECF No. 38, Motion for Extension of Time.)  The court extended the deadline to January 22, 2019.  (Dkt. Entry dated Jan. 8, 2019.)  On January 22, 2019, defendants asked for one final adjournment of thirty days to allow defendants' new general counsel to finalize retaining new counsel.  (ECF No. 39, Ltr. Extension Re Consent to Complaint Amendment.)  The court granted a "final" extension, ordering defendants to file a letter by February 5, 2019. (Dkt. Entry dated Jan. 23, 2019.)

Entry dated Feb. 6, 2019.)  The parties' papers were timely filed.

## I. **The Instant Motion**

As noted at the outset, the proposed Amended Complaint differs from the original Complaint in primarily three respects: (1) the addition of Rivera as a named plaintiff; (2) the addition of Baldwin as a defendant; and (3) the addition of retaliation claims on behalf of Simmons and Rivera.  (ECF No. 49-2, Ex. B – Proposed Amended Complaint ("Am. Compl.") ¶¶ 85-92, 97-103, 113-119.)

Plaintiffs assert that Rivera's claims are "in all substantive ways identical" to those of the originally-named plaintiffs.  (ECF No. 48, Pls. Mem. 4.)  Specifically, plaintiffs allege that Rivera "typically worked in excess of forty (40) hours per week but was paid straight-time rates for all hours worked in excess of forty," his "weekly wages were typically short by several hours," his hourly rates were "similar" to those paid to Simmons and Porter, and "at no time did Rivera receive[] with his payment of wages a breakdown of his total hours worked."  (*Id.*)  Notably, though the Collective Action Order limited the relevant period to between December 20, 2014 and May 14, 2018, *see* Collective Action Order ¶ 2, Rivera

was employed at various times outside of and during the relevant period.[2]   (Am. Compl. ¶ 69.)

Plaintiffs allege that Rivera began receiving paychecks from Baldwin when Rivera returned to work for defendants in 2018 despite working for the same supervisors that he had worked for during his prior employment with defendants and "performing the same work and [being] paid in the same manner as in the past."   (*Id.* ¶ 75.)   Baldwin, which allegedly shares its principal place of business with MooreGroup, allegedly operates on behalf of MooreGroup "to avoid scrutiny of MooreGroup's payroll or pay practices."   (*Id.* ¶ 19.)   Plaintiffs assert that the Individual who visited Simmons' and Rivera's residences was likely acting on behalf of defendants, and thus plaintiffs seek to bring a retaliation claim under NYLL and FLSA.   (*Id.* ¶¶ 91-92.)

In defendants' opposition, they assert that plaintiffs have not established good cause to amend the complaint; defendants will be prejudiced if the Motion is granted; the proposed amendments regarding Rivera and the retaliation claims are futile; and the allegations against Baldwin are not plausible on their face.   (ECF No. 50, Defs. Mem. 5-18.)   In

---

[2] According to the proposed Amended Complaint, Rivera was employed with defendants "during three separate time periods: from February 2011 through November 2011, from January 2012 through December 28, 2017, and from February 21, 2018 through March 19, 2018."   (Am. Compl. ¶ 69.)

their reply, plaintiffs assert that they acted in a timely
fashion in filing the motion; the amendments would not result in
undue delay, prejudice, or confusion; and the amendments are not
futile.  (ECF No. 52, Pls. Rep.)

On August 29, 2019, Magistrate Judge Scanlon ordered
the parties to complete discovery by October 31, 2019.  (ECF No.
54, Status Report Order.)  Pursuant to the October 31, 2019
Status Report Order, if plaintiffs' motion is granted, discovery
is to be completed within 60 days of the court's decision on the
motion.  (*Id.*)  Counsel will then be directed to make a class
certification and summary judgment motion within 45 days after
the close of discovery.  *Id.*)

## LEGAL STANDARDS

In the Second Circuit, "[l]eave to amend should be
denied only because of undue delay, bad faith, futility or
prejudice to the non-moving party, and the decision to grant or
deny a motion to amend rests within the sound discretion of the
district court." *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d
442, 451 (E.D.N.Y. 2014) (citing *Aetna Cas. And Su. Co. v.
Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Zahra
v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).  Using
this guiding principle, the court considers whether or not to
grant the Motion.

a. Liberal Standard under Rule 15

Motions to amend pleadings are governed by Rule 15(a).
In cases where a party is not entitled to amend its complaint as
a matter of course, "a party may amend its pleading only with
the opposing party's written consent or the court's leave."  *See*
Fed. R. Civ. P. 15(a)(2).  Motions to amend are to be "liberally
granted absent a good reason to the contrary," *see Assam v. Deer
Park Spring Water*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995), as Rule
15(a)(2) provides that "court[s] should freely give leave when
justice so requires," Fed. R. Civ. P. 15(a)(2).  In addition, a
court may add a party "at any time, on just terms."  *See* Fed. R.
Civ. P. 21.  Motions to add parties are given the "same standard
liberality afforded to motions to amend" under Rule 15.  *Essani
v. Earley*, No. 13-CV-3424 (JMA)(SIL), 2018 U.S. Dist. LEXIS
134414, at *10 (E.D.N.Y. Aug. 9, 2018) (quoting *Addison v.
Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011)).

   b. "Good Cause" under Rule 16

Where a court has set a scheduling order with a
deadline for amended pleadings, however, "the lenient standard
under Rule 15(a) . . . must be balanced against the requirement
under Rule 16(b) that the Court's scheduling order 'shall not be
modified except upon a showing of good cause.'"  *See Grochowski
v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed.
R. Civ. P. 16(b)); *see also Essani*, 2018 U.S. Dist. LEXIS
134414, at *11.  The purpose of Rule 16(b) is to create

certainty in pretrial proceedings.  *See* Fed. R. Civ. P. 16 advisory committee's note, 1983 amendment, discussion of subsection (b)).  Therefore, to consider only Rule 15(a) without taking Rule 16(b)'s good cause standard into account "would render scheduling orders meaningless." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (holding that the district court did not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the movant failed to establish good cause) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).  Accordingly, a party seeking to amend the complaint after the Rule 16(b) scheduling order deadline has passed must first demonstrate good cause to modify the scheduling order deadline before the court addresses the proposed amendment under the Rule 15(a) standard.

In order to demonstrate good cause under Rule 16(b), the movant generally must establish diligence.  *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Parker*, 204 F.3d at 340 ("[A] finding of 'good cause' depends on the diligence of the moving party.").  Courts have declined to find good cause where the movant was aware of facts giving rise to the claim, or where such information was available to the movant, at the time the movant commenced the action.  *See, e.g.*, *Parker*, 204 F.3d at 341 (adopting district court's lack of good

cause determination where movant was informed of his rights under the leave policy); *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (finding no good cause where "the substance of the defendants 'new' claim was known when the defendants filed their original amended answer"); *cf. Enzymotec Ltd. V. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (finding that plaintiff established diligence because it did not discover the facts underlying its new cause of action until after the deadline, and plaintiff filed the motion to amend within two months); *Jackson v. Roslyn Bd. Of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009) (finding that delaying nearly five months after acquiring knowledge of underlying facts of an amendment before making any attempt to seek leave to amend "is some evidence of a lack of diligence").

Courts in the Second Circuit have sometimes excused a movant's lack of diligence where the information was available to the movant but could cause "potential confusion," or where the movant filed an amended pleading two months after learning new facts during discovery. *See Olaf Soot Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399 (S.D.N.Y. 2017) (citations omitted). The Second Circuit has "left open the possibility that amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment," absent a showing of undue prejudice for the non-moving party. *See*

13

*Fresh Del Monte Produce, Inc.*, 304 F.R.D. 170, 175 (quoting *Castro v. City of New York*, 2010 WL 889865, at *2 (E.D.N.Y. Mar. 6, 2010)); *Olaf Soot Design*, 299 F. Supp. 3d at 399.

   c. Prejudice

      In deciding whether there would be prejudice, courts typically consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial…[and] (ii) significantly delay the resolution of the dispute." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993). Courts may find prejudice if the amendments would require significant discovery or cause delays on the eve of trial. *See Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 163 (S.D.N.Y. 2005); *Benefitvision Inc. v. Gentiva Health Svcs., Inc.*, 2015 WL 1034543, at *14 (E.D.N.Y. Feb. 9, 2015) (denying plaintiffs' motion to add four new causes of action in a trial-ready case "at the eleventh hour" because it would "significantly prejudic[e]" defendants). *Cf. State Teachers Ret. Bd.*, 654 F.2d at 856 (finding no undue prejudice where no trial date had been set at the time plaintiffs requested leave to amend and defendants had not yet filed a motion for summary judgment); *Martin v. Sprint/United Mgmt. Co.*, No. 15-CIV-5237 (PAE), 2016 U.S. Dist. LEXIS 63192, at *12-13 (S.D.N.Y. May 12, 2016) (finding no undue delay, and therefore

no prejudice, because discovery deadline was more than three months away).

"Any prejudice which the non-movant demonstrates must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120 (E.D.N.Y. 1996)*; see also State Farm Mut. Auto. Ins. Co. v. CPT Medical Svcs., P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y. 2007).

     d. <u>Futility</u>

A proposed amended complaint must "contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'" *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)).  An amendment is futile if it cannot survive a Rule 12(b)(6) motion to dismiss.  *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); Fed. R. Civ. P. 12(b)(6).  The court is "required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiff's favor." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

**DISCUSSION**

**I.   Plaintiffs Have Established Good Cause to Amend**

Magistrate Judge Scanlon's March 15, 2018 Scheduling Order contemplated that newly-discovered information might prompt the parties to seek to amend their pleadings. (ECF No. 16, Scheduling Order ¶¶ 4-5 (noting that the last date for amendment of the pleadings was July 6, 2018, unless "information unknown to the parties by this date later becomes available to them.".) Plaintiffs assert that they had good cause for filing after July 6, 2018 because they did not acquire the relevant information until after the deadline had expired. [3] (ECF No. 48, Pls. Mem. 11.) *Id.* As a result, plaintiffs were "unable to learn the identifies, let alone employment information, of any employees of Defendants other than the Named Plaintiffs until after" the deadline. *Id.* Plaintiffs did not receive Rivera's Consent Form until September 19, 2018, and thus learned information regarding Rivera and Baldwin only after Rivera opted in, which occurred after the deadline to amend had expired under Judge Scanlon's Scheduling Order. (ECF No. 27, Consent to become party in a collective action ("Rivera Consent"); ECF No. 48, Pls. Mem. 11.)

---

[3] The court granted the parties' consent motion to certify FLSA Collective Action on May 15, 2018. (Collective Action Order.) Pursuant to the Collective Action Order, defendants were ordered to provide contact information of all potential plaintiffs to plaintiffs within 60 days, and plaintiffs were ordered to mail the notice of collective action to all potential plaintiffs within 10 days following defendants' disclosure of the contact information. (Collective Action Order, ¶¶ 3-4.)

Additionally, plaintiffs assert that they requested permission to move to amend "within a reasonable time after discovering" the relevant facts regarding Rivera and Baldwin. (ECF No. 48, Pls. Mem. 11-12.).  Then, just two days after learning about the relevant facts regarding alleged retaliation incidents, plaintiffs submitted another letter to the court in advance of the pre-motion conference.  (*Id.* at 2.)

Defendants do not dispute that plaintiffs became aware of the relevant information underlying the proposed amendments after the deadline to amend the pleadings expired.  (Defs. Mem. 6.)  Nor do the defendants dispute that plaintiffs were diligent in raising their retaliation claims promptly with the court. Rather, defendants assert that plaintiffs were not diligent in "inexplicably delay[ing] until November 9, 2018" to request the pre-motion conference.  (*Id.*)  Defendants also assert that they will be prejudiced if the Motion is granted.  (*Id.* at 7.)

Defendants cite *Martin* in support of their assertion that plaintiffs were not diligent, but *Martin* is not analogous to the instant case.  In *Martin*, plaintiff filed its proposed amended complaint nearly two months past the court-ordered deadline for the motion.  *Martin v. MTA Bridges & Tunnels*, No. 06-CIV-3125 (CM)(RLE), 2008 U.S. Dist. LEXIS 54775, at *1-3 (S.D.N.Y. July 18, 2008).

In the present action, plaintiffs timely filed their Motion, pursuant to the court's February 6, 2019 scheduling order.  (Dkt. Entry dated 2/6/19, Scheduling Order.)  In addition, plaintiffs filed their PMC letter before discovery was completed, and according to the court-ordered deadline.  (ECF No. 29, Scheduling Order 2; ECF No. 30, Motion for Extension of Time to Complete Document Discovery; ECF No. 31, PMC Letter; Defs. Mem. 7.)  The court thus finds defendants arguments regarding plaintiffs' lack of diligence and delay to be without merit.  Further, the court finds that plaintiffs have demonstrated good cause; absent prejudice to defendants or futility of the amendments, the Motion will be granted.

## II.  Lack of Prejudice to Defendants

For the reasons stated below, the court finds that defendants have not established that they will be prejudiced should the court grant the instant Motion.

As plaintiffs correctly note, at the time they made the Motion, there had been no dates set for Rule 23 class certification, summary judgment briefing, or trial.  (ECF No. 54, Status Report Order (noting that counsel will make a class certification and summary judgment motion 45 days after close of discovery).)  Nevertheless, defendants assert that the Motion would cause prejudice because (i) "the proposed amendments rely on separate, new, and distinct facts concerning an entirely new

defendant," and (ii) the "retaliation claims are allegedly premised on facts that are completely unrelated to [the wage claims]." (Defs. Mem. 8 – 9.)  The court considers defendants' theories in turn.

     a. <u>Adding Baldwin and Rivera Would Not Prejudice Defendants</u>

     First, defendants challenge the addition of Baldwin and Rivera on the ground that Rivera's allegations against Baldwin are "completely unrelated to the underlying factual basis for Plaintiffs' wage and hour claims."  (Defs. Mem. 2, 8.) Defendants state that Baldwin "is not related to the Defendants, is owned by different people, and is not aware of this lawsuit" does not establish that adding Baldwin will result in prejudice to the present defendants.  (*Id.* at 9.)  Defendants further assert that "the facts underlying [Rivera's] allegations against [Baldwin] would contain little, if any, overlap with the instant wage and hour claims against the Moore Group."  (*Id.* at 11.) Defendants note that the claims against Baldwin are isolated to Rivera and limited to a duration of one month, thereby making the claims separate and distinct from the claims against MooreGroup.  (Defs. Mem. 10.)  Therefore, defendants assert that adding these parties would cause defendants to incur increased litigation costs and prolong the litigation.  (Defs. Mem. 8 – 10.)

In their Motion, plaintiffs allege that Baldwin is a "corporate entity that paid Rivera during a portion of his employment [with MooreGroup]," and that they believe Baldwin to be "either part of a single-integrated enterprise with MooreGroup and/or [] a successor to MooreGroup."  (Motion 8.) Plaintiffs further allege that Baldwin "was a party to the transactions outlined in the Amended Complaint, and its payment policies appear to be inextricably intertwined with Defendants," as Baldwin paid Rivera "at the same rates, by the same means and including the same wage and hour violations as he experienced previously [under MooreGroup]."  (*Id.*)  Plaintiffs also allege that Baldwin is "owned, operated, managed and controlled by the Individual Defendants; performs no independent business operations apart from MooreGroup; has no financial resources or existence apart from MooreGroup . . . and generally has no meaningful existence apart from its purpose of paying MooreGroup employees for the apparent purpose of deflecting scrutiny of MooreGroup's payroll or payment practices."  (*Id.*; ECF No. 49-2, Am. Compl. ¶¶ 19-25.)  Thus, plaintiffs have plausibly alleged that Baldwin's payment practices were linked to MooreGroup's.

With respect to Rivera, plaintiffs point out that defendants were aware of Rivera's participation in the lawsuit ever since he opted in and have even produced some written discovery regarding Rivera; thus, defendants will not need to

expend much more to complete discovery regarding Rivera. (Motion 12.)

*First*, the court notes that Rivera's proposed wage claims are almost identical to those of the current named plaintiffs and fall within the same statutory time period. Thus, any additional costs that defendants would incur in also defending against Rivera "should be significantly limited by the common ultimate question that predominates Plaintiffs' claims: whether [defendants] should have paid Plaintiffs overtime wages" and whether defendants failed to provide proper wage notices and wage statements. *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 36 (N.D.N.Y. 2009).

*Second*, the extension of discovery by 60 days should provide defendants ample time to conduct discovery of the retaliation claims pertaining to Rivera.  Adding Rivera as a named plaintiff would further the court's goal of avoiding the "spawn[ing of] duplicate litigation."  *Id.* (quoting *Foster v. The Food Emporium, et al.*, o. 99-CIV-3860 (CM), 200 U.S. Dist. LEXIS 6053, *7 (S.D.N.Y. Apr. 26, 2000)).

*Third*, though defendants may be correct that Baldwin may file a pre-answer motion to dismiss and thus delay the litigation further, "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *State Teachers Ret.*

*Bd.*, 654 F.2d at 856.  Moreover, adding Baldwin would neither alter plaintiffs' theories of relief nor "represent a radical shift from the recovery sought." *Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 63192, at *12 (quoting *Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58 (2d Cir. 1984)).

In urging that adding Baldwin and Rivera would result in prejudice to defendants, defendants cite to two cases, both of which are unavailing.  Defendants cite *State Farm* for the sweeping proposition that "prejudice is typically found when the amendment adds a party."  (Defs. Mem. 9.)  To the contrary, in *granting* plaintiff's motion to amend its complaint to join additional defendants and causes of action, the *State Farm* decision explicitly noted that "the burden of conducting additional discovery [as a result of adding additional defendants and claims] does not automatically constitute undue prejudice." *State Farm Mut. Auto. Ins. Co. v. CPT Medical Svcs., P.C.*, 246 F.R.D. 143, 149 (E.D.N.Y. 2007).  Indeed, the *State Farm* court noted the court's "substantial interest in adjudicating the entire dispute in one action," in which denying an amended pleading "would require the parties and the court to duplicate their efforts." *Id*.  Though the *Portelos* decision involved a denial of a motion to amend, the court did not address whether it was the addition of parties, as opposed to the addition of new claims, that would result in prejudice to

the non-movant; instead, the court based its denial of the motion on the movant's failure to show good cause. *Portelos v. City of New York*, 2015 WL 5475494, at *3 (E.D.N.Y. Sept. 15, 2015). Here, as discussed above, the court finds that plaintiffs have established good cause to amend the complaint, so *Portelos* is inapt.

*Fourth*, while acknowledging defendants' apprehension regarding the prospect of "unnecessarily protracted" litigation, the court notes that the discovery timeline has already been sensibly curtailed by the August 29, 2019 Status Report Order. The August 29, 2019 Status Report Order provides that, if the instant Motion is granted, "discovery on [the] new parties [is] to be completed within sixty days of the Court's decision on the motion." (ECF No. 54, Status Report Order.) In light of that, defendants' assertions regarding prejudice resulting from additional discovery costs or significant delays are somewhat misplaced. (*Id.*)

For the foregoing reasons, the court finds that adding Rivera as a named plaintiff and adding Baldwin as a defendant would not prejudice defendants.

b. Adding Plaintiffs' Retaliation Claims Would Not Prejudice Defendants

Defendants object to the proposed addition of plaintiffs' retaliation claims because these claims "are []

23

premised on facts that are completely unrelated to the hours
they worked and the wages they received and have not been
discussed at all in discovery." (Defs. Mem. 8-9.) As an
initial matter, the court agrees with defendants that
plaintiffs' proposed retaliation claims are more appropriately
addressed under Rule 15(d) as supplemental pleadings, as the
"transaction, occurrence, or event . . . happened after the date
of the pleading to be supplemented. (Fed. R. Civ. P. 15(d);
Defs. Mem. 11 n.5.) As defendants correctly note, the
substantive analysis under Rules 15(a) and 15(d) is the same.
(Defs. Mem. 11.) Rule 15(d) "permits a party to move to serve a
supplemental pleading and the district court may grant such a
motion, in the exercise of its discretion, upon reasonable
notice and upon such terms as may be just." *Quaratino*, 71 F.3d
at 66. "[L]eave to file a supplemental pleading should be
freely permitted when the supplemental facts connect it to the
original pleading." *Id.* (citing *Bornholdt v. Brady*, 869 F.2d
57, 68 (2d Cir. 1989); *LaSalvia v. United Dairymen*, 804 F.2d
1113, 1119 (9th Cir. 1986), *cert. denied*, 482 U.S. 928 (1987).

"[I]t is the Defendant's burden to establish that
permitting the Plaintiff to supplement her pleading with a claim
for retaliation would be prejudicial." C*ummings-Fowler v.
Suffolk Cty. Cmty. Coll.*, 282 F.R.D. 292, 298 (E.D.N.Y. 2012)
(citations omitted). The Second Circuit has held, in the

context of a motion to supplement a pleading pursuant to Rule 15(d) to add a claim for unlawful retaliation, that it is an abuse of discretion to deny the motion absent prejudice to the opposing party or futility of the amendment. *Id.* at 297 (citing *Quaratino,* F.3d at 66 (2d Cir. 1995). Defendants assert that they would be prejudiced if the retaliation claims are added because "the parties will have to start anew with paper discovery and depositions," starting with "[Rivera's] wife and landlord." (Defs. Mem. 8.)

Courts in the Second Circuit "routinely permit plaintiffs to supplement pleadings to include alleged acts of retaliation that . . . occurred after the original complaint was filed." *Quintanilla v. Suffolk Paving Corp.*, No. 09-CV-5331 (AKT), 2012 U.S. Dist. LEXIS 132469, at *14, 17-18 (E.D.N.Y. Sept. 17, 2012)(granting amendment adding retaliation claims to a NYLL and New York Wage Theft Prevention Act case for an incident that allegedly occurred after the deadline to amend) (citing *Ke v. 85 Fourth Ave. Inc.*, No. 07-CV-6897, 2009 U.S. Dist. LEXIS 8141, 2009 WL 185949, at *2 (S.D.N.Y. Jan. 22, 2009); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008)).

Here, plaintiffs have alleged supplemental facts that connect the retaliation claims to the original claims. "On November 27, 2018, an individual who claimed to be a

representative of the IRS showed up at the front door of
Simmons's and Rivera's respective residences," showing "some
paper or documentation to identify himself as an IRS agent."
(Motion 4 – 5; Am. Compl. ¶¶ 86 – 92.)  This individual
allegedly informed Simmons and Rivera that they owed taxes for
the time period that they worked for MooreGroup and that any
money received from the lawsuit would have to be paid to the
IRS.  (Motion 5.)  This individual also allegedly stated that
"the only way for the 'problem to go away' was for the plaintiff
to 'drop the lawsuit.'"  (*Id.*)  Insofar as the alleged
retaliation incident occurred due to the parties' participation
in the lawsuit, i.e. their wage claims, the court is satisfied
that plaintiffs have met the liberal pleading standard of Rule
15(d).  Moreover, the retaliation claims are brought pursuant to
the same statutes as the wage claims, unlike in *Ansam
Associates, Inc. v. Cola Petroleum, Ltd.*, which defendants cite
to support their argument.  *Ansam Assocs., Inc. v. Cola
Petroleum, Ltd.*760 F.2d 442, 446 (2d Cir. 1985).

For the foregoing reasons, the court also finds that
defendants have failed to establish that adding plaintiffs'
retaliation claims would result in prejudice to defendants, and
that such prejudice would outweigh any prejudice to plaintiffs
that "would result from a denial of the motion" as well as "the

court's interest in litigating all claims in a single action."
*Saxholm AS*, 938 F. Supp. at 120; *State Farm*, 246 F.R.D. at 148.

**III. Futility**

Next, defendants assert that plaintiffs' proposed
amendments are futile.  For the reasons stated below, the court
finds that (1) plaintiffs' proposed amendments to add Rivera and
Baldwin are not futile with respect to the wage and overtime
claims alleged in the original Complaint; and (2) plaintiffs'
proposed retaliation claims are not futile.  Thus, the court
**grants** plaintiffs' requests to add Rivera as a named plaintiff;
add Baldwin as an additional defendant; and add the proposed
retaliation claims.

a. Rivera's Wage and Overtime Claims May Proceed

Defendants assert that plaintiffs' proposed addition
of Rivera is futile because a portion of Rivera's FLSA and NYLL
claims is time-barred.  (Defs. Mem. 12-13.)  Defendants note
that Rivera's claims with respect to his past employment with
MooreGroup should be limited, for his FLSA claims, to the
preceding two years before Rivera filed his opt-in consent form,
and, for his NYLL claims, to the six years before the initial
Complaint was filed.  (*Id.* at 13.)  Therefore, defendants
conclude, the "proposed amendment [to add Rivera] is futile as a
substantial portion of his claims are barred by the applicable
statute of limitations."  (*Id.* at 12.)

The court finds that defendants have not demonstrated futility. Crucially, defendants do not cite to any authority for their apparent view that a claim is futile, for purposes of a Rule 15 motion, if a portion of that claim is time-barred. In *Michael v. Bloomberg L.P.*, a New York court held that the proposed amendments, which were partially time-barred, were not futile. *See Michael v. Bloomberg L.P.*, No. 14-CV-2657 (TPG)(KNF), 2016 U.S. Dist. LEXIS 55987, at *13-14 (S.D.N.Y. Mar. 18, 2016) ("A claim is either futile or not[.]") "[D]ismissing claims on statute of limitations grounds at the complaint stage is appropriate only if a complaint *clearly* shows the claim is out of time." (*Id.* at *14.) (quoting *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 90 (S.D.N.Y. 2013) (emphasis in original text). Defendants do not dispute that Rivera alleges claims within the applicable limitations' periods. As such, plaintiffs' proposed claims regarding Rivera are not futile, provided they are timely.

  b. <u>Retaliation Claims</u>

Defendants also assert that plaintiffs' proposed retaliation claims are futile. Defendants assert that Simmons cannot establish a causal connection between "his alleged protected activity [and] any alleged adverse employment action," since Simmons' new allegations regarding retaliation relate to events that occurred 11 months after the lawsuit was filed and

after plaintiffs ceased working for defendants. (Defs. Mem. 17.) Apart from stating that plaintiffs have not pled "how they suffered any damages causally related to Defendants' alleged retaliation," (Defs. Mem. 18) defendants do not argue that plaintiffs have failed to allege a *prima facie* retaliation case regarding Rivera, nor do defendants argue that plaintiffs have failed to allege the first two elements of a retaliation claim as to Simmons. (*Id.*)

To state a retaliation claim under the FLSA and the NYLL, a plaintiff must "plead facts showing a *prima facie* case of retaliation, namely: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010) (FLSA); *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (NYLL). Protected activities, under the FLSA and the NYLL, include, *inter alia*, the filing of a complaint by an employee. 29 U.S.C. § 215(a)(3); N.Y.L.L. § 215(a); *Mullins*, 626 F.3d 47 (2d Cir. 2010).

*First*, because the filing of the instant action constitutes participation in a protected activity known to

29

defendants, plaintiffs have established the first element of a *prima facie* retaliation claim.

*Second*, the court considers whether plaintiffs have pleaded an adverse employment action.  Under Second Circuit case law, an adverse employment action in an FLSA case is a "materially adverse change" in the terms and conditions of employment; some examples of types of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *See Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004); *see also Dunn v. Sederakis*, 143 F. Supp. 3d 102, 112 fn. 9 (S.D.N.Y. 2015) (docking wages to which an employee is entitled and failing to pay overtime to which an employee is entitled are adverse employment actions); *Burlington Northern and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) (forcing an employee to perform an unpleasant work assignment may be an adverse employment action).

The United States Supreme Court held, in *Burlington Northern and Santa Fe Railway Co. v. White*, a case involving a retaliation claim under Title VII, that an adverse employment action includes one that "might well 'have dissuaded a

reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219). The Second Circuit has applied the legal standard announced in *Burlington Northern* to FLSA retaliation claims. *See Mullins*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Jian Zhong Li*, 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015) ("[T]he FLSA anti-retaliation provision extends to an action taken by a prior employer if that action would have the effect of dissuading a reasonable employee from pursuing FLSA relief."). Retaliation claims made by former employees for post-employment conduct are, however, allowed under "relatively narrow" circumstances. *Santos v. E T & K Foods, Inc.*, No. 16 Civ. 7107(DLI)(VMS), 2017 U.S. Dist. LEXIS 100495, at *8 (E.D.N.Y. June 27, 2017) (quoting *Jian Zhong Li v. Oliver King Ents., Inc.*, No. 14 Civ. 9293 (VEC), 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015)).

For instance, courts in the Second Circuit have recognized actionable retaliation claims in situations involving either "employment-related harm or a threatened legal claim," including threatening immigration-related consequences and instituting bad faith litigation against the employee. *Jian Zhong Li*, 2015 WL 4643145, at *3-4; *Liu v. Elegance Rest. Furniture Corp.*, No. 15-CV-5787 (RRM) (SMG), 2017 U.S. Dist. LEXIS 160110, at *14 (E.D.N.Y. Sep. 25, 2017) (finding that a

former employer's text messages threatening to alert authorities of plaintiff's immigration status is an adverse employment action); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008) (noting that "baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions").

Here, in spite of defendants' failure to raise this issue, the court finds that plaintiffs have alleged the second element of a retaliation claim, *i.e.* an adverse retaliatory action. Even though the alleged "retaliation" occurred after plaintiffs were no longer employed by defendants, using bogus federal agents to threaten former employees with back taxes would likely discourage others from seeking to enforce their FLSA rights. As noted above, in order to be actionable under the NYLL and FLSA retaliation statutes, the alleged conduct must involve either an employment-related harm or a threatened legal claim. The alleged conduct amounts to both, in that unpaid wages for work performed were threatened by the bogus federal agents, and tax liabilities were also threatened. Plaintiffs, however, were not personally deterred from continuing with this lawsuit, as they confirmed with the IRS that it had not sent any agents. (Am. Compl. ¶ 11.) Although plaintiffs have not suffered any harm specifically related to wrongful collections by the IRS, plaintiffs were threatened at their homes by the

bogus IRS agents with tax collections if they were to continue with the instant action.  Thus, the court finds that the alleged harassment in the instant case is actionable under the NYLL and FLSA retaliation statutes.

If plaintiffs' allegations regarding the harassment they experienced are true, as the court assumes for purposes of the futility analysis, the court finds that the alleged acts by defendants, in dispatching fake IRS agents to approach their litigation adversaries at their homes, sufficient to state a retaliation claim.  *Lucente*, 310 F.3d at 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."); *Santiago v. Crown Hts. Ctr. for Nursing and Rehab.*, No. 15-CV-4381, 2017 WL 9482107, at *5 (E.D.N.Y. Feb. 24, 2017) (when conducting futility analysis in the context of motions to amend, "[C]ourts accept all facts alleged by the moving party as true, and construe any ambiguities in favor of the moving party").  Though such conduct might well be actionable under other statutes, both civil and criminal, the court cannot preclude a NYLL or FLSA retaliation cause of action merely because other remedies may exist.

*Third*, the court considers whether plaintiffs have adequately alleged the third element of a retaliation claim, *i.e.* a causal connection between the protected activity and the

adverse employment action.  A causal connection may be
established either through (1) temporal proximity or (2)
evidence of retaliatory animus.  *Mullins*, 626 F.3d at 53; *Nunez*
*v. Metro. Learning Inst., Inc.*, No. 1:18-cv-1757 (FB)(VMS), 2019
U.S. Dist. LEXIS 185674, at *5 (E.D.N.Y. Oct. 24, 2019) (finding
it plausible that "the defendants retaliated against the
plaintiff four months after he filed [the] complaint by filing
the [a] lawsuit"); *Salazar*, 796 F.Supp.2d at 385.

The Second Circuit "has not drawn a bright line to
define the outer limits beyond which a temporal relationship is
too attenuated to establish a causal relationship." *Nunez*, 2019
U.S. Dist. LEXIS 185674, at *4 (E.D.N.Y. Oct. 24, 2019) (quoting
*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252
F.3d 545, 554 (2d Cir. 2001)).  Thus, courts, in exercising
their discretion, determine whether the protected activity and
the retaliation incidents are temporally proximate.  *See Gorman-*
*Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d
545, 554 (2d Cir. 2001)(finding a five-month gap sufficient to
find temporal proximity); *Santi v. Hot in Here*, *Inc.*, No. 18-
CIV-03028(ER), 2019 U.S. Dist. LEXIS 10296, at *13 (S.D.N.Y.
Jan. 22, 2019) (finding that defendants' counterclaim, which was
filed one month after plaintiff filed her complaint, was
temporally proximate); *Salazar*, 796 F. Supp. 2d at 384-385
(finding that plaintiff plausibly pleaded FLSA retaliation claim

where complaint alleged an eight-month gap between the protected activity and the adverse employment action).

Additionally, a court may consider "non-circumstantial evidence, such as written or verbal statements of retaliatory intent." *Salazar*, 796 F. Supp. 2d at 385.  For example, in *Patane v. Clark*, the Second Circuit expressly found that plaintiff had pled a causal connection where she allegedly overheard defendants "conspiring to drive her out of her job" and learned that one defendant "issued a negative performance review [complaining] about her attitude." *Patane v. Clark*, 508 F.3d 106, 116-17 (2d Cir. 2007) (finding that plaintiff had adequately pled a retaliation claim under Title VII).

Here, as noted above, defendants assert that the third element of a retaliation claim is not met because the alleged retaliation was not temporally proximate to the filing of the instant lawsuit. (Defs. Mem. 17.)  The court disagrees.

Defendants cite to two cases, both of which are readily distinguishable from the instant case. *Nicastro* concerned the summary judgment stage in the litigation, which required plaintiffs to meet a higher evidentiary standard by proffering admissible evidence. *See Nicastro v. New York City Dep't of Design & Const.*, 125 F. App'x 357, 358 (2d Cir. 2005). In addition, in *Baez*, the court stated that the plaintiff's retaliation claim failed because she did not allege any facts

demonstrating a causal connection or retaliatory animus.  *See Baez v. Visiting Nurse Serv. Of New York Family Care Serv.*, 2011 WL 5838441, at *6 (S.D.N.Y. 2011).

Plaintiffs here have expressly alleged a causal nexus between their lawsuit, a protected activity, and the home visit by the bogus IRS agents, in that "the individual impersonating an IRS official expressly told Simmons and Rivera to 'drop their lawsuit,' demonstrating clear retaliatory animus[.]"  (Motion 10.)  Plaintiffs have also alleged that this unidentified individual claimed that any money earned from the lawsuit would be paid to the IRS.  (Am. Compl. ¶¶ 88-90.)  Assuming these alleged facts are true, the court finds that the incidents described clearly demonstrate retaliatory intent to coerce plaintiffs into dropping the lawsuit.  As a result, the court finds that plaintiffs have adequately alleged all three elements of a *prima facie* retaliation claim with respect to Simmons and Rivera.

Finally, defendants assert that plaintiffs' alleged retaliation claims under the NYLL are futile because plaintiffs had not alleged that they served notice on the New York Attorney General ("NYAG") before commencing this action, a statutory requirement pursuant to NYLL § 215(2)(b).  Defendants proffer two cases in support of their argument, but both are procedurally inapposite because they arose in the context of

plaintiffs' request for a default judgment. *Romero v. Floris Const., Inc.*, No. 16-CV-4282, 2017 WL 5592681 (E.D.N.Y. Nov. 20, 2017); *Polit v. Global Foods Int'l Copr.*, No. 14-CV-7360, 2017 U.S. Dist. LEXIS 57255 (S.D.N.Y. Apr. 13, 2017).

Though courts disagree as to whether notice to the NYAG is a strict condition precedent to sue, a number of courts have granted a plaintiff additional time to submit proof of service of notification after the lawsuit was filed. *See Quintanilla v. Suffolk Paving Corp.*, No. CV 09-5331 (SJF) (AKT), 2011 U.S. Dist. LEXIS 34193, at *17-18 (E.D.N.Y. Feb. 10, 2011) (finding that "notice [to the NYAG] is not. . . a condition precedent that would bar this amendment [of the complaint]"); *Robledo v. No. 9 Parfume Leasehold*, 2013 U.S. Dist. LEXIS 57383, at *26-27 (S.D.N.Y. Apr. 9, 2013) ("[T]his Court will not reject Plaintiff's NYLL retaliation claim on the basis of late notice to the State Attorney General."). *But see Polit v. Global Foods Int'l Copr.*, No. 14-CV-7360, 2017 U.S. Dist. LEXIS 57255, at *22 (S.D.N.Y. Apr. 13, 2017) (denying without prejudice plaintiff's request for damages for unlawful retaliation under Section 215 of the NYLL on ground that plaintiff had not provided evidence that he served notice of the suit upon the NYAG, but granting 14 days to submit proof of such service).

On March 29, 2019, in plaintiffs' Reply Declaration of Mr. Pelton, plaintiffs informed the court that it had hand-

delivered a Notification of Retaliation to the NYAG, on March 25, 2019, and accordingly, had updated the proposed Amended Complaint to reflect such notice.  (ECF No. 53-1, Pelton Decl., Ex. A – Notice of Civil Action ¶¶ 3-4; ECF No. 53-2, Proposed Amended Complaint ¶ 93.)  Based on the foregoing, the court finds that plaintiffs' retaliation claims arising under the NYLL are not futile based on lack of notice to the NYAG, and grants plaintiffs' request to update the proposed amended complaint with paragraph 93, reflecting service of notice on the NYAG. (ECF No. 53-2, Proposed Amended Complaint ¶ 93.)

For the foregoing reasons, the court finds that the alleged retaliation claims are not futile because plaintiffs have alleged sufficient facts to state a claim for relief that is plausible on its face.  *See Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)); *see also Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Accordingly, the court **grants** plaintiffs' proposed addition of the retaliation claims with respect to Rivera and Simmons.

### c. Baldwin – Single Integrated Enterprise

Defendants assert that the claims against Baldwin are not plausible on their face because they are conclusory allegations that Baldwin and MooreGroup are successor entities or a single integrated enterprise.  "[W]hether a particular

defendant can be considered a plaintiff's 'employer' is a fact-specific inquiry." *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 84 (E.D.N.Y. 2011).  Courts in the Second Circuit evaluate several factors to determine whether multiple defendants constitute a single employer.[4]  *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 84 (E.D.N.Y. 2011); *Jaigua v. Kayafas Cont. Co.*, No. 18-CV-1941 (RJD) (SMG), 2019 U.S. Dist. LEXIS 38685, at *7-8 (E.D.N.Y. Mar. 11, 2019).  In the context of a motion to amend, "the relevant inquiry is whether a defendant has been put 'on notice of the theory of employer liability.'"  *Id.* (finding that plaintiffs had adequately alleged a new defendant was their employer where plaintiffs had fulfilled the notice requirement "by alleging, that, upon information and belief, '[a]t all times material to this action, the corporate Defendants formed a 'single integrated enterprise' as they shared common management, finances, and/or other resources") (quoting *Fowler v. Scores Holding Co.*, Inc., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009)).

Here, the court finds that plaintiffs alleged sufficient facts to put Baldwin on notice of the theory of

---

[4] The factors are "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. at 84 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995); *Bricklayers and Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F. Supp. 2d 130, 143 (N.D.N.Y. 2003)).

employer liability.  Plaintiffs allege that "upon information and belief, [Baldwin] is an active New York Corporation with its principal place of business at 1 Jefferson Place, Baldwin, New York 11510," the same address as that of MooreGroup.  (Am. Compl. ¶¶ 14-15.)  In addition, plaintiffs allege that upon information and belief, Baldwin "does not possess any financial resources independent of MooreGroup and instead pays MooreGroup employees with funds of MooreGroup paid to [Baldwin] for that purpose."  (*Id.* ¶ 21.)  Plaintiffs also allege that Baldwin and MooreGroup are "owned, operated and managed by the same individuals at the same corporate office, utilizing the same corporate practices and policies."  (*Id.* ¶ 24.)  Furthermore, plaintiffs allege that after returning to work for defendants in February 2018, Rivera, while "working . . . under the same supervisors as he had during his prior employment with Defendants, performing the same work and paid in the same manner as in the past," began receiving paychecks form Baldwin instead of MooreGroup.  (*Id.* ¶ 75.)  Therefore, plaintiffs have alleged interrelation of operations and "common management, finances, and/or other resources" sufficient to place Baldwin on notice of the theory of employer liability.  Thus, it would not be futile or prejudicial to permit plaintiffs to amend the complaint to add Baldwin.

> d. <u>Baldwin – Covered Employer under FLSA</u>

Defendants assert that plaintiffs have not sufficiently pleaded that Baldwin engaged in interstate commerce, which is a requirement under 29 U.S.C. § 203 of the FLSA ("Section 203"). (Defs. Mem. 15.)  An employer is covered under Section 203 if it "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]"  29 U.S.C. § 203(s)(1)(A).  Though defendants do not dispute that plaintiffs have sufficiently pleaded the second prong,[5] defendants assert that plaintiffs have failed to assert that either "[Rivera] or Baldwin Harbor engaged in interstate commerce."  (Defs. Mem. 15.)

The court agrees that plaintiffs have not pleaded facts to suggest that Rivera was engaged in interstate commerce, the production of goods for interstate commerce, or working on goods or materials that were moved in or produced for interstate commerce.  The court also agrees that plaintiffs offer minimal

---

[5] Defendants assert that "Plaintiffs . . . state, improperly, that the 'Corporate Defendant had gross revenues in excess of $500,000." (Defs. Mem. 15-16.)  Though the proposed Amended Complaint defines "Corporate Defendants" to include Baldwin and MooreGroup, the court understands that plaintiffs alleged gross revenues, on the part of Baldwin, in excess of $500,000.00 (ECF No. 49-2, Ex. B ¶¶ 15, 29.)

allegations concerning Baldwin's activities in interstate commerce.  Plaintiffs assert that Baldwin, like the other corporate defendants, "ha[s] been and continue[s] to be [an] employer[] engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA."  (Am. Compl. ¶ 26.)

But the fact that plaintiffs have not pleaded specific facts as to Rivera's and/or Baldwin's activities in interstate commerce is not necessarily fatal to plaintiffs' FLSA claims at this stage.  Indeed, the pleading requirement for the first prong under Section 203 is not particularly onerous.  Even where plaintiffs arguably did not adequately allege that defendants engaged in interstate commerce, courts have often inferred from the nature of the business that the first prong under Section 203 was met.  *See, e.g.*, *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120-21 (E.D.N.Y. 2011) (inferring that enterprise was engaged in interstate commerce where employees handled supplies or equipment that originated out-of-state) (collecting cases); *Vega v. K & C Interior Constr. Corp.*, No. 18-CV-182, 2018 WL 4376486, at *2 (E.D.N.Y. Aug. 28, 2018) ("Considering the nature of K & C's business as an interior construction company, it is reasonable to infer that K & C engaged in interstate commerce by handling and otherwise working on construction materials moved from or produced in other

states."); *Zhang v. Wen Mei, Inc.*, No. 14-CV-1647(JS)(SIL), 2014
U.S. Dist. LEXIS 152498, at *7 (E.D.N.Y. Oct. 27, 2014)
(collecting cases).  *But see Kaplan v. Wings of Hope Residence,
Inc.*, No. 2:18-cv-02972 (ADS)(AKT), 2018 U.S. Dist. LEXIS
207138, at *16-17 (E.D.N.Y. Dec. 7, 2018) (dismissing FLSA claim
because plaintiff had not adequately alleged facts regarding
employees' activities in interstate commerce); *Gunawan v. Sake
Sushi Rest.*, 897 F. Supp. 2d 76, 85-86 (E.D.N.Y. 2012)
(declining to infer "an interstate commerce nexus from nothing
more than the general description of an employer's business –
however likely the conclusion may seem").

Here, the court may infer that the first prong under
Section 203 is met for purposes of the instant Motion.  In
addition to alleging that Baldwin is engaged in interstate
commerce, plaintiffs also allege that Baldwin is "in the
construction contracting business."  (Am. Compl. ¶ 43.)  It is
likely that many of the tools, equipment, and materials used by
defendants' employees in their construction work originated out-
of-state and, thus, moved within interstate commerce.  *See,
e.g.*, *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 U.S. Dist.
LEXIS 6014, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009)
(finding that though plaintiffs' complaint "does not explicitly
allege that the corporate defendants are an enterprise engaged
in interstate commerce, courts nevertheless have noted that

'virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA'") (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (emphasis omitted)).  Because the court may infer the first prong under Section 203 is met, and defendants do not dispute the second prong under Section 203 is met, the court finds that plaintiffs have adequately pleaded that Baldwin is a covered employer under Section 203 of the FLSA for purposes of the instant Motion.

**CONCLUSION**

For the foregoing reasons, the court **grants** plaintiffs' Motion to Amend, including plaintiffs' requests: (i) to add Rivera as a named plaintiff; (ii) to add Baldwin as an additional defendant; and (iii) to add retaliation claims with respect to Rivera and Simmons.  Plaintiffs shall file the Amended Complaint **on or before January 13, 2020**, and serve additional defendant Baldwin with process.  Within two business days of plaintiffs' filing of the Amended Complaint, the court directs the parties to file a joint letter, certifying that the Amended Complaint complies with this Order and contains

reference to the required notice to the NYAG, pursuant to §

215(2)(b) of the NYLL.  As needed, any discovery-related or

other pretrial issues or questions are respectfully referred to

Magistrate Judge Scanlon.

**SO ORDERED.**

Dated: January 2, 2020
       Brooklyn, New York


                                    /s/
                              _____
                              KIYO A. MATSUMOTO
                              United States District Judge