UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSHUA PORTER, SHARKEY SIMMONS, and EMANUEL         Case No.:17-cv-07405
COLAJAY RIVERA, Individually and on Behalf of All Others
Similarly Situated,

                                        Plaintiffs,

        - against –

MOOREGROUP CORPORATION, BALDWIN HARBOR
CONTRACTING INC., JOHN MOORE, GARY MOORE
and MARTIN MOORE, Jointly and Severally,

                                        Defendants.
------------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

On the Memorandum:

    Elbert F. Nasis, Esq.
    Gregory S. Lisi, Esq.
    Michael A. Berger, Esq.

                                    FORCHELLI DEEGAN TERRANA LLP
                                    *Attorneys for Defendants*
                                    333 Earle Ovington Blvd., Suite 1010
                                    Uniondale, New York 11553
                                    Tel.: (516) 248-1700

**Table of Contents**

Page

PRELIMINARY STATEMENT ......................................................................................................1

PROCEDURAL HISTORY...........................................................................................................2

STATEMENT OF FACTS ...........................................................................................................3

I.      MOOREGROUP'S OPERATIONS.................................................................................4

II.     MEMBERS IN THE PUTATIVE RULE 23 CLASS ARE NOT SIMILAR ...................7

        A.   CARPENTERS AND LABORERS ....................................................................7

        B.   FIRE GUARDS AND WELDERS .....................................................................9

        C.   REBAR WORKERS.........................................................................................11

        D.   CONSTRUCTION EMPLOYEES ...................................................................12

LEGAL ARGUMENT.................................................................................................................13

I.      CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS
        CANNOT ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT
        THEY SATISFIED THE REQUIREMENTS OF RULE 23. .........................................13

        A.   THE COURT MUST CONDUCT A "RIGOROUS ANALYSIS" UNDER
             RULE 23 ............................................................................................................13

        B.   PLAINTIFFS FAILED TO SATISFY THE PREDOMINANCE AND
             SUPERIORITY REQUIREMENTS UNDER RULE 23(B)(3) ...........................14

             1.   Predominance: A Class Will Not Advance the Efficiency or Economy
                  of this Litigation....................................................................................14

                  a.   Independent contractors cannot be part of the putative class ......................15

                  b.   Purported allegations of uncompensated hours are individualized
                       issues and do not predominate ...................................................................18

             2.   The Rule 23 Class is Not Superior..........................................................19

                  a.   Independent actions are superior to a Rule 23 Class ...................................20

                  b.   Proceeding with the FLSA Collective is superior.........................................21

                  c.   Plaintiffs fail to satisfy Rule 23(c)(1) by delaying in seeking
                       a Rule 23 Class............................................................................................23

                  d.   Plaintiffs' request for an overly broad Rule 23 Class must be denied..........23

        C.   PLAINTIFFS FAILED TO SATISFY THE COMMONALITY, ADEQUACY OF
             REPRESENTATION, TYPICALITY AND NUMEROSITY REQUIREMENTS
             UNDER RULE 23(A)..........................................................................................24

1.   There is No Commonality Between Class Members ........................................24

2.   The Named Plaintiffs Do Not Provide Adequate Representation ....................26

3.   There is No Typicality of Interest Between Putative Class Members ...............28

4.   The Class is Not So Numerous That Joinder Would Be Impractical ................29

CONCLUSION ....................................................................................................................30

## Table of Authorities

**Cases**

*All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*,
   280 F.R.D. 78 (E.D.N.Y. 2012) ..................................................................... 14

*Amador v. Morgan Stanley & Co. LLC*, No. 11-cv-4326 (RJS),
   2013 WL 494020 (S.D.N.Y. 2013) ................................................................ 23

*Frank v. Capital Cities Commc'ns, Inc.*, No. 80-cv-2188 (CSH),
   1983 WL 643 (S.D.N.Y. 1983) ..................................................................... 21

*Gaul v. Chrysler Fin. Servs. Ams. LLC*,
   657 F. App'x 16 (2d Cir. 2016) ................................................................... 13

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................. 15, 28

*Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339 (ALC)(JLC),
   2014 WL 5039431 (S.D.N.Y. 2014) ............................................................ 15, 16

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   411 B.R. 142 (S.D.N.Y. 2009) ...................................................................... 18

*In re Initial Pub. Offerings Secs. Litig.*,
   471 F.3d 24 (2d Cir. 2006) .......................................................................... 14

*Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &*
   *Helpers of Am.*, 109 F.R.D. 391 (S.D.N.Y. 1986) ............................ 25, 26, 27, 28

*Koster v. Perales*,
   108 F.R.D. 46 (E.D.N.Y. 1985) ......................................................... 13, 24, 29

*Lin v. Benihana Nat'l Corp.*,
   275 F.R.D. 165 (S.D.N.Y. 2011) ............................................................. 14, 26

*Maddox & Starbuck, Ltd v. British Airways*,
   97 F.R.D. 395 (S.D.N.Y. 1983) ..................................................................... 28

*McDermott v. Fed. Sav. Bank*, No. 14-cv-6657 (WFK)(SJB),
   2020 WL 6295058 (E.D.N.Y. 2020) ........................................................ 21, 29

*Morangelli v. Chemed Corp.*,
   275 F.R.D. 99 (E.D.N.Y. 2011) ..................................................... 13, 14, 16, 19

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)..................................................................... 13, 14, 15

*Nat'l Convention Servs., LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
No. 15-cv-7063 (JGK), 2019 WL 3409882 (S.D.N.Y. 2019) ........................... 20, 24

*Pablo v. Servicemaster Global Holdings Inc.*, No. C 08-03894 (SI),
2011 WL 3476473 (N.D. Cal. 2011) ........................................................... 24

*Rodriguez-Depena v. Parts Auth. Inc.*, No. 15-cv-6463 (ENV)(VMS),
2016 WL 10932999 (E.D.N.Y. 2016)....................................................... 23, 29

*Saleem v. Corporate Transp. Grp., LTD*, No. 12-cv-8450 (JMF),
2013 WL 6061340 (S.D.N.Y. 2013) .......................................................... 13, 15, 16

*Sanders v. Faraday Labs., Inc.*,
82 F.R.D. 99 (E.D.N.Y. 1979) ................................................................. 23
*Sorey v. Computer Credit, Inc.*, No. 05-cv-6052 (PKC),
2006 WL 8461819 (S.D.N.Y. 2006) .......................................................... 30

*Suvill v. Bogopa Serv. Corp.*, No. 11-cv-3372 (SLT)(RER),
2014 WL 4966029 (E.D.N.Y. 2014) .......................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................ 13, 14, 24, 25

**Statutes**

29 U.S.C. § 216(b) ............................................................................... 2

NYLL § 195 ....................................................................................... 2

**Federal Rules**

Rule 23(c)(1) ...................................................................................... 23

Rule 23 ................................................................................... 1, 12, 13, 14, 21

Rule 23(a) ......................................................................................... 1, 24

Rule 23(b) ......................................................................................... 1

Rule 23(b)(3) .......................................................................... 13, 14, 24, 26

## PRELIMINARY STATEMENT

Defendants, MooreGroup Corporation ("MooreGroup"), John Moore, Gary Moore, and Martin Moore (collectively, the "MooreGroup Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

Plaintiffs, Joshua Porter ("Porter"), Sharkey Simmons ("Simmons"), and Emanuel Colajay Rivera ("Rivera") (collectively, the "Named Plaintiffs"), moved for an order pursuant to Rule 23 of the FRCP to certify a class of "all fire guards, welders, carpenters, laborers and other construction employees who worked for the MooreGroup Defendants at any time since December 20, 2011" (hereinafter "Rule 23 Class").[1]

Plaintiffs' motion should be denied because Plaintiffs fail to meet their burden under both Rule 23(a) and Rule 23(b).  Firstly, pursuant to Rule 23(a), Plaintiff's fail to establish the requisite four conditions to qualify for class treatment; to wit: commonality, adequacy of representation, typicality and numerosity.  Here, significant and material differences exist among members of different job classifications and members within the same job classification.  Secondly, Plaintiffs also fail to satisfy the elements of Rule 23(b) given (i) a determination as to whether Plaintiffs are entitled to overtime and unpaid hours requires an individualized analysis and (ii) a Rule 23 Class is not the superior form of adjudication to resolve the Plaintiffs' claims.  Accordingly, Plaintiffs' motion should be denied in its entirety.

---

[1] In their Amended Class & Collective Action Complaint, Plaintiffs seek to certify a class of "[a]ll persons employed by Defendants in New York at any time since December 20, 2011 and through the entry of judgment in this case . . . who worked as fire guards, welders and other construction employees."  [Dkt # 63 at ¶ 34].

## PROCEDURAL HISTORY

On December 20, 2017, Porter and Simmons filed a lawsuit against the MooreGroup Defendants alleging the MooreGroup Defendants failed to properly compensate Plaintiffs and similarly situated employees for alleged overtime in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). [Dkt # 1].  Plaintiffs also alleged the MooreGroup Defendants failed to provide wage notices and wage statements in violation of NYLL §§ 195 (1) and (3).  *Id.*  On February 23, 2018, Defendants joined issue by serving their Answer to Plaintiffs' Complaint.  [Dkt # 14].

On May 15, 2018, in furtherance of 29 U.S.C. § 216(b), the parties entered into a Stipulation and Order Conditionally Certifying a Fair Labor Standards Act Collective Action and Authorizing Notice to be Issued to All Persons Similarly Situated (the "FLSA Collective").  [Dkt # 21].  The MooreGroup Defendants complied with this Order, providing the contact information for all potential plaintiffs by July 14, 2018.  The Plaintiffs then mailed the notices to all persons similarly situated, and potential plaintiffs were given sixty (60) days to opt-in, approximately the end of September 2018.  [Dkt # 21].  As a result of such notices, only four individuals opted-in to the lawsuit, Hector Martinez, Henry Martinez ("Martinez"), Elvis Paz ("Paz"), and Emanuel Colajay Rivera ("Rivera").  [Dkt # 23-25, 27].[2]

Thereafter, Plaintiffs amended their Complaint to add Rivera as a named plaintiff, add Baldwin Harbor Contracting Inc. as a defendant, and assert new causes of action for retaliation under the FLSA and NYLL on behalf of Simmons and Rivera.  [Dkt #63].  On April 1, 2020, about one-and-one-half years after the close of the opt-in period, Plaintiffs sought to file a late Consent to Become Party Plaintiff for Oscar Vigil ("Vigil"). [Dkt #70].  On July 1, 2020, citing the judicial

---

[2] Rivera filed his Consent to Become Party Plaintiff on September 19, 2018, after the opt-in period ended.  [Dkt #27]. Defendants did not contest the late filing.

2

efficiency of the FLSA Collective, the Hon. Vera M. Scanlon, U.S.M.J., granted Plaintiffs' request, and Vigil joined the FLSA Collective.  Notably, on August 17, 2020, almost two (2) years after the close of the opt-in period, with Defendants' consent, an additional three individuals, Jaime Rogel Ramos ("Ramos), Ricardo Trejo ("Trejo"), and Juan Pablo Guaman ("Guaman") filed Consents to Become Party Plaintiffs.  [Dkt # 77-79].

The parties conducted substantial paper discovery of both the named and opt-in plaintiffs and all plaintiffs and individual defendants were deposed.  As a result of discovery conducted, the MooreGroup Defendants determined that opt-in plaintiff Hector Martinez's claims were time barred under both the FLSA and NYLL statute of limitations.  On Plaintiffs' consent, his claims were dismissed with prejudice on November 8, 2020.  [Dkt # 82].

## STATEMENT OF FACTS

MooreGroup is a construction company that performs commercial construction, primarily excavation, foundation, and concrete superstructure.  (Nasis Decl., ¶ 3, Ex. A: J. Moore Dep. 20:17-21; ¶ 4, Ex. B: G. Moore Dep. 19:24-25; 20:2-13; 21:11-16).[3]  While MooreGroup directly employs administrative staff, estimators, and working foremen who are salaried, it retains the services of laborers, carpenters, machine operators, fire guards, welders, and rebar men either through professional employer organizations or as independent contractors.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 23:4-17; 41:16-19; 42:8-15; 44:11-13; 88:5-12; 90:5-15).  Depending on the number of active jobs, and the size of the jobs, MooreGroup retained the services of between twenty to twenty-five laborers and ten to twelve carpenters.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 43:14-25; 44:2-4).

---

[3] All references to "Nasis Decl." refer to the Declaration of Elbert F. Nasis, Esq. Submitted in Opposition to Plaintiffs' Motion for Class Certification, dated February 12, 2021, and the exhibits attached thereto.

## I.  MOOREGROUP'S OPERATIONS

John Moore, MooreGroup's Vice President, oversees the day-to-day operations of the MooreGroup and is responsible for hiring, firing and setting wage rates.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 18:5-23).

MooreGroup typically performs services five days per week, from Monday through Friday. Occasionally, as a result of weather-related closures during the week, MooreGroup operates on Saturdays per owners' requests to maintain schedule.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 44: 14-25; 45:2-8).  Those providing services for or on behalf of MooreGroup work an eight (8) hour shift, from 7:00 am to 3:30 pm.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 54:10-12; 55:2-3).  When such person stays after 3:30 pm, that person would be working on rotation, meaning his shift starts later in the morning, such as 9:00 am or 10:00 am.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 56:15-25; 57:2-6; 58:3-15).  As a result, individuals rarely work overtime, typically performing eight-hour shifts, five days per week, for a total of forty (40) hours per week.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 51:3-14; 58:13-15).  Since MooreGroup limits individuals to forty (40) hours per week, many perform services for other contractors as a way of supplementing their income.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 73:20-25; 74:2-6; 80:16-25; 81:2-11; 129:7-12).

MooreGroup uses working foreman to relay individuals' hours to John Moore on a weekly basis.  Over the years, this has been done verbally, via written sign-in sheets, and electronically through biometric time clocks (thumb scanners).  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 51:15-25; 52:2-15; 58:20-22).  The biometric time clocks rely on wi-fi connections, which are often inconsistent at the jobsites and unreliable.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 52:16-24).  As a result, individuals frequently seek to take advantage of those limitations and the company.  When the time clock was not working, some individuals who showed up late would erroneously inform

the foremen that they arrived at 7:00 am.  Even when the time clock was operational, some individuals, including Simmons and Porter, scanned in and then left the jobsite to get breakfast, failing to work all the hours they alleged.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 147:15-25; 148:2-20; ¶ 5, Ex. C: Trejo Dep. 54:11-23).  To account for inaccuracies in the biometric time clocks and individuals' assertions of unpaid hours, the foremen also used paper timesheets to record individuals' arrivals and departures.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 54:4-9).  Standardized timesheets were available at every jobsite, but each foreman had a different way of recording hours. (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 120:13-25; 121:2-18).

Most of the individuals were compensated on an hourly basis, with the exceptions being working foremen, administrative employees, and estimators.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 89:11-16; 90:5-11).  At the time of hiring, individuals were advised of their hourly rate and schedule, typically forty (40) hours per week, and provided with said information in a paperwork request package.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 90:20-25; 91:2-11).  The paperwork request package contained documents notifying individuals of their wage rate, pay day, and entitlement to overtime when working in excess of forty (40) hours per week.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 92:11-23).  This documentation was provided to individuals at each new project and no less frequently than once per year. (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 93:6-14).

John Moore prepared paychecks weekly using the foremen's reports, cross-referencing the reports with the records from the biometric time clock.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 159:23-25; 160:2-6).  Contrary to Plaintiffs' allegations, there was no systemic, coordinated company-wide policy to compensate individuals for fewer hours than they actually worked.  Indeed, Plaintiffs can neither cite nor provide any admissible evidence to support their misguided assertion.  Here, the reality is far more benign as inconsistencies between individuals' claimed

hours, the foreman's report, and the records from the biometric time clock as well as miscommunications by the foremen are far cries from establishing Plaintiffs' purported claim. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 174:16-25; 175:2-6 stating "[w]hoever is taking the shit down is doin' it wrong"; ¶ 7, Ex. E: Rivera Dep. 84:12-17 stating that John Moore did not receive the complete report; ¶ 5, Ex. C: Trejo Dep. 101:17-24 believing the office made a mistake in recording the hours). Allegations of missing hours were not as commonplace as Plaintiffs feign. Indeed, some individuals were never missing hours from their paycheck. (Nasis Decl., ¶ 8, Ex. F: Martinez Dep. 99:25, 100:2-15).

Alleged discrepancies in the difference between hours worked and hours paid were also the result of a foreman's individual procedures implemented. When individuals arrived to the jobsite late and worked fewer than eight (8) hours, the working foreman had discretion to credit the individual for a full eight-hour shift. (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 174:14-20). Depending on the foreman and individual's frequency of late arrivals or absences, some individuals were permitted to arrive and clock in late, while others were sent home from a jobsite for arriving five minutes late. (Nasis Decl., ¶ 9, Ex. G: Vigil Dep. 29:17-25; ¶ 3, Ex. A: J. Moore Dep. 120:22-25). Independent contractors and those who were in charge of their work groups (such as Ramos, a self-proclaimed foreman who oversaw the construction of stairs) could not be and were not disciplined for arriving late. (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 66:14-19).

When individuals complained about not being paid for all the hours they purportedly worked, John Moore went to great lengths to verify their allegations. Specifically, he reviewed the records from the biometric time clock, compared those records with the foreman's report, and spoke with both the foreman and co-workers. In the event an error occurred in preparing a paycheck and additional compensation was properly due, John Moore corrected the deficiency,

paying the laborer as soon as the discrepancy was verified.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 62: 6-22; ¶ 11, Ex. I: Porter Dep. 228:23-25; 229:2-8; 244:6-24; ¶ 12, Ex. J: Paz Dep. 87:17-22).

    In or around 2019, Cesar Pillajo, a working foreman for MooreGroup, presented all of the individuals at the jobsite with an agreement regarding claims for overtime that were being cast about.  (Nasis Decl. ¶ 13, Ex. K: Guaman Dep. 132:23-24; 133:2-25; 135:12-17).  Vigil understood that by signing the document, he would "not sue anyone for unpaid overtime hours."  (Nasis Decl., ¶ 9, Ex. G: Vigil Dep. 129:3-20; 130:8-10; 131:5-7; ¶¶ 15 & 20, Exs. M & Q).  Vigil signed the agreement, understanding that if he signed the document, he was waiving any right to sue MooreGroup for unpaid overtime.  (Nasis Decl., ¶ 9, Ex. G: Vigil Dep. 130:11-15).  Similar to Vigil, several individuals represented that they were not owed overtime by signing an identical agreement.  (Moore Decl. ¶ 8).[4]

## II.    MEMBERS IN THE PUTATIVE RULE 23 CLASS ARE NOT SIMILAR

    As addressed above, MooreGroup hired administrative staff, estimators, working foremen, laborers, carpenters, machine operators, fire guards, welders, and rebar men.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 41:16-19; 42:8-15; 88:5-12).  Significant and material differences exist across individuals in different job classifications, and among individuals within the same job classification.

### A.  CARPENTERS AND LABORERS

    The carpenters and laborers performed various manual tasks for MooreGroup including, but not limited to, hanging sheetrock, framing, cement work, insulation installation, and painting. (Nasis Decl., ¶ 7, Ex. E: Rivera Dep. 15:25; 16:2-4).  The carpenters and laborers had substantial experience in the field, received no training from MooreGroup, and performed their assigned tasks

---

[4] All references to "Moore Decl." refer to the Declaration of John Moore Submitted in Opposition to Plaintiffs' Motion for Class Certification, dated February 12, 2021.

without supervision.  They purchased their own tools, each individually determining what tools were necessary for their job at hand.  (Nasis Decl., ¶ 7, Ex. E: Rivera Dep. 46: 9-25; 47:2-25; 48:2-6; 51:10-12; ¶ 12, Ex. J: Paz Dep. 21:8-19; ¶ 9, Ex. G: Vigil Dep. 39:21-24; 79:2-25; 80:2-25; 81:2-5; ¶ 10, Ex. H: Ramos Dep. 38:6-23).

While the carpenters and laborers performed similar tasks, they were not all subject to uniform policies.  One of the plaintiffs, Martinez, was a member of a carpenters' union, Local Union 7, during his engagement with MooreGroup.  (Nasis Decl., ¶ 8, Ex. F: Martinez Dep. 33:14-25: 34:2-11).  No other plaintiff was a union member nor were they subject to any Collective Bargaining Agreement.  Additionally, some of the carpenters and laborers dictated the terms of their work.  Notably, Vigil set his own schedule, unilaterally deciding he would not work one day of the workweek.  (Nasis Decl., ¶ 9, Ex. G: Vigil Dep. 71:7-11; ¶ 10, Ex. H: Ramos Dep. 35:4-11).  Other individuals, like Rivera, performed all the tasks they were assigned and reported to the jobsites for which they were needed.  Still, other laborers had more freedom, refusing certain assignments and declining to report to jobsites that required lengthy commutes.  (Nasis Decl., ¶ 7, Ex. E: Rivera Dep. 104:6-25; 105:2-10).

Other carpenters and laborers, who had more experience and skill, exercised even more discretion and had more control.  Ramos was in charge of work on the stairs and served as a self-proclaimed foreman, supervising and directing the work of two (2) to four (4) individuals.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 25:4-15; 29:18-25; 30:2-6).  In addition to supervising these individuals, he directed which jobsites they should report to by texting or calling them the day before.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 47:9-16).  Ramos was instrumental in MooreGroup securing Vigil's services, bringing Vigil to MooreGroup and setting Vigil's wage rate.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 32:22-24; 33:24-25; 34:2-23).  Furthermore, Ramos also utilized

8

independent discretion to work or stay home in certain weather.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 55:5-9).

## B.  Fire Guards and Welders

Unlike the laborers and carpenters, the fire guards and welders performed highly specialized work.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 65:11-14; ¶ 6, Ex. D: Simmons Dep. 34:7-11).  In order to serve as a fire guard or welder, an individual must receive numerous certifications.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 29:24-25; 30:2-7).  First, they must take requisite classes mandated by OSHA and thereafter successfully complete tests to obtain their OSHA safety card.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 32:2-6; ¶ 6, Ex. D: Simmons Dep. 76:15-21).

To receive the fire guard certification, F-60, and torch operator certification, G-60, an individual must study for and pass multiple tests.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 30:21-25; 31:2-11).  Porter invested a significant amount of time into obtaining his F-60 and G-60 certifications.  He studied the materials and took three (3) to four (4) pretests per day in anticipation of receiving the F-60 certification.   (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 60:15-25; 61: 2-8).  For his G-60 certification, he studied for two weeks, taking as many as twenty (20) pretests.  Similarly, in obtaining a welding certification from the American Welders Society, Simmons invested a significant amount of time, studying welding test materials, watching several instructional videos, and attending full-time classes, eight hours per day, five days per week, for six weeks.  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 44:4-20; 67:15-25; 68:2-7).  All this was on his own time.   (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 68:9-25; 69:11-17).

The fire guards and welders, individually, also made substantial financial investments.  Each F-60 and G-60 test cost between $50 and $60.  When Porter failed the tests, he retook them until he passed, paying out of his own pocket the testing fee for each retest.  (Nasis Decl., ¶ 11,

Ex. I: Porter Dep. 62:9-23; 63:7-15). The F-60 and G-60 certifications must be renewed periodically and a corresponding renewal fee paid. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 39:23-25; 40:2-3). Additionally, Simmons paid $800 for the American Welders Society's welding test and continues to pay a corresponding renewal fee every six (6) months. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 45:13-20; 46:18-20; 66:25; 67:2-11). Porter also purchased specialized equipment necessary for him to perform his duties as a fire guard and torch operator. For example, when he experienced difficulty breathing, as a result of the welding, he went for testing and was told he required a specialized breathing apparatus, the cost of which was $150, along with filters, which had to be replaced. (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 131:13-25; 132:2-25). To this end, Porter himself paid for these costs.

There were only two fire guards and four welders performing services for MooreGroup. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 262:16-20). At the jobsite, the fire guards, torch operators and welders worked independently of the laborers, did not mix with the other job classifications, and were subject to different procedures. (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 79:12-24). Indeed, the fire guards and welders were available and permitted to work for contractors other than the MooreGroup. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 214:21-25; 215:2-7). For example, Porter performed fire guard services at jobsites for other contractors and reported to and was directed by those contractors. (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 92:13-22; 93:6-13; 95:8-15; 240:24-25; 241:2-8). Similarly, Simmons reported to multiple individuals at the jobsite, several of whom did not work for MooreGroup. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 121:20-25; 122:2-3; 123:6-17).

The fire guards and welders exercised significantly more discretion in their work than the other job classifications. Whereas carpenters and laborers had to notify their supervisor when they

10

called out sick, Simmons only did so out of professional courtesy.  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 162:17-24; 186:24-25; 187:2).  Similarly, whereas many laborers and carpenters were required to work in the rain, snow and heat, Simmons did not work in certain weather: "[y]ou don't look at no damn thermometer.  You don't let nothin' tell you nothin' other than you tell yourself."  If it was 20 degrees or 90 degrees at the jobsite, Simmons was "not going."  Simply put, Simmons did not work when he did not want to: "if I don't feel like I could do it in this weather I am not going to go."  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 163:5-25; 164:2-25; 165:2; ¶ 7, Ex. E: Rivera Dep. 70:12-14; ¶ 9, Ex. G: Vigil Dep. 84:11-25; 85:2; ¶ 13, Ex. K: Guaman Dep. 101:13-21; ¶ 12, Ex. J: Paz Dep. 56:2-25).  Porter, on the other hand, although also a fire guard and welder, did not exercise the same discretion despite being able to do so.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 182:20-25; 183:2-9).

### C. REBAR WORKERS

In preparing the foundation, MooreGroup utilized rebar workers.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 78:23-25; 79:2-9).  While some of the rebar work was basic and could be performed by unskilled laborers, other work was sophisticated, requiring experienced, specialized rebar workers.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 79:10-25; 80:5-8).  The rebar work required a "whole different skill set."  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 155:11-14).  Unlike other job classifications, like carpentry where work was available daily, the rebar workers only worked certain days of the week, when MooreGroup ordered rebar.  These individuals did not have a fixed schedule and often performed services for other companies.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 74:23-25; 75:2-7).

None of the plaintiffs were rebar workers and the record is completely devoid of any evidence rebar workers were: (i) MooreGroup's employees; (ii) not properly compensated for

overtime; (iii) missing hours in their paychecks; or (iv) otherwise failed to receive the required wage notices and wage statements. (Nasis Decl., ¶ 5, Ex. C: Trejo Dep. 40:7-10). To this end, the plaintiffs were completely unaware of policies applicable to the rebar workers for which they were subject and adhered to. (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 156:20-22).

### D.  CONSTRUCTION EMPLOYEES

Finally, Plaintiffs seek to include "construction employees" in a Rule 23 Class. This term, "construction employees", is incredibly vague. Every individual on a list previously provided by the MooreGroup for the FLSA Collective is arguably a "construction employee," and there is no evidence they were owed overtime (and if they were, that they were not paid overtime), worked hours for which they were not compensated, or did not receive wage notices or wage statements. (Nasis Decl., ¶ 14, Ex. L: Bates Stamped D275-D277). Gary Moore, for instance, an estimator employed by the MooreGroup, is paid a salary and does not punch a clock. Gary Moore received paychecks, wage statements and wage notices from the MooreGroup. (Nasis Decl., ¶ 4, Ex B. G. Moore Dep. 50:16-25; 51:2-8; 88:21-25; 89:2-4). Certainly, Plaintiffs do not contend that Gary Moore, a "construction employee" and individual Defendant, is a member of the putative Rule 23 Class. Similarly, the FLSA Collective list included Cesar Pillajo, Manolo Paz and Martin Wilson, all of whom are individuals the plaintiffs identified as supervisors or working foremen. (Nasis Decl., ¶ 7, Ex. E: Rivera Dep. 32:8-15; ¶ 13, Ex. K: Guaman Dep. 28:17-18; ¶ 5, Ex. C: Trejo Dep. 20:15-16; ¶ 12, Ex. J: Paz Dep. 13:2-6; 41:12-18). It is clear that these individuals -- estimators, working foremen and supervisors -- were "construction employees" who were paid a salary, were not subject to the same policies as the laborers, and are nevertheless exempt and thus are not proper for inclusion in any putative Rule 23 Class.

12

## LEGAL ARGUMENT

## I.  CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS CANNOT ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT THEY SATISFIED THE REQUIREMENTS MANDATED BY RULE 23.

### A.  THE COURT MUST CONDUCT A "RIGOROUS ANALYSIS" UNDER RULE 23.

The party moving for class certification "has the burden to prove by a preponderance of the evidence that certification satisfies each Federal Rule of Civil Procedure 23(a) prerequisite and the applicable 23(b) requirements." *Gaul v. Chrysler Fin. Servs. Ams. LLC*, 657 F. App'x 16, 18 (2d Cir. 2016); *see Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  Pursuant to Rule 23(a), Plaintiffs must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *see Koster v. Perales*, 108 F.R.D. 46, 48 (E.D.N.Y. 1985); *see* FED. R. CIV. P. 23.  Additionally, plaintiffs "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc.*, 564 U.S. at 345.  Under Rule 23(b)(3), which Plaintiffs contend is applicable here, Plaintiffs must demonstrate: "(1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) that a 'class action is superior to other available methods' for adjudicating the controversy." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 104 (E.D.N.Y. 2011).

Unlike a plaintiff's burden for a collective action under the FLSA, the Court must conduct a "rigorous analysis" of the proffered evidence and determine whether Plaintiffs satisfied all of the requirements under Rule 23.  *See Saleem v. Corporate Transp. Grp., LTD*, No. 12-cv-8450 (JMF), 2013 WL 6061340, *3 (S.D.N.Y. 2013); *see also Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165,

176 (S.D.N.Y. 2011) (finding the requirements under Rule 23 are more stringent than those under the FLSA).   Contrary to Plaintiffs' assertions here, this "rigorous analysis" often requires consideration of the merits of a plaintiff's claims, both factually and legally.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 351; *see also Morangelli*, 275 F.R.D. at 104-05.  Indeed, the court cannot simply rely on a plaintiff's unsupported assertions, but must consider all relevant evidence applicable to each Rule 23 requirement.  *See In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006).

### B.  PLAINTIFFS FAILED TO SATISFY THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS UNDER RULE 23(B)(3).

Plaintiffs have not established that the claims of putative Rule 23 Class members can be resolved without significant individualized proof or that a Rule 23 Class is superior to alternative forms of adjudication.

### 1.  Predominance: A Class Will Not Advance the Efficiency or Economy of this Litigation.

Predominance is used to determine whether the claims of the proposed class members are "sufficiently cohesive to warrant adjudication by representation."  *Morangelli*, 275 F.R.D. at 105.  That is, whether it serves the interests of "economies of time, effort, and expense, and promote[s] uniformity of decision as to persons similarly situated."  *Myers*, 624 F.3d at 547.  Courts have found that predominance is a "'stricter' concept than that of Rule 23(a) commonality" and a plaintiff cannot merely assert predominance without any proof.  *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, 280 F.R.D. 78, 85 (E.D.N.Y. 2012).  This requirement is not met where "the evidence needed to make a prima facie showing on a given question requires members of the proposed class to present evidence that varies from member to member."  *Morangelli*, 275 F.R.D. at 105.  Here, this requirement is not met and it is evident the maintenance of a class action will

14

not "advance 'the efficiency and economy of litigation which is a principal purpose of the procedure.'"  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982).

### a.  Independent contractors cannot be part of the putative class.

Plaintiffs allege the members of a putative Rule 23 Class worked overtime, that MooreGroup denied them overtime, and they were entitled to overtime payments.  Since the proposed class contains individuals who were independent contractors, not entitled to overtime, this contention cannot be resolved on a class-wide basis.  Rather, such determination relies on a fact intensive inquiry for each individual plaintiff.  *See Myers*, 624 F.3d at 548 (finding class certification was not appropriate when entitlement to overtime pay was a mixed question of fact and law and "involve[ed] a number of subsidiary questions, each of which may or may not be able to be proven in common with respect to all [class members]").

The question of whether an individual is an employee or an independent contractor and whether the employer-employee relationship exists is not subject to "bright-line rules or precise formulas," but must be "evaluated on a case-by-case basis and determined by the totality of the circumstances."  *Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339 (ALC)(JLC), 2014 WL 5039431, *2 (S.D.N.Y. 2014).  Under the NYLL, the focus of whether an individual is an employee or independent contractor focuses on the degree of control the purported employer exercised over the individual, specifically whether the individual: "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule."  *Id.* at *7.  Here, this analysis is not subject to common proof and must be determined on an individualized basis.  *See Saleem*, 2013 WL 6061340 at *4-6 (finding predominance and commonality not satisfied where determination of whether an

15

individual was an independent contractor required a fact specific examination of the exercise of control).

In *Hernandez*, the District Court found the independent contractor issue could not be resolved based on common proof and denied the plaintiff's motion for class certification. *See Hernandez*, 2014 WL 5039431 at *9.  In establishing the evidence of employer control, the parties cited to contradictory testimony among members of the class with respect to the level of supervision, the discipline they were subject to for tardiness, and their ability to work at other jobs. *See id.* at *5; *see also Saleem*, 2013 WL 6061340 at *5 (finding it significant that there was contradictory evidence as to some of the potential class members in terms of the degree of control).

The same is true here -- the determination of whether the members of a putative Rule 23 Class are independent contractors or employees cannot be resolved on a class-wide basis, but requires consideration of significant individual testimony of the pertinent factors, specifically the degree of control.  *See Saleem*, 2013 WL 6061340 at *6 (whether an individual is an independent contractor or employee "is likely to be 'fact specific and may be employee specific'").  This testimony varies among individuals in different job classifications and even among individuals within the same job classification, making a common resolution impossible.  *See Morangelli*, 275 F.R.D. at 124 (stating "[t]he prospect of substantial individual testimony tips the scale for the predominance inquiry against class certification").

Here, for instance, Simmons, a fire guard and welder, worked at his discretion, declining to work when he did not feel like it, or when it was too hot or too cold, or when it rained or snowed. (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 163:5-25; 164:2-25; 165:2).  On the other hand, Porter, also a fire guard and welder, was subject to greater control, working in all types of weather, snow, rain, sleet and heat.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 182:20-25; 183:2-9).  During the time

he performed work for MooreGroup, Simmons was available and permitted to work for other contractors and in fact reported to and was directed by these contractors.  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 123:6-17; 214:21-25; 215:2-7).  By contrast, Porter felt he was unable to work for contractors other than MooreGroup and, when he reported to and was directed by supervisors employed by the other contractors, he believed it was all through MooreGroup.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 92:13-22; 93:6-13; 253:10-14).

The same is true of the plaintiffs who were carpenters and laborers.  Ramos, a carpenter who worked on stairs at several projects, was subject to significantly less control from MooreGroup than other carpenters.  For example, Ramos brought his own people exogenous of MooreGroup to work on his team, specifically Vigil.  Ramos was involved in hiring Vigil and setting Vigil's wage rate.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 32:22-24; 33:24-25; 34:2-23).  Ramos also used his own discretion to work or stay home in certain weather while other carpenters did not.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 55:5-9; ¶ 9, Ex. G: Vigil Dep. 84:11-25; 85:2).  Similarly, when Ramos arrived late to the jobsite, he was not disciplined and continued working with impunity.  (Nasis Decl., ¶ 10, Ex. H: Ramos Dep. 66:14-24).  On the other hand, other carpenters were disciplined for being late.  (Nasis Decl., ¶ 9, Ex. G: Vigil Dep. 29:19-25; 30:2-7).

The breadth of the distinctions in testimony between members of the same job classification and members of different job classifications precludes this Honorable Court from making a sweeping determination as to whether all members of a putative Rule 23 Class were independent contractors or employees. As such, Plaintiffs failed to satisfy the predominance requirement.

**b.  Purported allegations of uncompensated hours are individualized issues and do not predominate.**

In addition to allegations of unpaid overtime, Plaintiffs allege MooreGroup failed to compensate them for all the hours they worked.  In a gross oversimplification, in a transparent attempt to satisfy the predominance requirement, Plaintiffs contend they were subject to a company-wide policy of MooreGroup "fail[ing] to pay workers for all hours worked."  *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification at pg. 24.  However, the truth, which is substantiated by the record, is far more complex and not subject to common proof.

Far from a company-wide policy to deduct hours from an individual's paycheck, any failure by MooreGroup to compensate individuals for all the hours they worked resulted from either an error by the foreman, a miscommunication between the foreman and MooreGroup's office, or a lawful deduction.  This assumes *arguendo* that such individuals are employees rather than independent contractors.  Nevertheless, any verified or confirmed error was quickly remedied by John Moore paying the wages due.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 62: 6-22).  Notwithstanding, when there are numerous reasons why an individual would not be paid for hours allegedly worked, common issues do not predominate.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, 411 B.R. 142, 146-47 (S.D.N.Y. 2009) (finding predominance not satisfied as to whether Bally compensated each class member for work performed as it required individual analysis of numerous legal and factual issues and rendered "class treatment untenable and implausible").  Instead, whether MooreGroup could be liable to each class member requires individualized proof and a fact intensive inquiry into whether each individual was missing hours and, if so, why.

Foremost, not every member of the putative class claims their paycheck was missing hours. Some individuals were never missing hours in their paycheck.  (Nasis Decl., ¶ 8, Ex. F: Martinez Dep. 99:25, 100:2-15).   Moreover, whenever an individual claimed to be missing hours and brought it to John Moore's attention, John Moore investigated the veracity of the allegation and, if valid, wrote a new check for the proper amount or any deficiency.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 62: 6-22; ¶ 11, Ex. I: Porter Dep. 228:23-25; 229:2-8; 244:6-24; ¶ 12, Ex. J: Paz Dep. 87:17-22).   To that point, several plaintiffs acknowledged that corrections were made to their paychecks.   However, there were also instances where hours were lawfully deducted from an individual's paycheck.   Some individuals, including Simmons and Porter, who allege they were not paid for hours worked, either arrived to the jobsite late and claimed to have worked an entire day, or arrived on time and left the jobsite for an extended period of time for breakfast or other reasons.  (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 147:15-25; 148:2-20; ¶ 5, Ex. C: Trejo Dep. 54:11-23).  Under such circumstances, claims of unpaid hours are without merit.  There are clearly factual differences as to whether members of a Rule 23 Class worked additional hours for which they were not compensated and individualized questions as to whether those circumstances predominate. As such, class certification should be denied.

### 2. The Rule 23 Class is Not Superior.

In considering whether a class action is superior to other forms of adjudication, the Court must consider: (1) the alternative methods of adjudicating Plaintiffs' claims; (2) the fairness of alternative methods to all the individuals subsumed under Plaintiffs' claims; and (3) the efficiency of each alternative method of adjudicating the claims.  *See Morangelli*, 275 F.R.D. at 116.

### a.   Independent actions are superior to a Rule 23 Class.

While wage claims for overtime under the FLSA and NYLL are generally appropriate for class resolution, the presence of retaliation claims on behalf of Simmons and Rivera justifies proceeding with independent actions.   When matters concern a "high degree of emotional involvement," a class action is not suitable as each plaintiff has a "legitimate interest in litigating independently."  *Id.* at 116.

Simmons and Rivera assert retaliation causes of action against the MooreGroup Defendants, alleging the MooreGroup Defendants sent individuals to their residences masquerading as Internal Revenue Service ("IRS") agents in an attempt to scare them into dismissing this lawsuit.   [Dkt #63].   Rivera, an undocumented immigrant at the time, was purportedly terrified at the encounter, fearing the individuals were from immigration.  He became insecure and even thought about moving his residence.   (Nasis Decl. ¶ 7, Ex. E: Rivera Dep. 181:16-25; 182:2-13).   Similarly, Simmons purportedly suffered emotional damage from the encounter with the IRS agent.   (Nasis Decl. ¶ 6, Ex. D: Simmons Dep. 301:14-23).   In light of Simmons' and Rivera's self-proclaimed emotional distress and intense emotional involvement in this case, it would be inappropriate to proceed on a class-wide basis.

Additionally, Simmons and Rivera allege they are entitled to emotional damages and stand to recover sums significantly larger than the members of a Rule 23 Class, who only have wage claims.  Class actions are more appropriate where the likely recovery per individual plaintiff is too small to incentivize individual lawsuits.   *See Nat'l Convention Servs., LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 15-cv-7063 (JGK), 2019 WL 3409882, *3 (S.D.N.Y. 2019) (stating benefits of a class action are not realized when recovery is large such that it incentivizes individual lawsuits).   Here, Simmons is seeking in excess of $100,000, a sum that

certainly incentivizes him to proceed on an individual basis.  (Nasis Decl. ¶ 6, Ex. D: Simmons Dep. 314:3-16).

### b.  Proceeding with the FLSA Collective is superior.

Alternatively, if the Court is not inclined to permit each plaintiff to proceed on an independent basis, the FLSA Collective, which has already been conditionally certified, is a superior form of adjudication to a Rule 23 Class.  Proceeding with a Rule 23 Class will only prolong this lawsuit and is nothing more than tactical gamesmanship on Plaintiffs' counsel's part in seeking the larger opt-out class to use as leverage against MooreGroup to extract a larger global settlement.

As far as vindicating the rights of absent class members, a tenet of a Rule 23 Class, such concern is merely academic here.  *See Frank v. Capital Cities Commc'ns, Inc.*, No. 80-cv-2188 (CSH), 1983 WL 643, *6 n.1 (S.D.N.Y. 1983) (stating Rule 23 is designed to protect the rights of absent class members, a concern not present in FLSA actions).  With the exception of the time period, the putative Rule 23 Class is in all respects identical to the FLSA Collective.  [Dkt #63 at ¶¶ 31, 34].  *See McDermott v. Fed. Sav. Bank*, No. 14-cv-6657 (WFK)(SJB), 2020 WL 6295058, *4 (E.D.N.Y. 2020) (referencing the existence of an FLSA collective in denying a motion for class certification under Rule 23).

Notably, in response to Your Honor's Stipulation and Order Conditionally Certifying a Fair Labor Standards Act Collective Action and Authorizing Notice to be Issued to All Persons Similarly Situated, Defendants produced a list of all individuals who performed services for MooreGroup since the company's inception, a time period exceeding the six (6) year statute of limitations permitted by the NYLL and encompassing the members of the putative Rule 23 Class. (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 123:6-22; 124:17-21; 125:10-19; ¶ 14, Ex. L: Bates

Stamped D275-277).  The list was overly broad, including individuals who are not properly within the FLSA collective, such as administrative staff, estimators, working foremen, and even the individual defendants.  (Nasis Decl. ¶ 14, Ex. L: Bates Stamped D275-277).  It also includes former opt-in plaintiff, Hector Martinez, whose claims were time-barred.  (Nasis Decl. ¶ 14, Ex. L: Bates Stamped D275-277).  Therefore, all interested parties received notice and had the opportunity to both timely and untimely opt-in to this lawsuit.[5]

Out of the almost one-hundred twenty-five (125) individuals on that list, only four (4) opted-in, including the aforementioned time-barred Hector Martinez, a response rate of about 3%. [Dkt # 23-25, 27].  Thereafter, an additional four individuals opted-in, almost two years after the close of the opt-in period.  [Dkt # 70, 77-79].  Plaintiffs contend that the list is incorrect as it did not contain the identities of these late opt-ins.  Be that as it may, such inaccuracy is irrelevant for the purpose of distributing notices as the list was complete to the best of John Moore's knowledge. (Nasis Decl. ¶ 3, Ex. A: J. Moore Dep. 125:10-19).  More importantly, Plaintiffs have not identified any individuals who were allegedly omitted from the list, but should have been included.

It is unclear what purpose distributing a substantially similar notice to the same individuals will accomplish other than to gain unfair tactical advantage.  These individuals were already afforded the opportunity to opt-in in 2018, and notably, as late as 2020, additional opt-ins were added to the FLSA Collective, albeit woefully untimely.  Moreover, any individuals no longer working for MooreGroup will receive notices to addresses that may be two (2) years out of date and no longer be current, only serving to depress and otherwise unfairly minimize the opt-outs in a Rule 23 Class.

---

[5] As noted above, Vigil, Ramos, Guaman and Trejo opted in to this lawsuit between one-and-one-half and two years after the close of the opt-in period.  [Dkt # 70, 77-79].

Here, the denial of Plaintiffs' motion and proceeding as an FLSA Collective will further the interests of fairness and judicial efficiency as any individual who desired interest in adjudication of the alleged controversies in this lawsuit has had more than ample opportunity to do so. *See Amador v. Morgan Stanley & Co. LLC*, No. 11-cv-4326 (RJS), 2013 WL 494020, *9 (S.D.N.Y. 2013) (overarching policy of the FLSA collective action is to achieve judicial efficiency).

### c.   Plaintiffs fail to satisfy Rule 23(c)(1) by delaying in seeking a Rule 23 Class.

Pursuant to Rule 23(c)(1), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." F.R.C.P. 23(c)(1).  Here, this lawsuit was commenced in December 2017, over three (3) years ago.  [Dkt #1].  Plaintiffs' inordinate delay should not be condoned as the certification of the putative class will only serve to further delay this action.  *See Sanders v. Faraday Labs., Inc.*, 82 F.R.D. 99, 102 (E.D.N.Y. 1979) (declining to certify a class action where plaintiffs delayed almost five years and the members of the putative class were known).

### d.   Plaintiffs' request for an overly broad Rule 23 Class must be denied.

In or around 2019, Cesar Pillajo, a working foreman with MooreGroup, provided individuals at the jobsite with an agreement regarding claims of wage and hour claims asserted against the MooreGroup.  (Nasis Decl. ¶ 9, Ex. G: Vigil Dep. 129:3-20; 130:8-15; ¶¶ 15 & 20, Exs. M & Q; ¶ 13, Ex. K: Guaman Dep. 133:9-17).  Members of the putative Rule 23 Class, including Vigil, executed this agreement, implicitly acknowledging that they do not have wage and hour claims but nevertheless waiving their rights to assert wage and hour claims in this forum. (Moore Decl. ¶ 8).  *See Rodriguez-Depena v. Parts Auth. Inc.*, No. 15-cv-6463 (ENV)(VMS), 2016 WL 10932999, *2 (E.D.N.Y. 2016) (finding "FLSA claims brought by parties subject to valid

arbitration agreements can – and must – be arbitrated").  Vigil, who acknowledged he would not sign any document without a clear understanding of its contents, executed the agreement, stating he would not "sue anyone for unpaid overtime hours."  (Nasis Decl. ¶ 9, Ex. G: Vigil Dep. 126:24-25; 127:2-23; 130:11-15).  Guaman, on the other hand, refused to sign the document.  (Nasis Decl. ¶ 13, Ex. K: Guaman Dep. 133:9-10).  *See Nat'l Convention Servs, LLC*, 2019 WL 3409882 at *4 (finding superiority not satisfied where class members signed forum selection clause and class action waivers and individualized inquiry was required to determine which class members agreed to these provisions); *see also Pablo v. Servicemaster Global Holdings Inc.,* No. C 08-03894 (SI), 2011 WL 3476473 (N.D. Cal. 2011) (denying class certification where there was evidence that members of the class entered arbitration agreements).  Given that claims of members of a Rule 23 Class are not properly before this Honorable Court, a Rule 23 Class is not a superior form of adjudication.

C. PLAINTIFFS FAILED TO SATISFY THE COMMONALITY, ADEQUACY OF REPRESENTATION, TYPICALITY AND NUMEROSITY REQUIREMENTS UNDER RULE 23(A).

Not only have Plaintiffs failed to satisfy their burden of establishing predominance and superiority under Rule 23(b)(3), Plaintiffs have not satisfied, because they cannot satisfy, the four requirements under Rule 23(a): (i) commonality; (ii) adequacy of representation; (iii) typicality; and (iv) numerosity.

1. There is No Commonality Between Class Members.

Commonality requires "the existence of 'questions of law or fact that are common to the class.'"  *Koster*, 108 F.R.D. at 50.  Contrary to Plaintiffs' assertions, their burden is not shouldered by simply stating that all of the individuals performing services for MooreGroup suffered a violation of the same provision of the FLSA and NYLL.  *See Wal-Mart Stores, Inc.*, 564 U.S. at

349 ("[a]ny competently crafted class complaint literally raises common 'questions'" and "[r]eciting these questions is not sufficient to obtain class certification").

Indeed, Plaintiffs' recitation of common questions misses the crucial question for commonality: "[w]hat matters to class certification ... is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Suvill v. Bogopa Serv. Corp.*, No. 11-cv-3372 (SLT)(RER), 2014 WL 4966029, *9 (E.D.N.Y. 2014) (emphasis in original). Here, the distinctions between members of the putative class as well as their individualized claims asserted by the Named Plaintiffs preclude common answers and militate against class certification. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

In *Suvill*, the court noted that dissimilarities among members of the class can impede common answers. *See* 2014 WL 4966029 at *9. Here, at least one plaintiff was a member of a union during the time he performed services for MooreGroup. (Nasis Decl., ¶ 8, Ex. F: Martinez Dep. 33:14-25: 34:2-11). No other plaintiff was a union member or subject to a Collective Bargaining Agreement. Since some individuals were union members and others were non-union, the commonality requirement is not satisfied. *Cf. Kamean v. Local 363, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986) (finding commonality satisfied where "[e]ach potential class member is or was a member of Local 363 ... and each was subject to the same payment practices that plaintiffs now contend were improper").

Additionally, Plaintiffs failed to show by a preponderance of the evidence that rebar workers and the overly broad and undefined class of "construction employees" are subject to the same purported policies at issue. There is no testimony as to whether rebar workers or "construction employees" failed to receive overtime wages or worked hours for which they were

25

not compensated.  *See Lin*, 275 F.R.D. at 177 (finding no commonality when plaintiffs failed to provide evidence that other categories of employees were forced to work off-the-clock and were not paid for such time).

Notwithstanding Plaintiffs' failure to satisfy the stricter predominance requirement under Rule 23(b)(3), Plaintiffs nevertheless fail to satisfy the commonality requirement.

### 2.  The Named Plaintiffs Do Not Provide Adequate Representation.

The Named Plaintiffs are not adequate representatives of the putative Rule 23 Class.  To adequately represent the class, plaintiffs must show they seek the same compensation due to the absent class members and that there are no conflicting interests that will impair their performance as class representatives.  *See Kamean*, 109 F.R.D. at 395.  While the Named Plaintiffs are similarly seeking compensation for overtime, unpaid hours, and wage statement and wage notice violations, Simmons and Rivera have additional claims for retaliation that will impair their performance as a class representative.  [Dkt # 63].  As addressed in section I.B.2.a. *supra*, these claims are highly emotional for Simmons and Rivera and that undercuts their ability to adequately represent the class.

"Lawsuits fueled by the spite or hostility of an unduly antagonistic litigant or by some other ulterior motive or irrational purpose unrelated to the claims alleged in the complaint may also prevent class certification."  *See Kamean*, 109 F.R.D. at 395.   This lawsuit is intensely personal for Simmons and his anger and vitriol towards Gary Moore adversely impact his ability to serve as an adequate class representative.  It was this incident that <u>caused</u> the end of Simmons' engagement with MooreGroup. Simmons and Gary Moore got into an altercation where Gary Moore allegedly "screamed some shit in [Simmons'] face and he assaulted [Simmons]."  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 208:7-9).  Simmons further testified that "any time mother-fucker

26

puts a hand on you and you are a grown man and nobody did – if I assault you right now you are going to remember it for the rest of your life."  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 208:14-20).  As a result of his altercation with Gary Moore, Simmons purportedly suffers from emotional damages and still feels "edgy" on construction sites when someone comes up behind him.  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 298:8-23).  It was not coincidental that Simmons filed the instant lawsuit shortly thereafter.

The same is true of Porter.  Prior to his deposition, Porter was assaulted and stabbed.  Based on pure speculation and without any evidence, Porter believed the stabbing was performed at MooreGroup's direction, believing MooreGroup hired someone to assault him to stop him from being deposed.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 292-296).  This irrational thought process, blaming MooreGroup for completely unrelated criminal events in his personal life, makes Porter unfit to serve as a class representative.

It is well settled that a class representative has a duty not only to vigorously pursue the rights of class members, but must "also [] consider the advantages of settlement and to negotiate wisely and prudently when settlement is in the long term interest of the class, even at the cost of possible total victory."  *See Kamean*, 109 F.R.D. at 395-96.  Simmons is incapable of fulfilling this duty given reasonable settlement overtures were flatly rejected by Simmons and his/Plaintiffs' counsel.  Indeed, Simmons is seeking at least $100,000 for "[s]omeone putting their hands on me…."  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 314:3-16).  Even if Plaintiffs' allegations were true, which they are not, alleged damages for a Rule 23 Class that seeks compensation for unpaid overtime and hours worked and wage notice and statement violations are subject to mathematical calculations, not emotion.

Here, Rivera's and Simmons' claims of an IRS Agent's clandestine visits, which speciously resulted in extreme emotional distress, and Simmons' personal retaliation claim, are far removed from any class-wide claim of violations of either the FLSA or NYLL.  Their steadfast, albeit mistaken beliefs, as well as their refusals to settle their individual claims preclude them from properly and adequately fulfilling their duties as class representatives.

Lastly, both Porter and Simmons have extensive criminal records. Porter admitted being arrested on several occasions and subsequently convicted.  (Nasis Decl., ¶ 11, Ex. I: Porter Dep. 39-43).[6]  Similarly, Simmons admitted to numerous arrests.  (Nasis Decl., ¶ 6, Ex. D: Simmons Dep. 303-05).   For this independent basis, the Named Plaintiffs are likely not adequate representatives to any putative class.  *See Maddox & Starbuck, Ltd v. British Airways*, 97 F.R.D. 395, 396 (S.D.N.Y. 1983) (finding plaintiff failed to satisfy Rule 23(a)(4) requirement due to prior criminal activity).[7]

### 3.  There is No Typicality of Interest Between Putative Class Members.

The typicality requirement requires a showing that the named plaintiffs' "interests are aligned with the interests of their fellow class members in order to ensure that each claim will be prosecuted with diligence and care."  *Kamean*, 109 F.R.D. at 394.  The typicality analysis often merges with the commonality requirement as "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n. 13.  Since this analysis touches upon protecting the interests of other class members, it

---

[6] Since Porter's deposition, in December 2019, he has been arrested on numerous occasions and has at least three (3) pending criminal actions.  (Nasis Decl., ¶¶ 16-19, Exs. N-P).
[7] Several opt-in plaintiffs admitted they would not trust an individual with a criminal record as the class representative. (Nasis Decl., ¶ 5, Ex. C: Trejo Dep. 98:10-14; ¶ 13, Ex. K: Guaman Dep. 129:5-18).

also tends to overlap with the adequacy of representation requirement. *See id.* As Plaintiffs failed to satisfy the commonality and adequacy of representation requirements, they also cannot satisfy the typicality requirement.

### 4. The Class is Not So Numerous That Joinder Would Be Impractical.

Plaintiffs have not shouldered their burden of establishing the numerosity requirement. In determining whether a plaintiff satisfies the numerosity requirement, the court must consider whether "the class is so numerous that joinder of all members is impracticable." *Koster*, 108 F.R.D. at 48. Plaintiffs rely on the overly broad list utilized to certify the FLSA Collective, arguing that numerosity is satisfied.

However, the inquiry is more complex. "[K]nowledge of names and existence of members has been called the 'most important' factor [in establishing numerosity], precisely because it renders joinder practicable." *McDermott*, 2020 WL 6295058 at *4 . In *McDermott*, the court denied a motion for class certification finding that although the putative class contained almost fifty individuals, joinder was practicable when the individuals were geographically concentrated and their identities known. *See id.* Here, the putative class members are geographically concentrated in New York and were previously identified and provided notice in conjunction with the FLSA Collective. (Nasis Decl. ¶ 14, Ex. L: Bates Stamped D275-277).

Moreover, as addressed *supra*, rebar workers, fire guards, welders, and "construction employees" are not properly included in a Rule 23 Class. Plaintiffs have not established numerosity absent the inclusion of these individuals. Moreover, it is not just the exclusion of these individuals, but also the exclusion of the individuals who were properly paid and those whose claims are not properly before this Honorable Court as discussed *supra*. (Nasis Decl., ¶ 8, Ex. F: Martinez Dep. 99:25, 100:2-15). *See Rodriguez-Depena*, 2016 WL 10932999 at *2 (finding

29

"FLSA claims brought by parties subject to valid arbitration agreements can – and must – be arbitrated"). As such, Plaintiffs fail to identify who would be properly included in the putative Rule 23 Class. *See Sorey v. Computer Credit, Inc.*, No. 05-cv-6052 (PKC), 2006 WL 8461819, *1 (S.D.N.Y. 2006) (stating that to establish numerosity plaintiffs must provide more than "pure speculation or bare allegations").

Based on the foregoing, there is no evidence joinder of all members would be impracticable. To the contrary, the existence of the FLSA Collective demonstrates that joinder of all members is in fact practicable and previously achieved. Therefore, Plaintiffs failed to satisfy the numerosity requirement.

## CONCLUSION

It is clear Plaintiffs fail to satisfy the requirements under Rule 23, and their motion seeking Rule 23 Class certification should be denied in its entirety. First, Plaintiffs fail to show, by a preponderance of the evidence, the claims of the putative Rule 23 Class predominate over individual concerns and proceeding as a class would be superior. Second, whether individuals of the putative class were independent contractors or employees who were not compensated for purported hours worked are highly individualized, fact specific inquiries, not appropriate for class-wide resolution. Third, the putative Rule 23 Class is not superior to alternative forms of adjudication given the existence of emotionally-charged retaliation claims, the FLSA collective, and the inability of putative class members to resolve their claims in this forum. Fourth, Plaintiffs further fail to satisfy the four conditions to qualify for class treatment: commonality, adequacy of representation, typicality and numerosity as required under Rule 23(a) given, among other reasons, significant dissimilarities exist among individuals in different job classifications and among individuals within the same job classification.

30

For the reasons set forth herein, Defendants respectfully request that this Honorable Court:
(i) deny Plaintiffs' motion for class certification in its entirety; and (ii) award Defendants such
other and further relief as this Court deems just and proper.

Dated:         Uniondale, New York
               February 12, 2021

                                          Respectfully submitted,

                                          FORCHELLI DEEGAN TERRANA LLP

                                          By: _____
                                               Elbert F. Nasis
                                               Gregory S. Lisi, Esq.
                                               Michael A. Berger, Esq.
                                          *Attorneys for Defendants MooreGroup*
                                          *Corporation, John Moore, Gary Moore*
                                          *and Martin Moore*
                                          The OMNI
                                          333 Earle Ovington Blvd., Suite 1010
                                          Uniondale, New York 11553
                                          Telephone: (516) 248-1700

31