UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

JOSHUA PORTER, et al,

              *Plaintiffs*,

      -*against*-

MOOREGROUP CORPORATION, et al,

              *Defendants*.

---------------------------------X

**MEMORANDUM & ORDER**

17-cv-7405 (KAM)(VMS)

**KIYO A. MATSUMOTO, United States District Judge:**

      On December 20, 2017, plaintiffs Joshua Porter
("Porter") and Sharkey Simmons ("Simmons") (collectively,
"plaintiffs") commenced this action against defendants
MooreGroup Corporation ("MooreGroup"); Martin Moore ("M.
Moore"); John Moore ("J. Moore"); and Gary Moore ("G. Moore")
(collectively, "defendants") alleging various wage and hour
violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.
§§ 201 *et seq*., New York Labor Law ("NYLL"), §§ 650 *et seq*., and
NYLL §§ 190 *et seq*.  (ECF No. 1, Complaint.)  Plaintiffs brought
their FLSA claims as a collective action on behalf of themselves
and all other similarly situated employees of the defendants and
their NYLL claims as a class action pursuant to Federal Rule of
Civil Procedure 23 on behalf of themselves and all fire guards,
welders, and other construction employees working for the
defendants in New York.  (*Id*.)

By order dated May 15, 2018, with the defendants'
consent, the court granted plaintiffs' motion to certify a
Collective Action pursuant to the FLSA.  (ECF No. 19, Consent
Motion; ECF No. 21, Order Granting Motion to Certify FLSA
Collective Action.)  The Collective Action Order limited the
class of potential plaintiffs to fire guards, welders, laborers,
and other construction employees who worked for the defendants
between December 20, 2014 and May 14, 2018.  (May 15, 2018 Order
¶ 2.)

On January 2, 2020, the court granted plaintiffs'
motion to amend the complaint to add: plaintiff Emanuel Colajay
Rivera as a named plaintiff; Baldwin Harbor Contracting Inc.
("Baldwin") as a defendant; and retaliation claims, pursuant to
the relevant FLSA and NYLL statutory provisions, on behalf of
Simmons and Rivera.  *See Porter v. MooreGroup Corp.*, No. 17-cv-
07405 (KAM)(VMS), 2020 WL 32434, at *1 (E.D.N.Y. Jan. 2, 2020).
Plaintiffs filed an amended complaint on January 13, 2020.  (*See*
ECF No. 63, Amended Complaint ("Amend. Compl.").)  Plaintiffs'
counsel sought leave from the court to file a late consent to
become a party plaintiff, pursuant to § 216(b) of the FLSA, on
behalf of Oscar Vigil.  (ECF No. 70.)  Magistrate Judge Vera M.
Scanlon granted plaintiffs' request to file a late opt in
consent for Vigil on July 1, 2020.  (*See* Minute Entry 7/1/2020;
Scheduling Order 11/12/2020.)

2

Following extensive discovery and a pre-motion conference, the court set a briefing schedule for plaintiffs to serve their motion for class certification, which is presently before the court. (*See generally* ECF No. 90, Notice of Plaintiffs' Motion for Class Certification; ECF No. 91, Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Pls. Mem."); ECF No. 92, Declaration of Brent Pelton in Support of Plaintiffs' Motion for Class Certification ("Pelton Decl."); ECF No. 93, Defendants' Memorandum in Opposition ("Defs. Mem."); ECF No. 94, Declaration of Elbert Nasis in Opposition to Plaintiffs' Motion for Class Certification ("Nasis Decl."); ECF No. 95; Reply in Support of Plaintiffs' Motion for Class Certification ("Pls. Reply").)[1]

Plaintiffs move for an Order certifying plaintiffs' NYLL claims pursuant to Federal Rule of Civil Procedure 23, on behalf of the following class: all fire guards, welders, carpenters, laborers and other construction employees who worked for the Mooregroup defendants at any time since December 20, 2011. (Pls. Mem. at 1-2, 19.) The case was previously conditionally certified as a collective action under the Fair

---

[1] On March 10, 2021, defendants requested that the deadline to commence dispositive motion practice be extended *sine die* pending this court's decision on plaintiffs' motion for class certification. (ECF No. 98.) The court granted defendants' request and extended the deadline to commence dispositive motion practice *sine die* pending this court's decision on plaintiffs' motion for class certification. (Dkt. Order 3/12/2021.)

Labor Standards Act.  (*See* ECF Nos. 19, 21.)  For the reasons
set forth below, the motion to certify a class action for the
NYLL claims is GRANTED.

## BACKGROUND

The court assumes familiarity with the background and
procedural history of this case, which were described in the
court's previous written decision.  *See Porter v. MooreGroup
Corp.*, No. 17-cv-07405 (KAM)(VMS), 2020 WL 32434, at *1
(E.D.N.Y. Jan. 2, 2020).

On May 1, 2018, the parties filed a consent motion to
certify the FLSA collective action, which the court granted on
May 15, 2018.  (ECF No. 19, Consent Motion; ECF No. 21,
Collective Action Order.)  Pursuant to the Collective Action
Order, the court gave defendants 60 days to provide plaintiffs
with the names and contract information of all potential
plaintiffs.  (ECF No. 21, ¶ 3.)  In addition, the Collective
Action Order required plaintiffs to send notices to all
potential plaintiffs within 10 days following defendants'
required disclosure.  (*Id.* ¶ 4.)  All potential plaintiffs were
required to opt in within 60 days of the mailing of the notices.
(*Id.* ¶ 5.)  Four opt-in plaintiffs, including plaintiff Rivera,
subsequently joined the case in September 2018.  (ECF No. 23-25,
27, Consent to Become Party in a Collective Action.)

Plaintiffs filed the instant motion for class certification of the New York Labor Law claims, which defendants oppose.  (*See* ECF Nos. 90, 91, 92, 93, 94.)  Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), plaintiffs seek to certify the following class alleging NYLL violations:

> [A]ll fire guards, welders, carpenters, laborers and other construction employees who worked for the Mooregroup Defendants at any time since December 20, 2011.

(Pls. Mem. at 1-2.)

## LEGAL STANDARDS

### I.   Federal and State Labor Law

Under the Fair Labor Standards Act ("FLSA"), subject to certain exceptions, an employee who works more than 40 hours in a workweek must "receive[] compensation for his [or her] employment in excess of [40] hours . . . at a rate not less than one and one-half times the regular rate at which he [or she] is employed."  29 U.S.C. § 207(a)(1).  The New York State Labor Law ("NYLL") also generally provides for "one and one-half times the employee's regular rate" when the employee works more than 40 hours in a workweek.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013).

Moreover, under the NYLL, all employers must "provide his or her employees, in writing in English and in the language

identified by each employee as the primary language of such employee, at the time of hiring, a notice containing," *inter alia*, "the rate or rates of pay."  N.Y. Lab. Law § 195(1)(a).  "For all employees who are not exempt from overtime compensation," the notice must include "the regular hourly rate and overtime rate of pay."  *Id.*

"Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under [Federal] Rule [of Civil Procedure] 23 to pursue the NYLL claims as a class action under the district court's supplemental jurisdiction."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

## II.  Class Certification

Under Federal Rule of Civil Procedure 23 ("Rule 23"), a plaintiff may bring a civil action on behalf of a class "only if": "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(1)-(4).  In addition, under Rule 23(b)(3), which would govern the proposed

class action here, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In addition to the requirements of numerosity, commonality, typicality, adequate representation, predominance, and superiority set forth in Rule 23, the Second Circuit has recognized an "implied requirement of ascertainability." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).  "To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009)).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "A party seeking class certification must affirmatively demonstrate his [or her] compliance with the Rule," and "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*  Class "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (quoting *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 161 (1982)).   "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

### DISCUSSION

Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), plaintiffs seek to certify the following class: "[A]ll fire guards, welders, carpenters, laborers and other construction employees who worked for the Mooregroup Defendants at any time since December 20, 2011." (*See* Pls. Mem. at 1-2.) Defendants object to class certification, arguing that plaintiffs failed to satisfy the commonality, adequacy of representation, typicality, and numerosity requirements under Rule 23(a), that common issues of law or fact do not predominate, and a class action is not superior to individual litigation in this case. (Defs. Mem. at 13-29.)

For the reasons set forth below, the court concludes that plaintiffs have met the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). Therefore, the court grants plaintiffs' motion for class certification and the appointment of Pelton Graham LLC as class counsel.

As a threshold matter, however, the court agrees with defendants that the potential class including "construction employees" is potentially overbroad and exercises the court's

discretion to modify the class.  *See Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016) ("It is well-established that the court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies." (alterations omitted)).  As conceded in plaintiff's briefing, the relevant NYLL class is limited to "Mooregroup employees who performed manual construction labor, including but not limited to carpenters, laborers, fire guards, and welders." (Pls. Reply at 2.)  Thus, the relevant NYLL class to be certified includes:

> [A]ll fire guards, welders, carpenters, laborers and other construction employees *who performed manual construction labor* who worked for the Mooregroup Defendants at any time since December 20, 2011.

(emphasis added).  The court addresses each of Rule 23's requirements for class certification below.

## I.   Numerosity

First, to satisfy Rule 23, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.").  Courts in the

Second Circuit presume numerosity when the proposed class is at least 40 members. *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013) *aff'd sub nom. Gortat v. Capala Bros., Inc.*, 568 Fed. App'x 78 (2d Cir. 2014). "[A] plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts[.]" *Hill v. City of New York*, 136 F.Supp.3d 304, 353 (E.D.N.Y. 2015). Relevant considerations as to the practicability of joinder include "judicial economy arising from the avoidance of a multiplicity of actions, ... financial resources of class members, [and] the ability of claimants to institute individual suits." *Balverde v. Lunella Ristorante, Inc.*, No. 15-cv-5518, 2017 WL 1954934, at *5 (S.D.N.Y. May 10, 2017) (quoting *Robidoux*, 987 F.2d at 936).

Here, plaintiffs assert that forty (40) or more construction employees worked for Mooregroup throughout the NYLL limitations period, which is further confirmed by the § 216(b) list identifying more than one-hundred (100) employees meeting the § 216(b) collective list provided by defendants. (Pls. Mem. at 19-20; Pelton Decl. ¶ 11.) Defendants counter that the § 216(b) list is "overly broad" and that joinder is practicable, thus negating the numerosity requirement. (Defs. Mem. at 29-30.)

The court concludes that there are sufficiently numerous potential class members to make joinder impractical. *See Robidoux*, 987 F.2d at 936 ("the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable" (citing 1 Herbert B. Newberg, Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels § 3.05, at 141-42 (2d ed. 1985))).  In this case, defendants have admitted that "between twenty and twenty-five laborers and ten to twelve carpenters" worked at a job site at any given time.  (Defs. Mem. at 3 (citing Nasis Decl. ¶ 3, Ex. A, J. Moore Dep. 43:14-25, 44:2-4).)  Furthermore, several deponents attested that Mooregroup typically employs in excess of forty (40) workers at a time at various job sites.  (*See* Pelton Decl., E. Rivera Dep. 100:6-15 (around thirty employees at 2nd Avenue job site); H. Martinez Dep. 77:22-80:22 (fifteen employees in Hempstead and twenty-five employees in Westbury), 82:13-84:25 (twelve employees in Staten Island); S. Simmons Dep. 262:2-25 (stating that defendants employ "a good 60, 70 people"), 328:19-329:21; J. Rogel Dep. 69:5-24 (thirty-five to forty-five employees in Jamaica, twenty-five to thirty-five in Long Island City, and ten in Manhattan).)

Moreover, "a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer." *Spencer v.*

*No Parking Today, Inc.*, No. 12-cv-6323 (ALC) (AJP), 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12-cv-6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013).  Considering the potential size and limited resources of the proposed class, the court finds it reasonable to infer that joinder is impracticable and that the proposed class satisfies the requirement of numerosity.  *See Jie Zhang v. Wen Mei, Inc.*, No. 14-cv-1647 (JS)(SIL), 2017 WL 8813132, at *15 (E.D.N.Y. Dec. 28, 2017), *report and recommendation adopted*, No. 14-cv-1647 (JS)(SIL), 2018 WL 878988 (E.D.N.Y. Feb. 14, 2018).

## II. Commonality

Next, the court must find that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality exists when "[t]he legal theory set forth in [the] [c]omplaint is common to all class members," such as where an "alleged failure to pay overtime violates New York's labor law."  *Noble v. 93 Univ. Pl. Corp.,* 224 F.R.D. 330, 342 (S.D.N.Y. 2004 2004).  "Commonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct."  *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Noble*, 224 F.R.D. at 338 (internal quotation marks omitted)).

Commonality is usually satisfied in wage cases "where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Lewis v. Alert Ambulette Serv. Corp.,* No. 11-cv-442, 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012) (citing *Noble,* 224 F.R.D. at 343 (commonality requirement satisfied where all potential class members were alleged to have been harmed by common practice of defendants' failure to adequately pay for overtime hours; legal theory set forth in complaint was common to all class members)); *see also Espinoza*, 280 F.R.D. at 127 ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.").

Viewing the record as a whole, the court concludes that commonality requirement is satisfied because the evidence adequately establishes, at a minimum, that there is at least "one issue common to all class members" that provides the "unifying thread" binding the claims of class members together. *Martinez v. Ayken, Inc.*, No. 13-cv-7411 (LDW) (AKT), 2016 WL 5107143, at *10 (E.D.N.Y. Feb. 29, 2016) (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008)). Here, defendant Moore testified that the putative class members were subject to the same scheduling and timekeeping practices. (*See* Pelton Decl., J. Moore Dep. 54:10-58:15 (describing schedules of

construction workers, laborers, carpenters).)  Furthermore, deposition testimony also confirms that the compensation practices were similar for the potential class members.  (*See* J. Moore Dep. 89:3-90:19 (confirming that laborers and carpenters are paid in the same manner); O. Vigil Dep. 60:7-22 (fire guards were paid at the same time and manner as all other employees)).) For example, during the relevant period, the employees were paid primarily by checks from Mooregroup and occasionally from defendant Baldwin Harbor.  (*See* Pelton Aff., J. Porter Dep. 95:2-5, 240:18-23 (all checks paid from Mooregroup even when he was assigned to work at different sites, as these assignments came through Mooregroup); H. Martinez Dep. 139:6-23; E. Paz Dep. 110:7-19 (testifying that all work pay was received by check with the name of the company); J. Guaman Dep. 117:22-118:15, 119:12-121:12 (paid by Baldwin Harbor on at least one occasion for work for Mooregroup); J. Rogel Dep. 56:3-4 (paid by personal check); O. Vigil Dep. 89:21-23, 120:14-122:8 (sometimes paid by Baldwin Harbor checks, was told that the checks from Baldwin Harbor were coming from Mooregroup); Ex. 13 (Photograph of checks from Baldwin Harbor); Ex. 16 (checks from Mooregroup); Ex. 18 (checks from Mooregroup).)  Although defendants dispute the existence of a common policy (*see* Def. Mem. at 24-26), as discussed below, defendants' contentions regarding variations in

work schedules and responsibilities are not sufficient to defeat the finding of commonality.

In sum, plaintiffs identify three factual questions common to the class: whether defendants (1) had a policy of not paying wages at an overtime rate after an employee worked over 40 hours in a given work week; (2) had a policy of failing to provide wage statements with payment of wages to employees; (3) had a policy of failing to provide wage notices at hiring, annually, and with each change in hourly rates.  (Pls. Mem. at 21); *see, e.g., Morris v. Alle Processing Corp.,* No. 08-cv-4874, 2013 WL 1880919, at *9 (E.D.N.Y. May 6, 2013) (commonality satisfied where "[t]he named plaintiffs' claims and the proposed class members' claims arise from the same course of conduct (defendants' practice and policy of failing to pay wages and overtime), raise common issues of law and fact (*inter alia,* whether defendants[ ] . . . failed to pay time and half for all hours worked over forty . . .), and are based on the same legal theories (violations of NYLL)"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615 (S.D.N.Y. 2012) (commonality satisfied where "[a]ll Class Members raise common issues: (1) whether Defendant had a policy of not paying Marketing Representatives and Specialists overtime premium pay for hours worked over 40 in a workweek; (2) whether Defendant failed to pay Class Members premium overtime wages; and (3)

whether Defendant knew or should have known that Class Members were working 'off-the-clock' ") (citing cases); *Solis v. OrthoNet LLC*, No. 19-cv-4678 (VSB), 2021 WL 1904984, at *4 (S.D.N.Y. May 11, 2021) (commonality satisfied where "class members share common questions of fact or law, such as: 1) whether Defendant failed to pay overtime wages; 2) whether Defendant had a policy of misclassifying employee to avoid paying them overtime wages pursuant to the NYLL; and 3) whether Defendant provided deficient wage statements and wage and hour notices").  Similarly, plaintiffs correctly assert that there are common legal questions of whether these common practices were unlawful under the NYLL.  (*Id.* at 14.)

Defendants counter that because some members of the class were union members and others were non-union, the commonality requirement is not satisfied.  (Defs. Mem. at 25.)  The court disagrees because defendants failed to produce any evidence that an employee's membership in a union "would produce a different result concerning overtime unearned wages." *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 449 (S.D.N.Y. 2010).  Moreover, even if one class member was a non-union member, "[t]he commonality requirement may be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct." *Han v. Sterling Nat. Mortg.*

16

*Co.*, No. 09-cv-5589 (JFB) (AKT), 2011 WL 4344235, at *3

(E.D.N.Y. Sept. 14, 2011) (internal quotation marks omitted).[2]

Furthermore, even though defendants attempt to

distinguish the different job functions of each putative class

member (*see* Defs. Mem. at 7-13), defendants do not plausibly

contest plaintiffs' allegation that the class members were

subjected to defendants' common compensation practices.  Indeed,

the fact that some workers may have had control or discretion

over their work hours and or performed different duties does not

negate commonality, but instead speaks to the individual

determination of damages.  *See, e.g.*, *Spencer*, 2013 WL 1040052,

at *16 (noting that even if employees "may have worked more

hours than others because they maintain complete control over

their own work schedule or keep track of their own hours does

not implicate the commonality determination, but rather goes to

damages" (internal quotation marks omitted)), *report and

recommendation adopted*, No. 12-cv-6323 (ALC) (AJP), 2013 WL

2473039 (S.D.N.Y. June 7, 2013); *Noble*, 224 F.R.D. at 343

(acknowledging that "[a]lthough there are some differences among

employees—i.e., responsibilities, hours worked, and salaries—

---

[2] To the extent that an individual plaintiff's membership in the union results in individual determination of damages, "it is well-established that the need for an individualized determination of damages suffered by each class member generally does not defeat the [commonality] requirement." *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121 (E.D.N.Y. 2019) (collecting cases).

these differences are relatively minor and relate primarily to the level of damages, if any, owing to each individual"); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) ("The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found.").

Accordingly, the court concludes that "answers to the common policy and legal questions undoubtedly will 'drive the resolution of the litigation' with respect to all parties." *Reyes v. City of Rye*, No. 13-cv-9051 (NSR), 2016 WL 4064042, at *5 (S.D.N.Y. July 28, 2016) (quoting *Wal-Mart*, 564 U.S. at 349-50); *see Shahriar*, 659 F.3d at 252 (commonality requirement satisfied where plaintiffs' "NYLL class claims all derive from the same compensation policies and tipping practices"); *see also Reid v. SuperShuttle Int'l, Inc.*, No. 08-CV-4854 (JG) (VVP), 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) (Common questions include "whether [defendant's] compensation policies violated the FLSA or the NYLL"); *Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ("There is sufficient proof for certification purposes of a uniform policy of underpayment, presenting a common question that is

18

subject to classwide proof."). For these foregoing reasons, the commonality requirement is satisfied.

### III. Typicality

Next, the court considers whether plaintiffs' claims are "typical" of the proposed class. Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (same). The typicality requirement is satisfied here, where the same factual circumstances and legal arguments underlie each putative class member's claims. *See, e.g.*, *Morris*, 859 F. Supp. 2d at 616 (typicality met where "[p]laintiff's claims arose from the same factual and legal circumstances that form the bases of the [c]lass [m]embers' claims"); *Willix v. Healthfirst*, No. 07-cv-1143, 2009 WL 6490087, at *2–3 (E.D.N.Y. Dec. 3, 2009) (typicality satisfied where proposed class members suffered same injury as a result of defendant's overtime compensation policies); *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-cv-5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (typicality satisfied where plaintiffs and class members had same unpaid

overtime claims)); *Espinoza*, 280 F.R.D. at 127-28 (typicality satisfied where "the minimum wage and overtime claims alleged by Plaintiffs are similar to those of the class members and arise from the same allegedly unlawful practices and policies").

In the instant case, for substantially similar reasons discussed, *supra*, in connection with commonality, the court concludes that the typicality requirement is satisfied because the named plaintiffs' claims arise from the same course of conduct under the same legal theory as the rest of the class.

**IV.   Adequate Representation**

The final requirement pursuant to Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, "the named plaintiff[] must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)) (second and third alterations in original).

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards &*

*Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks and citation omitted).

First, for the reasons previously discussed, the court finds that the named plaintiffs have: provided evidence that they were subject to a common illegal compensation practice as the other putative class members; rely on similar legal theories to prove their NYLL claims; and have the same interest in maximizing the amount of class recovery.  Further, there is no indication that any named plaintiff has interests that are antagonistic to or at odds with those of the putative class members.

Second, defendants argue that the named plaintiffs do not provide adequate representation because named plaintiffs Simmons and Rivera maintain retaliation claims that are "highly emotional" and will "undercut[] their ability to adequately represent the class."  (Defs. Mem. at 26.)  The court rejects defendants' assertion because there is no evidence that Simmons's and Rivera's retaliation claims will impair their ability to represent the interests of the class fairly and adequately.  Contrary to defendants' assertions (*see* Defs. Mem. at 26), courts have held that plaintiffs may serve as fair and adequate class representatives despite the fact that plaintiffs may maintain separate retaliation claims.  *See, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11-cv-1812 (JFB) (AKT), 2014 WL 4635745,

at *18 (E.D.N.Y. Sept. 16, 2014) (rejecting defendants' assertion that plaintiffs' separate retaliation claim would impair their ability to represent the interests of the class fairly and adequately); *Spencer*, 2013 WL 1040052, at *22 (holding that plaintiff's "individual retaliation claim is not relevant to determining whether [plaintiff's] interests are aligned with the class members' interests for purposes of establishing his adequacy as a class representative under Rule 23"), *report and recommendation adopted*, No. 12-cv-6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013); *Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11-cv-3765 (NRB), 2012 WL 2847741, at *9 (S.D.N.Y. July 11, 2012) (holding that "no authority" supports the argument that a plaintiff could not adequately represent a class because of a separate retaliation claim).[3]

Finally, plaintiffs also assert that Pelton Graham LLC, counsel for the plaintiffs, is an experienced law firm specializing in labor and employment matters and has represented other classes and/or collective actions in other cases before

---

[3] Similarly, the court rejects defendants' contention that certain named plaintiffs cannot adequately represent the proposed class due to the named plaintiff's unrelated criminal history.  (Defs' Mem. at 27-28.)  The fact that some named plaintiffs "may have criminal pasts . . . does not affect their ability to represent other class members." *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2006 WL 2819730, at *15 (S.D.N.Y. Sept. 29, 2006) (internal quotation marks omitted).  "The past conduct of some of the representative plaintiffs does not touch upon the subject of the lawsuit or affect the adequacy of their representation for other class members." *Id.*

this court.  (*See* Pelton Aff. ¶¶ 2-9.)  Defendants do not

dispute the qualifications of plaintiffs' lawyers.  For these

reasons, the court concludes that plaintiffs have met the

adequacy requirement of Rule 23(a)(4).

### V. Ascertainability

The Second Circuit has established a fifth

prerequisite to class certification, "the implied

ascertainability requirement," which demands that a class be

"sufficiently definite so that it is administratively feasible

for the court to determine whether a particular individual is a

member."  *In re Petrobas Sec. Lit.*, 862 F.3d 250, 260 (2d Cir.

2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24

(2d Cir. 2015)).  "A class is ascertainable when defined by

objective criteria . . . and when identifying its members would

not require a mini-hearing on the merits of each case."

*Brecher*, 806 F.3d at 24-25.  The court must be able to determine

who is in the class "without having to answer numerous

individualized fact-intensive questions."  *Fogarazzo v. Lehman

Bros.,* 232 F.R.D 176, 181 (S.D.N.Y. 2005) (quotation and

alteration omitted).

Here, the court concludes that the proposed class is

ascertainable.  The proposed NYLL class is defined by objective

criteria: the period in which the employees worked for

defendants and the names, titles, and nature of work of the NYLL

class members. (See Pls. Mem. at 1-2, 19); *see Jie Zhang*, 2017 WL 8813132, at *18 ("Whether employees have been paid the wages owed to them is an objective question that turns on the number of hours they worked and the wages they were paid."); *Gucciardo v. Titanium Constr. Servs., Inc.*, 2017 WL 3738777, at *6 (S.D.N.Y. 2017) (certifying overtime class where class could "clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements."); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y. 2014) (concluding that a class was ascertainable where "defendants' payroll records will likely contain the names, titles, pay rates and dates of employment of the NYLL class members").

The court concludes that "because defendants were able to provide plaintiffs with list of individuals who were members of the conditionally certified FLSA collective action, defendants would also be able to create a list of individuals who are potential members" of the certified NYLL class.[4] *Atakhanova v. Home Fam. Care, Inc.*, No. 16-cv-6707 (KAM)(RML), 2020 WL 4207437, at *7 (E.D.N.Y. July 22, 2020) (citing *Marin v. Apple-Metro, Inc.*, No. 12-cv-5274 (ENV)(CLP), 2017 WL 4950009,

---

[4] Contrary to defendants' assertion, the fact that the § 216(b) list produced for the FLSA Collective Action included "administrative staff, estimators, and working foremen who are salaried" and are not included in the Collective Action, supports the court's conclusion that defendants' records contain objective criteria that make feasible the ability to ascertain the NYLL certified class members.  (Defs' Mem. at 22.)

at *48 (E.D.N.Y. Oct. 4, 2017)).  Accordingly, the court finds
that plaintiffs have met the ascertainability requirement.

**VI.  Rule 23(b) Requirements**

After satisfying the Rule 23(a) prerequisites, the
proposed class must qualify under one of the three categories
set forth in Rule 23(b).  Plaintiffs seek to certify the class
under Rule 23(b)(3), with requires that "the court find[] that
the questions of law or fact common to class members predominate
over any questions affecting only individual members, and that a
class action is superior to other available methods for fairly
and efficiently adjudicating the controversy."  Fed. R. Civ. P.
23(b)(3); (*see* Pls. Mem. at 23-24).

"Rule 23(b)(3) includes a non-exhaustive list of
factors pertinent to a court's 'close look' at the predominance
and superiority criteria:

> (A) the interest of members of the class in
> individually controlling the prosecution or
> defense of separate actions; (B) the extent
> and nature of any litigation concerning the
> controversy already commenced by or against
> members of the class; (C) the desirability
> or undesirability of concentrating the
> litigation of the claims in the particular
> forum; (D) the difficulties likely to be
> encountered in the management of
> a class action."

*Amchem*, 521 U.S. at 615-16 (quoting Fed. R. Civ. P. 23 (b)(3)).

A. <u>Predominance</u>

The "predominance inquiry tests whether [the] proposed [c]lass[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.  The predominance requirement is "satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 55 (E.D.N.Y. 2019) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).  "Typically, common issues predominate when liability is determinable on a class-wide basis, even where class members have individualized damages."  *Id.; see also Haseman v. Gerber Products Co.,* 331 F.R.D. 239, 275–76 (E.D.N.Y. 2019) ("A class can be certified under Rule 23(b)(3) even if damages require individualized determination.").

In the majority of wage cases, "if plaintiffs establish that defendant had a practice or policy of failing to pay prevailing wages, defendant's liability to all class members will be established." *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-cv-442, 2012 WL 170049, at *13 (E.D.N.Y. Jan. 19, 2012) (citing *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011)).  "[N]umerous courts have found that wage

claims are especially suited to class litigation—perhaps the
most perfect questions for class treatment—despite differences
in hours worked, wages paid, and wages due." *Id.*; *see, e.g.*,
*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49
(E.D.N.Y. 2010) (concluding that "differences among class
members as to the number of hours worked, the precise work they
did and the amount of pay they received concern the amount of
damages to which any individual class member might be entitled,
not the amenability of their claims to Rule 23 certification");
*Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009)
(certifying class of employees who served different functions
and were paid differently because question of whether they were
paid for fewer hours than worked predominated).

Based on the evidence discussed above, the court
concludes that common questions of fact and law will predominate
with respect to plaintiffs' NYLL claims.  Specifically,
plaintiffs' claims are all based on defendants' allegedly
unlawful compensation practices that applied to all class
members -- *i.e.* that defendants did not pay overtime premiums
for hours worked in excess of forty (40) per week and failed to
pay workers for all hours worked; did not provide wage
statements with the payment of wages; and did not provide wage
notices at any time.  *See Garcia v. Pancho Villa's of Huntington
Vill., Inc.*, 281 F.R.D. 100, 108 (E.D.N.Y. 2011) (holding that

27

predominance is satisfied where "the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees.").

The evidence supports plaintiffs' contention that defendants did not provide wage statements or wage notices to employees as required under New York law. (*See* Pelton Aff., J. Moore Dep. 60:19-62:5; E. Paz Dep. 110:20-24 ("Q: Did you receive any wage notices? A: No. Q: Did you receive any wage statements? A: No."); S. Simmons Dep. 192:5-19 (asked J. Moore for a paystub when he received his first paycheck, was told "this is how we do it" and never received the paystub).) Defendant Moore testified that employees can ask their foreman about their hourly rate and the hours for which they are paid and can request documents showing their rate, but that these materials were not given to employees in the regular course of business. (*See* Pelton Aff., J. Moore Dep. 60:19-62:5, 73:16-19 (workers could get a print-out of tax withholdings upon request), 107:11-20.)

Moreover, the named plaintiffs have testified that they worked over forty hours per week and were not paid additional wages. (*See* Pelton Aff., E. Colajay Dep. 81:18-25, 166:2-22; J. Porter Dep. 271:18-273:6, 277:19-25; S. Simmons Dep. 294:12-17, 330:12-18 (when Simmons complained to J. Moore about not receiving overtime, was told he could "go kick

rocks").)   Plaintiffs also discovered that they were missing
hours from their weekly pay, and consequently were paid for
fewer hours than they actually worked.   (*See* Pelton Aff., E.
Colajay Dep. 79:22-80:7; J. Porter Dep. 186:19-23, 189:2-8; S.
Simmons Depo. 174:11-175:3, 240:11-17, 260:7-25.)   When
plaintiffs questioned defendant Moore or the foreman about
missing compensation, their complaints were frequently
dismissed.   (*See* Pelton Aff., E. Colajay Dep. 79:15-80:9, 82:22-
83:12, 84:12-25; J. Porter Dep. 220:13-221:3, 223:7-23.)   At
times, plaintiffs' and class members' paychecks bounced,
resulting in their wages being paid several weeks late.   (Pelton
Aff., E. Colajay Dep. 123:5-14, 127:2-129:7; J. Porter Dep.
184:5-185:6; H. Martinez Dep. 9:10-16; E. Paz Dep. 86:16-88:3;
O. Vigil Dep. 95:7-96:16.)

        Based on the current record, the court finds that the
plaintiffs have submitted sufficient evidence at this stage in
the litigation that the defendants had a common practice of
failing to pay their employees overtime and failing to provide
wage notice and statements to their employees.   Although each
class member may "have different damage claims depending on the
length and time of employment, such individualized questions are
easily manageable [and] . . . do not defeat predominance."
*Poplawski*, 2012 WL 1107711, at *11.   Furthermore, "[a] motion
for class certification should not become a mini-trial on the

merits . . . [and] [t]he issue is not whether the plaintiffs will ultimately prevail on the merits, but whether the requirements of Rule 23 have been met." *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, 280 F.R.D. 78, 83 (E.D.N.Y. 2012) (citations omitted).  For the foregoing reasons, the court concludes that common questions of law and fact will predominate with respect to plaintiffs' NYLL claims.[5]

### B. Superiority

Plaintiff must also establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23 (b)(3).  "At bottom, the superiority analysis requires (1) consideration of the alternative methods of adjudication available for the claims, (2) a comparison of the fairness to all whose interests are implicated between any alternative methods and a class action, and (3) a comparison of the efficiency of each method in adjudicating the claims."  1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:63 (16th ed. 2019).

---

[5] Defendants' contention that the individual factual determination preclude class certification because the proposed class includes individuals who are independent contractors is rebutted by the record.  (Defs' Mem. at 15-17.) Indeed, defendant Moore testified that Mooregroup "seldom" contracts with independent contractors.  (Pelton Aff., J. Moore Dep. 41:4-44:12 ("Q. Does the MooreGroup also contract with independent contractors? A. Seldom.").) Defendants have not produced any documentary evidence, other than some references to the deposition testimony, showing that Mooregroup viewed any class members as independent contractors.

In this case, "a class action is superior to other available methods, since that the New York Labor Law claims are nearly identical to the FLSA claims, which will be tried collectively in this Court." *Garcia*, 281 F.R.D. at 108 (citing *Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08-cv-7813, 2011 WL 4389636, at *13 (S.D.N.Y. Sept 21, 2011)).  Moreover, "[t]rying this action collectively 'allows for a more cost-efficient and fair litigation of common disputes' than requiring each plaintiff to prosecute his or her own individual action." *Id.* (citing *Damassia*, 250 F.R.D. at 164)).  There is no identifiable interest in single plaintiffs commencing multiple lawsuits to prosecute these claims, and no evidence in the record of any other pending litigation regarding these claims or parties in any other court.

Given the relatively small return, the court finds that it is unlikely that the class members would be able to bear the considerable expense of bringing individual lawsuits. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("Courts routinely hold that a class action is superior where . . . the damages suffered are small in relation to the expense and burden of individual litigation . . ."); *Torres*, 2006 WL 2819730, at *16 ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually").  Moreover, "the opt-out nature of a class action is a valuable feature lacking in an FLSA

collective action" where employees may be "reluctant to participate in the action due to fears of retaliation," thus, rendering the class action superior. *Guzman v. VLM, Inc.*, No. 07-cv-1126 (JG) (RER), 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008).

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification is GRANTED.  The named plaintiffs are appointed as class representatives, and Pelton Graham LLC is appointed as counsel for the class.

Defendants shall provide plaintiffs with the names and last known addresses of the potential plaintiffs within thirty (30) days of the date of this Memorandum and Order.  Plaintiffs are directed to work with defendants to draft for the court's review a mutually acceptable notice to be sent to potential plaintiffs to inform them of the lawsuit and their right to opt-out of the suit.  Plaintiffs shall submit the proposed notice to defendants for their approval within thirty (30) days of the date of this Memorandum and Order.  Any objections by defendants to the form of the notice and consent that cannot be resolved with plaintiffs shall be made to the court within fifteen (15) days of receipt of plaintiffs' proposed notice.

SO ORDERED.

_____
                                        /s/
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

Dated: August 11, 2021
       Brooklyn, New York

33