# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA PORTER, SHARKEY SIMMONS, and EMANUEL COLAJAY RIVERA, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>-against-<br><br>MOOREGROUP CORPORATION, BALDWIN HARBOR CONTRACTING INC., JOHN MOORE, GARY MOORE and MARTIN MOORE, Jointly and Severally,<br><br>        Defendants. | 17 Civ. 07405 (KAM)(VMS) |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

The above-captioned matter came before the Court on Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Motion for Preliminary Approval").

**I. Background and Procedural History**

1. The parties' proposed settlement resolves all claims in the action entitled *Porter, et al. v. Mooregroup Corporation*, *et al*., 17 Civ. 07405 (KAM)(VMS) which is currently pending before this Court.

2. The Plaintiffs and Class Members in this action allege that Defendants Mooregroup Corporation ("Mooregroup"), Baldwin Harbor Contracting Inc. ("Baldwin Harbor" or the "Default Defendant"), John Moore ("J. Moore"), Martin Moore ("M. Moore"), and Gary Moore ("G. Moore", and with Mooregroup, Baldwin Harbor, J. Moore, and M. Moore, the "Defendants"), failed to pay Plaintiffs and the Settlement Class overtime premiums for hours worked over forty

(40) in a given workweek and failed to provide Plaintiffs and the Settlement Class with proper wage notices at hiring and wage statements with each payment of wages, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL").

3. On December 20, 2017, named plaintiffs Joshua Porter ("Porter") and Sharkey Simmons ("Simmons") commenced this action as a class and collective action under the FLSA and the NYLL by filing a Class and Collective Action Complaint. (Dkt. No. 1, hereinafter the "Complaint").

4. Defendants filed their Answer to the Complaint on February 23, 2018, disputing the material allegations, denying any liability or damages in the proposed class and collective action, and asserting affirmative defenses (Dkt. No. 14).

5. On May 1, 2018, Plaintiffs filed their consent motion to Conditionally Certify a Fair Labor Standards Acts Collective Action (Dkt. No. 19), which was granted by the Court on May 15, 2018 (Dkt. No. 21). Subsequently, seven (7) Mooregroup employees opted in the case, including Emanuel Colajay Rivera (Dkts. No. 23-25 and Dkts. No. 27, and No. 77-79).

6. On March 29, 2019, Plaintiffs moved to amend the pleadings to add Emanuel Colajay Rivera as a Named Plaintiff (collectively with Porter and Simmons, the "Named Plaintiffs"), to add Baldwin Harbor Contracting, Inc. as a Defendant, and to add retaliation claims on behalf of Plaintiffs Simmons and Colajay. (Dkt. Nos. 47-49, 52-53). On January 2, 2020, the Court granted Plaintiffs' motion to amend. (Dkt. No. 63). Plaintiffs filed the operative Amended Complaint on January 13, 2020. (Dkt. No. 63 (the "Amended Complaint")).

7. Defendants Mooregroup Corporation, John Moore, Martin Moore, and Gary Moore (hereinafter, the "Defendants"), filed their Answer to the Amended Complaint on March 30, 2020,

2

disputing the material allegations, denying any liability or damages in the amended class and collective action, and asserting affirmative defenses (Dkt. No. 69).

8. To date, Defendant Baldwin Harbor Contracting Inc., has not answered the Amended Complaint or participated in the litigation.

9. Prior to the filing of Plaintiffs' Motion for Class Certification, the parties exchanged document discovery and written discovery. Plaintiffs produced all relevant documents in their possession and, at Defendants' request, provided releases for employment documents from other employers and an unrelated lawsuit filed by Named Plaintiff Simmons. Defendants produced certain time and pay records as to the Named Plaintiffs. The parties deposed nine (9) Named and Opt-in Plaintiffs and the Individual Defendants.

10. On February 22, 2021, Named Plaintiffs filed their motion for Class Certification (Dkt. No. 92), which was granted by the Court after a full briefing on August 11, 2021 as to a class defined as "all fire guards, welders, carpenters, laborers and other construction employees who performed manual construction labor who worked for the Mooregroup Defendants at any time since December 20, 2011." (Dkt. No. 99).

11. Subsequently, the Parties litigated at length the membership of the class list, including the exchange of discovery demands and written discovery and further depositions.

12. Throughout mid-2022, Plaintiffs obtained further time and pay records via subpoenas to third-party vendors, specifically timekeeping vendors and financial institutions.

13. On January 17, 2023, the Named Plaintiffs, Class Counsel and MooreGroup Defendants (hereinafter, the "Parties"), held a mediation before Martin Scheinman, Esq. The Parties reached a tentative preliminary agreement following further discussions with Mr.

3

Scheinman, but after extensive efforts to finalize an agreement, including a conference before the Court held on November 17, 2023, the settlement ultimately fell through. (Pelton Decl. ¶ 31).

14. The Parties engaged in class discovery, including further written discovery and depositions. Plaintiffs sent Notice of Class Action to Class Members on November 18, 2024 and informed the Court that three (3) individuals opted out. (Dkt. No. 162). Plaintiffs filed a consent case management plan, which included deadlines for the end of class discovery and expert discovery deadlines. (Dkt. No. 152).

15. Throughout the pendency of the litigation, Plaintiffs have spent significant time and effort creating and updating damages calculations, incorporating updated documents from Defendants and subpoenaed records, which Plaintiffs have exchanged with Defendants.

16. Throughout this litigation, Defendants have produced thousands of pages of records, including pay records, wage notices and wage statements, employee leasing agreements, class lists and Class Member contact information, plus written discovery responses.

17. Between October 2024 and January 2025, the Court held several conferences with the Parties primarily regarding class discovery and other related matters. Between October 2024 and January 2025, the Court held several conferences with the Parties and issued numerous Orders primarily regarding class discovery and other related matters. (Orders of the Court dated Oct. 31, 2024; Order of the Court dated Nov. 27, 2024; Minute Entry dated Jan. 16, 2025; Order of the Court dated Jan. 16, 2025; Order of the Court dated Jan. 24, 2025; Order dated Jan. 30, 2025). From February 5, 2025 through March 21, 2025, the case was stayed following Mr. Kilgannon's withdrawal as counsel for Defendants. (Order of the Court dated Feb. 7, 2025). On March 25, 2025, Mr. Kilgannon once again filed a Notice of Appearance on behalf of Defendants. (Dkt. No. 164).

18. On March 27, 2025, Plaintiffs filed a letter informing the Court that the parties had reached a new settlement, attaching a copy of the fully-executed binding Memorandum of Understanding and proposing an extension of the date for Plaintiffs to move for contempt and sanctions, to be filed in the event that the Parties were unable to finalize the settlement and file the present Motion for Preliminary Approval. (Dkt. No. 165).

**II.    Preliminary Approval of Settlement**

19. Based upon the Court's review of the Class Counsel's Memorandum of Law in Support of Class Counsel' Motion for Preliminary Approval of Class Settlement, the Declaration of Brent E. Pelton ("Pelton Declaration"), and all other papers submitted in connection with Plaintiffs' Motion for Preliminary Approval, the Court grants preliminary approval of the settlement memorialized in the Settlement Agreement and Release ("Settlement Agreement"), attached to the Pelton Declaration as **Exhibit B.**

20. The Gross Fund Value covers the service awards for the Named Plaintiffs, recovery for individual claims asserted by Plaintiffs Simmons and Colajay, attorneys' fees and costs for Class Counsel, administration costs, and employer payroll taxes. (Ex. B ¶¶ 1.24, 3.1(A)-(B)). The remaining funds (the "Net Settlement Fund") will be allocated among Settlement Class Members who do not opt-out of the Settlement and who timely return valid claim forms ("Authorized Claimants"). (Ex. B ¶¶ 1.5, 1.30, 3.4(A)(1)-(2), 3.6(A)).

21. The Gross Fund Value shall be funded as follows: Defendants have already paid $100,000.00 to Class Counsel and shall deposit by no later than April 30, 2025, into the QSF ("Qualified Settlement Fund" created by the Settlement Administrator) or other escrow account approved by the Parties the amount of $66,666.66. This amount, along with the $100,000.00 already deposited by Defendants, shall constitute the First Installment Payment. Thereafter,

5

Defendants shall make monthly Installment Payments in the amount of $166,666.66, into the QSF, by no later than the final day of the month, beginning with the second Installment Payment due no later than May 31, 2025. Thereafter, Defendants shall continue to make monthly Installment Payments in the amount of $166,666.66 for a total of twelve (12) Installment Payments. Payment of the full Gross Fund Value of Two Million Dollars ($2,000,000.00) shall be completed by no later than March 31, 2026. Defendants may, at their choosing, pay greater and/or more frequent Installment Payments. (Ex. B ¶¶ 3.1 (A)(B), 1.18). Should Defendants make payment of $1,850,000.00 by no later than June 30, 2025, the Gross Fund Value will be reduced to $1,850,000.00, with corresponding reductions to attorneys' fees and individual settlement allocations.

22. The class of individuals eligible to participate in the Settlement is defined as current and former fire guards, welders, carpenters, laborers, and other construction employees who performed manual construction labor and who worked for Defendants or one or more of the Defendants' Affiliated Companies, at any time, from December 20, 2011 to March 27, 2025 (the "Settlement Class" or "Settlement Class Members"). (Ex. B ¶ 1.45). The "Affiliated Companies" refers to Baldwin Harbor Contracting Inc., Moore Group Inc., Boro Concrete Corp., Big Johns Services Corp., Concrete Services & Maintenance Corp., Allied Enterprises LLC, Allied Enterprises USA Corp., All County Solutions, and Interstate Services & Maintenance. (Ex. B ¶ 1.4).

23. The Parties have agreed to retain CPT Group (the "Settlement Administrator") to administer the Settlement. CPT Group has already worked with Class Counsel to distribute the notice of class action and is familiar with this matter. The Settlement Administrator shall perform duties including: (i) preparing and mailing the Class Notice and Claim Form to all Settlement Class

6

Members, as well as the reminder letter to all Class Settlement Members who did not submit a valid Claim Form by the mailing of the First Payment Distribution; (ii) receiving all Claim Forms from Authorized Claimants; (iii) receiving Opt-out statements and/or objections from Settlement Class Members and/or Authorized Claimants; (iv) maintaining accurate records of all documents sent and received during the settlement administration; (v) copying counsel for all Parties on material correspondence and promptly notify all counsel of the Parties of any material requests or communications; (vi) opening and administering the QSF account; (vii) receiving Defendants' payment of the Settlement Amount; (viii) calculating the Authorized Claimants' individual shares; (ix) mailing the settlement payments to Authorized Claimants, and (x) calculating tax withholdings and payments. (Ex. B ¶ 2.6 (B)). The Settlement Administrator should communicate and provide reports as necessary to Counsel for the parties to facilitate the Settlement. (*Id*. at ¶ 2.6 (B)).

24. The Settlement Administrator shall take all reasonable steps to obtain the correct address of any Settlement Class Member for whom a Notice and Claim Form package is returned as undeliverable, including a skip trace and re-mailing. (Ex. B ¶ 2.6 (B)).

25. The Settlement Class Members are required to return a Claim Form within six (6) months after the mailing of the First Payment Distribution (the "Claim Period"). (Ex. B ¶¶ 1.7, 3.6(A)).

26. Settlement Class Members are allocated a portion of the Net Settlement Fund utilizing the plan of allocation formula based on each workweek each individual worked for Defendants and/or any of the Affiliated Companies during the Class Period based on records produced and obtained by the Parties, to the extent such records exist, and on the information contained in each Claim Form. (Ex. B. ¶ 3.4(A)(5)-(7)).

7

27. The approval of a proposed class action settlement is a matter of discretion for the trial court. *Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation…" *Castagna v. Madison Square Garden, LP*, No. 09-cv-10211, 2011 WL 2208614, U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) (internal citation omitted).

28. Preliminary approval, which is what the Parties seek here, is the first step in the settlement process. It primarily allows notice to issue to the class and for settlement class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the settlement class members' input.

29. Class Counsel has also requested payment of a portion of Administration Costs in light of substantial delay between issuance of the Preliminary Approval Order and expected payment in full of the Gross Fund Value. Specifically, Class Counsel requests payment of all Administration Costs incurred as of the date of the Preliminary Approval Order, to the extent that such amounts are fully funded by payments already made by Defendants per the Settlement Agreement (the "Preliminary Payment Distribution").

30. In 2018, Federal Rule of Civil Procedure 23 was amended to update the standards for approval of class settlements and the form of notice to be issued to class members. Rule 23(e)(1) approves the preliminary approval practice that has become standard in this Circuit, providing that the court direct notice to class members after determining that the court will likely be able to grant final approval of the settlement and certification of the settlement class, if not already certified. *See* F.R.C.P. 23(e)(1); Notes of Advisory Committee on 2018 Amendments.

These requirements, including the notice requirements, apply in cases where a class has already been certified as well as cases where the parties have proposed certifying a class for settlement purposes. *Id.*

31.   Rule 23(e) requires that Courts consider the fairness, reasonableness and adequacy of the settlement and the benefits of the settlement to class members. To make this determination, courts should examine a list of core concerns" set forth by the Rule, specifically whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). The Rule also requires the parties to identify all agreements made in connection with the proposed settlement and include an opportunity for settlement class members to opt-out if the class was previously certified.  Finally, the Rule provides detailed procedure for Settlement Class Member objections and for seeking approval after an appeal.

32.   Fairness is evaluated both by "the negotiating process leading up to the settlement as well as the settlement's terms." *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y. 2010). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir 2005) (internal quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness). If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute

9

[their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)

33. The Court finds that the Named Plaintiffs are adequate Class Representatives, based on their efforts in prosecuting this Action and the absence of conflicts between the Named Plaintiffs and the Settlement Class Members.

34. Pelton Graham LLC are adequate representatives of the Class who have experience in litigating and settling wage and hour class actions and have already expended substantial time, work and resources into prosecuting this matter.

35. The Settlement Agreement is the result of arm's-length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions. The Court finds that the private mediator Martin Scheiman, Esq. assisted the parties with settlement negotiations and presided over a full-day mediation session that helps to settle the initial points of agreement between Parties. The Court also conducted a settlement conference and Parties engaged in numerous and continuing formal and informal discussions through the course of the Litigation, which culminated in the proposed Settlement Agreement. This reinforces the non-collusive nature of the settlement. *Chambery v. Tuxedo Junction, Inc.*, No. 12-cv-6539, 2014 WL 3725157, 2014 U.S. Dist. LEXIS 101939, at *14-15 (W.D.N.Y. July 25, 2014).

36. The relief provided for in the Settlement Agreement is fair and adequate, taking into account the costs, risks and delay of further litigation and trial, the effectiveness of distributing relief to Settlement Class Members, and the terms of the attorneys' fee payment. The total amount of the settlement represents a reasonable percentage of Named Plaintiffs and Settlement Class Members' calculated damages, which is contested by Defendants, and will be allocated by a

formula that takes into account the relative strength and weaknesses of each Class Members' claims. Further litigation of this matter would require expenditure of significant additional time and judicial resources. Throughout the pendency of the litigation, Defendants have raised a number of defenses as to liability and damages that, if proven, could substantially reduce Named Plaintiffs and the Settlement Class Members' damages or preclude any recovery whatsoever.

37. The Settlement Agreement provides for the parties and the Settlement Administrator to take reasonable measures to locate Settlement Class Members, such that distribution will occur in a fair fashion. The Settlement Agreement also provides for a lengthy Claim Period, such that individuals who may hear about the Settlement only after mailing of the First Payment Distribution will be able to participate and receive a payment.

38. The attorneys' fee provision of the Settlement Agreement appears at this stage to be fair, and in any event the Court will review Class Counsel's application for attorneys' fee in greater detail when Class Counsel moves for final approval of the settlement.

39. Class Counsel have represented that the Parties have entered into no other agreements other than the Settlement Agreement pertaining to resolution of this matter governing attorneys' fees or any other costs or payment.

40. Accordingly, both the Rule 23 and *Grinnell* factors suggest at this stage that final approval is probable, following the distribution of Notice, briefing of Class Counsel's anticipated motion for final approval and a fairness hearing.

41. The Court concludes that the proposed Settlement Agreement is within the range of possible final settlement approval. Therefore, notice to the Class is appropriate.

42. The "standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Guaman v. Ajna-Bar NYC*, 2013 WL 445896, 2013 U.S. Dist. LEXIS 16206, at

11

*15 (S.D.N.Y. Feb. 5, 2013) Courts approve FLSA settlements when "they are reached as a result of contested litigation to resolve *bona fide* disputes," which can be determined from the "adversarial nature of a litigated FLSA case" and whether "the proposed FLSA settlement reflects a reasonable compromise over contested issues." *Id.*, at **15-16.

43. For the same reasons that a class has already been certified, and for the same reason the Settlement Class is appropriate, approval of an FLSA collective settlement is likewise appropriate.

### III.    Payment of Settlement Administration Costs

44. Given that the First Payment Distribution is not expected to be made until spring of 2026, Class Counsel has requested that the Court permit Class Counsel to pay administration costs in two (2) rounds: one to be paid upon issuance of the Preliminary Approval Order (the "Preliminary Payment Distribution"), as to fees incurred as of that date and to the extent that Defendants have paid such amounts into the settlement fund, and all remaining fees to be paid with the First Payment Distribution.

45. In total, the Administration fees are estimated to be either $28,000.00 or $24,000.00, depending upon the total number of distributions, plus $6,000.00 in data entry costs. (Pelton Decl. ¶ 62). Courts regularly award administrative costs associated with providing notice to the class. *See Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (noting "Courts within this district have awarded up to $50,000 for the settlement claims administrator" and finding estimated fees of $33,500 to the settlement administrator as reasonable); *see also De La Cruz v. Manhattan Parking Grp., LLC*, No. 20-cv-977, 2022 U.S. Dist. LEXIS 123267, at *6-7 (S.D.N.Y. July 12, 2022) (approving $55,000 in settlement administration fees).

12

46. For these reasons, Class Counsel's request for the Preliminary Payment Distribution is granted as to (i) costs incurred as the date of this Order and (ii) to the extent that such payments are funded by amounts already paid by Defendants. For any further Administration Costs, Plaintiffs must make an application in connection with Plaintiffs' Motion for Final Approval.

### III. Appointment of Plaintiffs' Counsel as Class Counsel

47. The Court appoints Pelton Graham LLC ("Plaintiffs' Counsel") as Class Counsel for the Settlement Class because they meet all of the requirements of Federal Rule of Civil Procedure 23(g), as previously set forth in the Class Certification Order. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (explaining that Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

48. To the extent that Plaintiffs request award of attorneys' fees and litigation costs, such application shall be made in connection with Plaintiffs' Motion for Final Approval.

### IV. Notice

49. The Court approves the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Class Settlement Notice"), Claim Form, and Deadline Reminder Letter attached to the Pelton Declaration as **Exhibits C, D, and E**.

50. The content of the Proposed Class Settlement Notice fully complies with due process and Federal Rule of Civil Procedure 23(c)(2)(B).

51. Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

52. The Proposed Class Settlement Notice fulfills each of these requirements and adequately puts Settlement Class Members on notice of the proposed settlement; notifies Class Members of their rights and the procedures to seek payment from the settlement, opt-out, object or appear through an attorney of their own choosing; and informs Settlement Class Members of the binding effect of judgment if they do not opt-out of the Settlement. The Proposed Class Settlement Notice also describes the terms of the settlement, the scope of the release of claims, informs the Settlement Class Members about the requested attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.

53. The Proposed Class Settlement Notice is reasonable and constitutes due, adequate, and sufficient notice to the Class Members. Mailing of the Class Settlement Notice is appropriate.

54. Neither this order, the Settlement Agreement, nor any other document or information relating to the settlement of this action shall be construed or be admissible in any proceeding as evidence: (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under FRCP 23, (b) that any party has prevailed in this case, or (c) that Defendants or others have engaged in any wrongdoing.

55. In the event that final approval of the Settlement Agreement does not occur or is deemed null and void, this Order and Settlement Agreement shall be deemed null and void and

shall have no effect whatsoever with the sole exception of those provisions of the Settlement Agreement pertaining to its effect of failure to obtain final approval.

56. Each and every time period and provision of the Settlement Agreement shall be deemed incorporated herein as if expressly set forth and shall have the full force and effect of an Order of this Court.

57. Upon final approval of the settlement, all Settlement Class Members who do not opt out of the settlement shall be and are enjoined pursuant to 28 U.S.C. § 1651(a) from initiating or proceeding with any and all suits, actions, causes of action, claims, or demands in federal or state court or administrative agency based on putative violations of the New York Labor Law (NYLL) pertaining to wage and hour claims, including any and all claims that have been asserted or could have been asserted in this action.

58. Upon final approval of the settlement, all Settlement Class Members who do not opt out of this Settlement shall be deemed to fully, finally, and forever completely settle, compromise, release, and discharge Defendants from any and all claims for any wage and hour violations that may have occurred arising from or relating to their employment with Defendants under New York State and/or local law through the Effective Date of the Settlement. All Authorized Claimants shall release all FLSA claims that could have been asserted in this Action arising from their employment with Defendants through the Effective Date of the Settlement.

59. With the exception of the deadlines set forth herein and necessary for the administration of the Settlement, all case management deadlines in this case are hereby STAYED pending the Fairness Hearing.

60. The Court hereby adopts the following settlement approval process, which safeguards Settlement Class Members' procedural due process rights, enables the Court to fulfill

15

its role as the guardian of class interests, and is consistent with the standard procedure for evaluating class action settlements, *see* Fed. R. Civ. P. 23(e); *Newberg* §§ 11.22 *et seq.*; *Damassia v. Duane Reade*, No. 04-Civ-8819, 2009 WL 5841128, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 24, 2009) (granting final approval of class action settlement after preliminary approval, notice and fairness hearing):

> a. Within five (5) days of the issuance of the Preliminary Approval Order, Defendants will provide Class Counsel an updated list of Settlement Class Members containing last known addresses for all individuals for which Defendants have records, to the extent that such information has not already been provided. Class Counsel will provide the Settlement Class List immediately after to the Settlement Administrator.
>
> b. Within fifteen (15) days of issuance of the Preliminary Approval Order, the Settlement Administrator will mail to all Settlement Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of the Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Court-approved Claim Form, both of which shall be provided in English and Spanish.
>
> c. Within fifteen (15) days of issuance of the Preliminary Approval Order, the Settlement Administrator shall make payment of the Preliminary Payment Distribution, consisting of all Administration Costs incurred through the date of this Order to the extent that such amounts are funded by payments made as of that date by Defendants in connection with this Settlement.
>
> d. Settlement Class Members will have sixty (60) days after the Settlement Claim Administrator's mailing of the Proposed Class Settlement Notice to submit an opt-out statement, and/or to object to the settlement.
>
> e. The Court will at this time tentatively schedule a Fairness Hearing to be held on _____, 2026 [insert date after March 31, 2026]. Should the Parties report that Defendants have made full payment of the Gross Fund Value significantly sooner, the Parties shall inform the Court and may request an earlier Fairness Hearing date, of which all Class Members shall be notified. The Fairness Hearing shall be held at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Courtroom 13A, South Wing, Brooklyn, New York 11201.
>
> f. No later than fourteen (14) days prior to the Fairness Hearing, Class Counsel will prepare and file a Motion for Final Approval of the Settlement, which shall also seek the payment of attorneys' fees and costs, settlement claims,

16

        administration costs, service awards, and individual recovery for Plaintiffs Simmons and Colajay.

g.     Defendants shall fund the Settlement by depositing into the QSF the Installment Payments of $166,666.66 as follows: first, by no later than April 30, 2025, Defendants shall deposit into either the QSF, if it has been created, or Class Counsel's escrow account if not, the amount of $66,666.66. This amount, along with the $100,000.00 already deposited by Defendants, shall constitute the First Installment Payment. Thereafter, Defendants shall make monthly Installment Payments in the amount of $166,666.66, into either the QSF or Class Counsel's escrow account, by no later than the final day of the month, beginning with the second Installment Payment due no later than May 31, 2025. Thereafter, Defendants shall continue to make monthly Installment Payments in the amount of $166,666.66 for a total of twelve (12) Installment Payments. Payment of the full Gross Fund Value of Two Million Dollars ($2,000,000.00) shall be completed by no later than March 31, 2026.

h.     The First Payment Distribution, including payment of individual Settlement Checks, outstanding Administration Costs, Service Awards, Individual Recovery, and attorneys' fees and litigation costs, shall be mailed no later than fifteen (15) days after the later of issuance of the Final Approval Order or payment in full of the GFV.

i.     Seven (7) days after the mailing of the First Payment Distribution, the Settlement Administrator will mail the Deadline Reminder Letter along with an appropriate Claim Form to Class Members from whom Settlement Administrator has not yet received a complete Claim Form at that time.

j.     Named Plaintiffs and Authorized Claimants will have one hundred twenty (120) days after those payments are distributed to cash their respective settlement checks. Authorized Claimants may request a replacement if they show timely and good cause.

k.     All other terms of the Settlement Agreement are hereby Ordered as set forth in the Settlement Agreement.

It is so ORDERED this ___ day of _____, 2025.

                                                                                                  _____
                                                                                                   Honorable Vera M. Scanlon
                                                                                                   United States Magistrate Judge