## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**JOSHUA PORTER, SHARKEY SIMMONS, and EMANUEL COLAJAY RIVERA, Individually and on Behalf of All Others Similarly Situated,**

                            **Plaintiffs,**

-against-

                         17 Civ. 07405 (KAM)(VMS)

**MOOREGROUP CORPORATION, BALDWIN HARBOR CONTRACTING INC., JOHN MOORE, GARY MOORE and MARTIN MOORE, Jointly and Severally,**

                            **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
Joanne M. Albertsen
111 Broadway, Suite 1503
New York, NY 10006

*Attorneys for Plaintiffs, the FLSA Collective and Settlement Class*

# TABLE OF CONTENTS

**Page**

Table of Authorities…………………………………………………………….................... iii

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND......................................................................2

    I.      Procedural History ............................................................................................2

    II.     Overview of Investigation, Litigation and Discovery...........................................4

    III.   Settlement Negotiations ....................................................................................5

SUMMARY OF THE SETTLEMENT TERMS ...........................................................................6

    I.      The Settlement Amount .....................................................................................6

    II.     Releases...........................................................................................................7

    III.   Notice ..............................................................................................................8

    IV.   Eligible Employees ..........................................................................................8

    V.    Settlement Allocation.......................................................................................9

    VI.   Fees and Costs..................................................................................................9

    VII.  Settlement Administration Costs......................................................................10

    VIII. Service Awards and Individual Recovery..........................................................11

CLASS ACTION SETTLEMENT PROCEDURE ......................................................................12

ARGUMENT ........................................................................................................................12

    I.      Preliminary Approval of the Settlement Is Appropriate ....................................12

          A.     Legal Standards Under Rule 23 Amendments ........................................13

          B.     The Settlement Is Fair, Reasonable, and Adequate..................................14

               1.   The Named Plaintiffs and Class Counsel Have Adequately Represented the Class ..................................................................................14

               2.   The Settlement was Negotiated at Arm's Length.......................................14

3.   The Relief for Class Members is Adequate and Fair ...............................15

4.   Class Members Have an Opportunity to Opt-Out.....................................17

C.   The Settlement Satisfies the *Grinnell* Factors ...........................................17

1.   Litigation Through Trial Will Be Complex, Costly, and Long
     (*Grinnell* Factor 1) .....................................................................................18

2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ............19

3.   Discovery Has Advanced Far Enough To Allow The Parties To
     Resolve The Case Responsibly (*Grinnell* Factor 3) ...................................19

4.   Plaintiffs Would Face Real Risks If the Case Proceeded
     (*Grinnell* Factors 4 and 5)...........................................................................19

5.   Establishing A Class and Maintaining It Through Trial Would Not
     Be Simple  (*Grinnell* Factor 6) ..................................................................20

6.   Defendants' Ability to Withstand A Greater Judgment  (*Grinnell*
     Factor 7)........................................................................................................20

7.   The Settlement Amount Is Substantial, Even In Light of the Best
     Possible Recovery and the Attendant Risks of Litigation
     (*Grinnell* Factors 8 and 9)...........................................................................21

II.   Conditional Certification of FLSA Collective Is Appropriate..............................21

III.   The Proposed Notice Is Appropriate.....................................................................22

CONCLUSION................................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alleyne v. Time Moving & Storage, Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010) ......................................................................... 13-14

*Christina Asia Co. v. Jack Yun Ma,*
    No. 15-md-2631, 2019 WL 5257534, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct.
    16, 2019) ...................................................................................................................18

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................... *passim*

*De La Cruz v. Manhattan Parking Grp., LLC,*
    No. 20-cv-977, 2022 U.S. Dist. LEXIS 123267 (S.D.N.Y. July 12, 2022) ............................11

*Flores v. Mamma Lombardi's of Holbook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...................................................................11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................................16, 20, 21

*Guaman v. Anja-Bar NYC,*
    No. 12-cv-2987, 2013 WL 445896, 2013 U.S. Dist. LEXIS 16206, at *15 (S.D.N.Y.
    Feb. 5, 2013) .............................................................................................................21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ....................................................................... 12-13

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................18, 19, 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05-cv-10240, 2007 WL 2230177, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. 2007) ........14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .........................................................................19

*Joel A. v. Guiliani*,
    218 F.3d 132 (2d Cir. 2000) ....................................................................12, 21

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ....................................................................16

*Thompson v. Am. Limousine Grp., LLC*,
    No. 19-cv-4133, 2022 U.S. Dist. LEXIS 88045 (S.D.N.Y. May 13, 2022) ...........................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................................12, 14


**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................................... *passim*
    Rule 54 ..................................................................................................................................10


**SECONDARY SOURCES**

Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002)..............................12

Notes of Advisory Committee on 2018 Amendments
    Rule 23.............................................................................................................................13, 18

## PRELIMINARY STATEMENT

The parties' proposed settlement resolves all claims in this action on a collective and class basis. After many years of vigorous litigation and prior unsuccessful attempts at settlement, the Parties have settled the claims of named plaintiffs Joshua Porter, Sharkey Simmons and Emanuel Colajay Rivera (the "Named Plaintiffs"), the individuals who opted into this settlement as FLSA collective action members, and a certified Fed. R. Civ. P. 23 class (collectively, the "Plaintiffs") against defendants Mooregroup Corporation, John Moore, Gary Moore, Martin Moore, and non-appearing defendant Baldwin Harbor Contracting, Inc.[1] The proposed settlement resolves all claims all that Defendants failed to pay Plaintiffs for all hours worked, including overtime premium wages under the New York Labor Law (NYLL) and Fair Labor Standards Act (FLSA), failed to provide wage notices and wage statements in accordance with the NYLL, and engaged in unlawful retaliation under the NYLL and FLSA.

Through this motion, the Named Plaintiffs respectfully requests that the Court: (1) grant preliminary approval of the classwide Settlement Agreement and Wage and Hour Release ("Settlement Agreement" or "Agreement") attached as Exhibit B to the Declaration of Brent E. Pelton in Support of the Motion for Preliminary Approval of Class Settlement ("Pelton Decl.")[2]; (2) approve the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Proposed Notice"), the Claim Form, and Deadline Reminder Postcard, attached as Exhibits C, D, and E, respectively; and (4) schedule a Final Approval and Fairness Hearing before the Court upon Plaintiffs' confirmation that the settlement amount has been paid in full.

---

[1] Unless otherwise specified, the term "Defendants" as used herein will refer to Mooregroup Corporation, John Moore, Gary Moore, and Martin Moore.

[2] Unless otherwise indicated, all exhibits are attached to the Pelton Decl.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

This Fair Labor Standards Act (FLSA) collective action and NYLL class action was commenced with the filing of the Complaint on December 20, 2017 (the "Complaint") by Plaintiffs Porter and Simmons. (Dkt. No. 1). Defendants Gary Moore, John Moore, Martin Moore and Mooregroup Corporation ("Mooregroup") filed an Answer to the Complaint on February 23, 2018. (Dkt. No. 14). Pursuant to the parties' stipulated motion (Dkt. Nos. 17, 18, 19, 20), the Court certified Plaintiffs' FLSA unpaid overtime claims as a collective action. (Dkt. No. 21). Seven (7) collective action members exercised their right to join the action by filing consent to become party plaintiff forms with the Court, including Named Plaintiff Colajay. (Dkt. Nos. 23-25, 27, 70, 77-79).  On March 29, 2019, Plaintiffs moved to amend the pleadings to add Emanuel Colajay Rivera as a Named Plaintiff, to add Baldwin Harbor Contracting, Inc. as a Defendant, and to add retaliation claims on behalf of Plaintiffs Simmons and Colajay. (Dkt. Nos. 47-49, 52-53). On January 2, 2020, the Court granted Plaintiffs' motion to amend. (Dkt. No. 63). Plaintiffs filed the operative Amended Complaint on January 13, 2020. (Dkt. No. 63 ["Am. Compl."]).

Prior to the filing of Plaintiffs' Motion for Class Certification, the parties exchanged document discovery and written discovery. (Pelton Decl. ¶ 17). Plaintiffs produced all relevant documents in their possession and, at Defendants' request, provided releases for employment documents from other employers and an unrelated lawsuit filed by Named Plaintiff Simmons. (*Id.*). Defendants produced certain time and pay records as to the Named Plaintiffs. (*Id.*) The parties deposed nine (9) Named and Opt-in Plaintiffs and the Individual Defendants. (*Id.* ¶ 18).

On November 3, 2020, Plaintiffs began the process of moving for certification of a class pursuant to F.R.C.P. 23. (Dkt. No. 81). On August 11, 2021, after the parties fully briefed the

motion, the Court granted certification of the class and amended the class definition to "all fire guards, welders, carpenters, laborers and other construction employees who performed manual construction labor who worked for the Mooregroup Defendants at any time since December 20, 2011." (Dkt. No. 99). Subsequently, the Parties litigated at length the membership of the class list, including the exchange of discovery demands and written discovery and further depositions. (*E.g.*, Order of the Court dated May 25, 2022; Order of the Court dated June 1, 2022; Scheduling Order dated June 1, 2022; Minute Entry dated Sept. 29, 2022; Order dated Sept. 30, 2022).

After certain depositions pertaining to class member discovery had been held, the parties attended a mediation on January 17, 2023 before Mr. Martin Scheinman; the matter did not settle at that time but the parties continued discussing settlement. (*E.g.*, Dkt. No. 125 Order of the Court dated Mar. 8, 2023; Dkt. No. 127; Dkt. No. 128; Dkt. No. 129). The Parties reached a tentative preliminary agreement following further discussions with Mr. Scheinman, but after extensive efforts to finalize an agreement, including a conference before the Court held on November 17, 2023, the settlement ultimately fell through. (*E.g.*, Dkt. Nos. 130, 132, 132, 134, 135, 136, 137, 138, 140, 141, 142, 143, 145; Minute Entry dated Dec. 14, 2023; Order of the Court dated Dec. 14, 2023).

At the same time, the Parties engaged in class discovery, including further written discovery and depositions. (Pelton Decl. ¶ 22). Plaintiffs sent Notice of Class Action to Class Members on November 18, 2024 and informed the Court that three (3) individuals opted out. (Dkt. No. 162). Plaintiffs filed a consent case management plan, which included deadlines for the end of class discovery and expert discovery deadlines. (Dkt. No. 152). Between October 2024 and January 2025, the Court held several conferences with the Parties and issued numerous Orders primarily regarding class discovery and other related matters. (Orders of the Court dated Oct. 31,

2024; Order of the Court dated Nov. 27, 2024; Minute Entry dated Jan. 16, 2025; Order of the

Court dated Jan. 16, 2025; Order of the Court dated Jan. 24, 2025; Order dated Jan. 30, 2025).

From February 5, 2025 through March 21, 2025, the case was stayed following Mr. Kilgannon's

withdrawal as counsel for Defendants. (Order of the Court dated Feb. 7, 2025). On March 25,

2025, Mr. Kilgannon once again filed a Notice of Appearance on behalf of Defendants. (Dkt. No.

164). On March 27, 2025 Plaintiffs informed the Court that the parties had reached a new

settlement and requested extension of the date for Plaintiffs to move for contempt and sanctions,

to be filed in the event that the Parties were unable to finalize the settlement and file the present

Motion for Preliminary Approval. (Dkt. No. 165).

## II.    Overview of Investigation and Discovery

Before and during the formal litigation of this Action, Class Counsel conducted thorough

investigations into the merits of the potential claims and defenses. (Pelton Decl. ¶ 10). Class

Counsel focused their investigation and legal research on the underlying merits of the Named

Plaintiffs' and collective and class members' claims, the damages to which they were entitled, and

Defendants' potential liability. (*Id.*). Class Counsel interviewed the Named Plaintiffs and several

of the opt-in plaintiffs and Class Members in order to determine the hours that they worked, the

wages they were paid, their job duties, and other information relevant to their claims. (*Id.*).

Prior to March 25, 2025 Defendants had produced approximately 9,681 bates-stamped

pages of records, plus written discovery responses and assorted other documents such as the

October 31, 2024 Class List. (Pelton Decl. ¶ 22). On March 25, 2025, Defendants produced nearly

twenty thousand (20,000) pages of discovery, many of which had been previously produced,

consisting primarily of pay records, wage notification materials, and Class Member contact

information. (*Id.* ¶ 29). Throughout mid-2022, Plaintiffs obtained further time and pay records via

4

subpoenas to third-party vendors, specifically timekeeping vendors and financial institutions. (*Id.* ¶ 21). The Parties deposed the Individual Defendants and nine (9) plaintiffs, including named and opt-in plaintiffs, individuals during pre-class discovery and conducted additional depositions after certification of the class regarding class list and class discovery matters. (*Id.* ¶¶ 18, 20).

During the litigation, the Named Plaintiffs assisted with the preparation of the initial complaint and the amended complaint, assisted with the factual investigations of the claims, produced documents, provided information used in the damages analysis, and attended depositions and mediations. (*Id.* ¶ 16).

## III.    Settlement Negotiations

As the Court is aware, the Parties have engaged in extensive settlement negotiations, which previously ended with a failed settlement, as set forth *supra* at 3. In addition to countless information discussions, the Parties have engaged in formal settlement discussions, including a January 17, 2023 mediation before Mr. Scheinman and several follow-up conversations with Mr. Scheinman, and a November 17, 2023 conference before the Court regarding settlement. (Pelton Decl. ¶ 31). Throughout the litigation, Plaintiffs have spent significant time and effort creating and updating damages calculations, incorporating updated documents from Defendants and subpoenaed records, which Plaintiffs have exchanged with Defendants. (*Id.* ¶ 36).

On March 27, 2025 Plaintiffs informed the Court that the parties had reached a new settlement, attaching a binding and fully-executed Memorandum of Understanding. (Dkt. No. 165).

Over the next several weeks, the parties continued to negotiate the final terms and language of the settlement agreement. (Pelton Decl. ¶ 34). The parties exchanged drafts of the settlement agreement while continuing to negotiate the terms of the settlement. (*Id.*). The parties finalized the

complete terms of their agreement in a formal classwide Settlement Agreement and Wage and Hour Release, which is attached to the Pelton Decl. as Exhibit B. (*Id.*).

As evidenced by the very real challenges faced by the Parties in finalizing settlement, and the Parties' participation in formal mediation before an experienced mediator, at all times during the settlement negotiation process, settlement negotiations were conducted on an arm's-length basis. (Pelton Decl. ¶ 41).

## SUMMARY OF THE SETTLEMENT TERMS[3]

### I.    The Settlement Amount

Defendants have agreed to pay a settlement amount of two million dollars ($2,000,000.00) (the "Gross Fund Value") to settle this action. (Ex. B ¶¶ 1.24, 3.1(A). In the event that Defendants pay a sum of $1,850,000.00 by no later than June 30, 2025, the Gross Fund Value shall be reduced to this amount as an "Early Payment Discount." (Ex. B ¶¶ 1.18, 3.1(A), 3.1(I)).

After attorneys' fees and costs, settlement administration and related costs, employer portion of payroll taxes, service awards for the Named Plaintiffs, individual recovery for individual claims asserted by Plaintiffs Simmons and Colajay Rivera, the remaining funds (the "Net Settlement Fund") will be allocated among members of the Settlement Class.[4] (Ex. B ¶¶ 1.30). All Settlement Class Members who do not timely opt-out of the Settlement (the "Participating Class Members") will be eligible to receive a payment from the settlement. (Ex. B ¶¶ 1.5, 3.4(A)(1)-(2)). In order to receive a payment as "Authorized Claimants," Participating Class Members must

---

[3] A discussion of the Settlement Terms is set forth at the Pelton Declaration at ¶¶ 42-62.

[4] The Settlement Class is defined as "all current and former fire guards, welders, carpenters, laborers, and other construction employees who performed manual construction labor who worked for Defendants or one or more of the Defendants' Affiliated Companies at any time from December 20, 2011 to March 27, 2025." (Ex. B ¶ 1.45).

timely return a valid Claim Form. (Ex. B ¶ 3.6(A)). Given that the Action has been pending for some time, such that some addresses provided by Defendants may not be up to date, the Parties have agreed to an extended period in which Settlement Class Members may return Claim Forms in order to participate in the Settlement (the "Claim Period"); the deadline to return a Claim Form shall be six (6) months after the First Payment Distribution. (Ex. B ¶¶ 1.7, 3.6(A); Pelton Decl. ¶¶ 45, 58). The Parties' expectation is that Class Members may learn of the First Payment Distribution and contact Class Counsel or the Settlement Administrator in order to participate in the Settlement. (Pelton Decl. ¶ 4).  In total, there shall be two (2) regular rounds of payment distribution, plus one possible additional round to the extent that there are unclaimed funds after the close of the Acceptance Period. (Ex. B ¶¶ 1.36, 3.1(C)-(E)).

The parties have agreed to engage CPT Group ("CPT" or the "Settlement Administrator") to administer the Settlement by, *inter alia*, issuing notice packets and claim forms to all Settlement Class Members, receiving Claim Forms from Authorized Claimants, receiving opt-out statements or objections from Settlement Class Members, maintaining accurate records of all documents sent and received during the settlement administration, opening and administering the Qualified Settlement Fund ("QSF") account, receiving Defendants' payment of the Gross Fund Value, calculating Authorized Claimants' individual shares, mailing settlement payments to Authorized Claimants, calculating tax withholdings and payments, and continuing to communicate with and provide reports as necessary to Class Counsel to facilitate the Settlement. (Ex. B ¶ 2.6).

## II.    Releases

The Settlement Agreement provides that Class Members will have sixty (60) days from the Settlement Administrator's mailing of the Notice of Proposed Settlement to opt-out of the Settlement, plus an additional sixty (60) days from the date that any Class Member requests and

receives a Notice mailing in the event that they did not receive a Notice in the original mailing. (Ex. B ¶¶ 1.32, 2.11). All Class Members who do not timely opt-out of the Action will be deemed to have released the Released State Law Claims. (Ex. B ¶¶ 1.35, 2.11(D), 4.1(A)). In addition, by negotiating the Settlement Checks, all Authorized Claimants will release the Released Federal Law Claims. (Ex. B ¶¶ 1.40, 4.1(B)).

## III.    Notice

Within fifteen days of the Court granting preliminary approval of the proposed Settlement Agreement, the Settlement Administrator will mail the Notice of Proposed Settlement to all Class Members, with Claim Forms. (Ex. B ¶ 2.10(B)). The Notice shall notify Class Members of information including the procedures and deadlines for objecting and opting-out of the settlement, the date of the Fairness Hearing, the Settlement Amount, and the manner in which the Net Settlement Fund shall be allocated. (Ex. C). The Notice and Claim Form shall be distributed in English and Spanish, with an additional sheet provided in Portuguese encouraging Class Members who speak that language to contact the Settlement Administrator for more information. (Ex. B ¶ 2.10(B); Ex. C).

## IV.    Eligible Employees

All current and former fire guards, welders, carpenters, laborers, and other construction employees who performed manual construction labor who worked for Defendants or one or more of the Defendants' Affiliated Companies[5] at any time from December 20, 2011 to March 27, 2025

---

[5] Per the Settlement Agreement, the "Affiliated Companies" refers to Baldwin Harbor Contracting Inc., Moore Group Inc., Boro Concrete Corp., Big Johns Services Corp., Concrete Services & Maintenance Corp., Allied Enterprises LLC, Allied Enterprises USA Corp., All County Solutions, and Interstate Services & Maintenance. (Ex. B ¶ 1.4).

(the "Settlement Class" or "Settlement Class Members") who do not timely opt-out of the Settlement will be eligible to participate from the settlement and will receive a payment so long as they return a valid Claim Form within the Claim Period. (Ex. B ¶¶ 3.4(A)(1)-(2)).

## V.      Settlement Allocation

Pursuant to the Settlement Agreement, each Authorized Claimant will receive a portion of the Net Settlement Fund that is calculated by an allocation formula based on the number of weeks worked. (Ex. B. ¶ 3.4(A)(5)-(7)). Specifically, each Class Member will receive one (1) point for each week worked during the Class Period. (Ex. B ¶ 3.4(A)(5)(a)). Each Class Member's points will then be totaled and divided by the aggregate number of points accrued by all participating Class Members to determine the percentage of the Net Settlement Fund that he or she shall receive. (Ex. B ¶ 3.4(A)(6)-(7)). Settlement Class Members shall have the opportunity to provide documentary evidence, such as pay records, to establish their employment periods to the extent that such records provide different information from that in the Parties' possession. (Ex. B ¶ 3.4(A)(10)). Utilizing the workweeks of each Class Member tracks the damages that Plaintiffs allegedly suffered, because unpaid wages were incurred on a weekly basis, consisting primarily of unpaid overtime, and were consistent throughout the Class Period. (Pelton Decl. ¶ 50). Only Settlement Class Members who timely return a claim form shall receive an individual settlement share. (Ex. B ¶ 3.4(A)(2)). Settlement Class Members who do not become Authorized Claimants shall not receive any money from the settlement. (*Id.*). None of the settlement funds shall revert to Defendants. (Ex. B ¶ 3.1(N)).

## VI.     Fees and Costs

Consistent with the Settlement Agreement, Class Counsel will apply for reimbursement from the Settlement Fund for their actual litigation costs of approximately $82,219.69, subject to

revision through the date of the Motion for Final Approval, plus one-third (1/3) of the Settlement Fund after the deduction of actual litigation costs. (Ex. B ¶ 3.2(B); Pelton Decl. ¶ 59). Class Counsel will also seek reimbursement from the Settlement Amount for reasonable costs associated with the administration of the settlement, including data entry costs. (Ex. B ¶ 1.1, 2.8(D), 2.14(B), 3.2(A)-(B)). Class Counsel has not entered into side agreements or other agreements regarding attorneys' fees and costs aside from the terms set forth in the Settlement Agreement. (Pelton Decl. ¶ 60). The Court need not rule on fees and costs now. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will file a motion for approval of attorneys' fees, service awards, and reimbursement of expenses along with Plaintiffs' Motion for Final Approval of the Settlement.

## VII. Settlement Administration Costs

Plaintiffs previously engaged CPT Group and, given that firm's familiarity with this matter, have selected CPT Group to act as Settlement Administrator. (Pelton Decl. ¶ 46). The Settlement Administrator's reasonable costs, plus costs associated with data entry necessary to create the final damages allocation, are to be paid from the Settlement Amount. (Ex. B ¶ 1.1, 3.2(A)-(B)).

Given the long pendency of the settlement, including installment payments and subsequently two (2) or three (3) rounds of settlement payments, Class Counsel respectfully request that the Court permit Class Counsel to pay administration costs in two (2) rounds: one to be paid upon issuance of the Preliminary Approval Order (the "Preliminary Payment Distribution"), as to fees incurred as of that date and to the extent that Defendants have paid such amounts into the settlement fund, and all remaining fees to be paid with the First Payment Distribution. (Ex. B ¶ 1.38, 2.8(E)).

In total, the Administration fees are estimated to be either $28,000.00 or $24,000.00, depending upon the total number of distributions, plus $6,000.00 in data entry costs. (Pelton Decl.

¶ 62). Accordingly, Plaintiffs respectfully request that the Court approve the Preliminary Payment Distribution at this time. Should the Court decline to award partial payment of the Administration Costs at this time, Plaintiffs will again move for Court approval of the Administration Costs simultaneously with Plaintiffs' Motion for Final Approval; should the Court approve the Preliminary Payment Distribution, Plaintiffs will move for Court approval of the remaining Administration Costs in connection with Plaintiffs' Motion for Final Approval.

Courts regularly award administrative costs associated with providing notice to the class. *See Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (noting "Courts within this district have awarded up to $50,000 for the settlement claims administrator" and finding estimated fees of $33,500 to the settlement administrator as reasonable); *see also De La Cruz v. Manhattan Parking Grp., LLC*, No. 20-cv-977, 2022 U.S. Dist. LEXIS 123267, at *6-7 (S.D.N.Y. July 12, 2022) (approving $55,000 in settlement administration fees).

## VIII.  Service Awards and Individual Recovery

In addition to their individualized awards under the allocation formula, the Named Plaintiffs will apply for modest enhancement payments ("Service Awards") in recognition of the services they rendered on behalf of the class over the long duration of this litigation. (Ex. B ¶ 3.3; Pelton Decl. ¶ 16).  The Named Plaintiffs will apply to receive ten thousand dollars ($10,000.00) each, for a total of thirty thousand dollars ($30,000.00) in Service Awards. (Ex. B ¶ 3.3(A)). In addition, Plaintiffs Simmons and Colajay Rivera will apply for awards of ten thousand dollars ($10,000.00) each, for a total of twenty thousand dollars ($20,000.00), in exchange for release of the individual retaliation claims asserted in the Amended Complaint. (Ex. B ¶ 3.3(B)). The Court need not rule on the proposed Service Awards and Individual Recovery now. Plaintiffs will move

for Court approval of the Service Awards and Individual Recovery simultaneously with Plaintiffs'

Motion for Final Approval of the Settlement.

## CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed notice of settlement and claim forms to all affected Class Members; and

3. A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e)(1),(2); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, the Named Plaintiffs requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving Plaintiffs' proposed Notice materials, and authorizing Plaintiffs to send Notice to the Class.

## ARGUMENT

### I. Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000). In exercising this discretion, courts should give "proper

deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

## A.    Rule 23 Standards for Evaluating Class Settlements

Rule 23(e)(1), amended in 2018, essentially approves the preliminary approval practice that has become standard in this Circuit, providing that the district court direct notice to class members after determining that the court will likely be able to grant final approval of the settlement and certification of the settlement class, if not already certified.  *See* F.R.C.P. 23(e)(1); Notes of Advisory Committee on 2018 Amendments.  Rule 23(e) also makes clear that these requirements, including notice requirements, apply in cases where a class has already been certified as well as cases where the parties have proposed certifying a class for settlement purposes. *Id.*

Rule 23(e) requires that Courts consider the fairness, reasonableness and adequacy of the settlement and the benefits of the settlement to class members.  To make this determination, courts should examine a list of core concerns" set forth by the Rule, specifically whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). The Rule also requires the parties to identify all agreements made in connection with the proposed settlement and include an opportunity for class members to opt-out if the class was previously certified. Finally, the Rule provides a detailed procedure for Class Member objections and for seeking approval after an appeal.

Fairness is evaluated both by "the negotiating process leading up to the settlement as well as the settlement's terms." *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y.

2010). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted). If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05-cv-10240, 2007 WL 2230177, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court is able to evaluate the settlement with the benefit of the class members' input.

**B.    The Settlement is Fair, Reasonable, and Adequate**

**1.    The Named Plaintiffs and Class Counsel Have Adequately Represented the Class**

As set forth *infra* at Argument Section II(D), the Named Plaintiffs have more than adequately represented the Class.  The Named Plaintiffs have no conflict with the Class Members, no interests antagonistic to those of the Class, and have actively participated in the Action on behalf of their own claims and the claims of Class Members throughout the litigation.

Likewise, as set forth *infra* at Argument Section IV, Class Counsel have extensive experience in litigating and settling wage and hour class actions and have already expended significant time, work and resources into prosecuting this matter.  As a result, Class Counsel has reached a fair settlement on behalf of Class Members.

**2.    The Settlement Was Negotiated at Arm's Length**

The parties have exchanged sufficient discovery to sufficiently evaluate the claims and defenses of the Parties, including well over a dozen depositions and the exchange of thousands of

pages of documents, and have at all times engaged in settlement negotiations at arm's length. (*Supra* at 5-6). As such, the settlement negotiation procedure has been fair to Plaintiff and the Class Members.

### 3.    The Relief for Class Members is Adequate and Fair

Rule 23(e) provides that determination of the adequacy and fairness of Class Members' relief take into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)

F.R.C.P. 23(e)(2).

Defendants have agreed to settle this case for a substantial amount, a maximum of two million dollars ($2,000,000.00), with a modest reduction for accelerated payment. To the extent that Defendants accept the Early Payment Discount, Plaintiffs would reduce their requested attorneys' fees accordingly. The settlement is based upon alleged damages to all Settlement Class Members and was negotiated taking the full class into consideration. The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs and the Settlement Class Members succeeded on all claims at trial and survived an appeal.  In addition, since the Settlement Agreement provides for a significant payment to be made by Defendants within a relatively short timeline after Final Approval, the settlement would likely yield recovery for Plaintiff and Settlement Class Members much sooner than would be required for completion of litigation through the continuation of formal discovery through Plaintiffs' anticipated briefing of a motion for contempt and sanctions, expert discovery, and a

long trial. (Pelton Decl. ¶¶ 63-66). The Settlement Agreement provides for even faster payment through an Early Payment Discount.

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Here, Class Counsel prepared numerous damages analyses using time and pay records provided by Defendants, extensive records from third-party vendors obtained via subpoena, and good faith estimates based upon information from Class Members. (Pelton Decl. ¶ 36). In this way, Plaintiffs calculated unpaid wages in the amount of $9,179,520.83, consisting of off-the-clock time and unpaid overtime premiums. (*Id.* ¶ 37). Plaintiffs' classwide damages calculated a total of $32,912,243.43, which includes $10,854,287.07 in wage notification damages (*id.*)—claims that were viable when Plaintiffs initially filed the Complaint but which now "may raise issues of standing." (Order of the Court dated Oct. 31, 2024). The sum total of Plaintiffs' claims for unpaid wages, liquidated damages, and prejudgment interest, not including wage notification recovery, is $22,057,956.37.  (Pelton Decl. ¶ 37).

Plaintiffs' damages analysis for unpaid off-the-clock time relied upon assumptions and estimates as to the amount of off-the-clock time, particularly where Plaintiffs were not in possession of complete time records. (Pelton Decl. ¶¶ 36, 38). Throughout the litigation, Defendants have strongly disputed liability for all damages claimed by Plaintiffs', disputed

Plaintiffs material allegations regarding timekeeping and wage payment policies, and have disputed the appropriateness of collective and class treatment. (*Id.* ¶ 39). Accordingly, while Plaintiff believe that the figures used in the damages analysis are correct, Plaintiff recognizes the risks of establishing these facts at trial, especially on a class-wide basis. As such, Class Counsel believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Settlement Class in the face of risks and uncertainty.

As described above, the Settlement Amount will be allocated to Settlement Class Members using a formula that takes into account the total number of weeks they worked and the pay rates that they received. (Ex. B ¶ 3.4(5)-(7). As such, the allocation set forth in the Settlement Agreement directly links each Authorized Claimant's recovery with the claims asserted in this Action. These terms and provisions of the settlement shall be presented to the Court for examination of their fairness and to Settlement Class Members via the proposed Notice, such that Class Members will have the opportunity to review, object and/or opt-out.

### 4.    Class Members Have an Opportunity to Opt-Out

The Settlement Agreement and the Notice both clearly set forth the form and procedures to follow should Class Members prefer to opt-out of the Class and the settlement.  As such, Class Members will have the opportunity to pursue separate litigation against Defendants.

### C.    The Settlement Satisfies the *Grinnell* Factors

Prior to the 2018 amendments to Rule 23, courts in the Second Circuit generally considered, and frequently continue to consider, the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. Many of these factors evaluate similar facts as Rule 23(e) and are still relevant to evaluating the fairness of proposed class settlements. *See* Advisory Committee Notes (Rule 23(e)(2) factors not designed to displace any factor); *Christina Asia Co. v. Jack Yun Ma*, No. 15-md-2631, 2019 WL 5257534, 2019 U.S. Dist. LEXIS 179836, at *37 (S.D.N.Y. Oct. 16, 2019) ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors"). All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

While the parties have already engaged in extensive litigation, discovery and motion practice, by reaching a favorable settlement at this time, the parties seek to avoid further motion practice associated with Plaintiffs' motion for contempt and sanctions, the costs and delay of expert discovery, and trial practice, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian*, 80 F. Supp. 2d at 174. This case is no exception, as the Settlement Class well over one thousand (1,000) individuals. Continued litigation would require significant expenditure of resources of the parties, Plaintiffs, the Settlement Class Members and the Court and would seriously delay monetary recovery, if any, for Plaintiffs and the Settlement Class Members. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.

## 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Although notice of the settlement and its details has not yet issued to the class, the Named Plaintiffs support the settlement. Although the Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt-out or object, it does not weigh against preliminary approval.

## 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Throughout the litigation of the Actions, the parties exchanged a significant amount of discovery to appreciate the merits, strengths and weakness of the claims and defenses in this Action. There is no threshold discovery must reach in order to satisfy this inquiry; the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). The parties' discovery here meets this standard. Class Counsel conducted substantial investigation and prosecution of the claims in the lawsuit, including, but not limited to, discussions with the Named Plaintiffs and Class Members; vigorous motion practices; reviewing thousands of pages of document discovery produced by Defendants; issuing subpoenas to third-party vendors and reviewing thousands of pages of time and pay records received; creation and revision of numerous damages analyses and engaging in substantial informal and formal settlement negotiations including a private mediation. (Pelton Decl. ¶¶ 10-29).

## 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs' Counsel believes this case is strong, it is subject to considerable risk as to liability and damages as set forth *supra* at Argument Section I(B)(3). In weighing the risks, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered

by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). Further litigation culminating in a trial on the merits would involve significant risks to Plaintiffs and the Settlement Class Members because of the fact-intensive nature of proving liability and class treatment under the FLSA and NYLL and in light of the defenses available to Defendants, as well as challenges in proving damages on a classwide basis. This factor weighs heavily in favor of preliminary approval.

### 5.    Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining collective and class certification through trial is also present, particularly to the extent that the class includes employees of the Affiliated Companies.  As set forth *supra* at Argument Section I(B)(3), Plaintiffs could face decertification prior to trial. Risk, expense, and delay are involved in each of these steps in the litigation.  Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

### 6.    Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Plaintiffs have agreed that Defendants shall pay the Gross Fund Value in installments, which Defendants have already begun paying as a demonstration of good faith. While the Gross Fund Value is sizeable, it is not clear whether Defendants would be able to pay a larger recovery, particularly in the form of a judgment, which could not be paid in installments. However, even if Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor favors this Court granting preliminary approval.

7. **The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

As described *supra* at Argument Section I(B)(3), Class Counsel has determined that this case presents significant risks that militate toward substantial compromise. The allocation formula is closely tied to the merits and relative strengths and weaknesses of Settlement Class Members' claims, depending upon the total duration and the dates of their employment. (*Id.*).

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. Accordingly, all of the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A*, 218 F.3d at 138-39), the Court should grant its preliminary approval.

## II.    Approval of the FLSA Collective Settlement Is Appropriate

The "standard for approval of an FLSA settlement is lower than for a class action under Rule 23" since FLSA collective actions "do not implicate the same due process concerns" in that parties will not be bound by the settlement unless they opt in. *Thompson v. Am. Limousine Grp., LLC*, No. 19-cv-4133, 2022 U.S. Dist. LEXIS 88045, at *10-11 (S.D.N.Y. May 13, 2022). Courts approve FLSA settlements when "they are reached as a result of contested litigation to resolve *bona fide* disputes," which can be determined from the "adversarial nature of a litigated FLSA case" and whether "the proposed FLSA settlement reflects a reasonable compromise over contested issues." *Guaman v. Ajna-Bar NYC*, No. 12-cv-2987, 2013 WL 445896, 2013 U.S. Dist.

LEXIS 16206, at *15-16 (S.D.N.Y. Feb. 5, 2013). As discussed extensively *supra*, this settlement represents a reasonable compromise as a result an arm's-length negotiation between experienced counsel. As settlement of the class action is appropriate under the heightened standards of Rule 23, settlement of the collective action should likewise be deemed appropriate.

## III.    The Proposed Notice Is Appropriate

The content of the Notice of Proposed Class and Collective Settlement (the "Notice") fully complies with the requirements under Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice, which will be distributed via United States mail satisfies each of these requirements. F.R.C.P. 23(c)(2); Notes of Advisory Committee on 2018 Amendments. Here, the Notice describes the terms of the settlement, informs the class and collective about their rights regarding the settlement, their ability to opt-out, the collective member's ability to opt-in, the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. (Ex. C). Accordingly, the detailed information in the Notice to Class Members is more than adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B). The Proposed Settlement Notice to Class Members fully complies with the requirements of Rule 23(c)(2)(B). Finally, in light of the long pendency of this litigation, with the likely result that a number of the addresses on file for Settlement Class Members are stale, the Parties have provided for a long Claim Period which more provides more than adequate opportunity for Settlement Class Members to participate in the

22

litigation, even if they do not hear about the settlement until the first round of settlement checks are mailed.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Class Settlement and enter the Proposed Order.

Dated:  New York, New York
           April 29, 2025

**PELTON GRAHAM LLC**


By:  ___*/s/Brent E. Pelton*_____
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
111 Broadway, Suite 1503
New York, NY 10006
(212) 385-9700

*Attorneys for Plaintiffs, the FLSA Collective and the Settlement Class*